UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                                    )<br>        Plaintiff,                        )<br>                                                    )    Case No. 1:25-cv-00173-SDN<br>    v.                                         )<br>                                                    )<br>MAINE DEPARTMENT OF EDUCATION,)<br>                                                    )<br>        Defendant.                        ) | |

**MOTION TO APPOINT SPECIAL COUNSEL TO INVESTIGATE AND PROSECUTE, AS NECESSARY, FORMAL DISCIPLINARY PROCEEDINGS AGAINST MATTHEW J. DONNELLY, ESQ. FOR PROFESSIONAL MISCONDUCT <u>AND REQUEST FOR ORAL ARGUMENT</u>**

NOW COMES Randy J. Creswell, Esq., an attorney-at-law in good standing and admitted to practice before the United States District Court for the District of Maine since 2000 ("<u>Movant</u>"),[1] pursuant to Federal Rules of Civil Procedure 1, 7(b), and 83, D. Me. Local Rules 1, 7(a) and (e), 83.1(c)(2)(A) and (B), (d), and 83.3(a), (b), (d)(1), and (e), and Maine Rule of Professional Conduct 8.4(a), (d), and (g), and hereby moves for the appointment of special counsel to investigate and prosecute, as necessary, formal disciplinary proceedings against Matthew J. Donnelly, Esq.

Attorney Donnelly has committed, and is committing, professional misconduct by engaging in conduct and communication related to the practice of law and for which Attorney Donnelly knows or should know constitutes discrimination on the basis of gender identity, all in violation of Maine Rule of Professional Conduct 8.4(a), (d), and (g), made applicable here pursuant to D. Me. Local Rule 83.3(a).

In support of this Motion, Movant states as follows.

---

[1] Movant is also a member in good standing of the bar of the State of Maine since 1999.

## I. Facts

On April 16, 2025, Plaintiff, United States of America, filed a Complaint in the above-captioned action against Defendant, Maine Department of Education ("MDOE"), alleging violations of Title IX (20 U.S.C. §§ 1681 – 1689) because of the State of Maine's recognition and protection of gender identity as a civil right. *See generally* Complaint (ECF No. 1), preamble and ¶¶ 37 – 39.

The Complaint is signed by Attorney Donnelly, an attorney employed by the United States Department of Justice in Washington, D.C. Attorney Donnelly represents Plaintiff in this proceeding. Attorney Donnelly is not a member of the bar of the State of Maine. Because, however, he is a government attorney, he is granted leave to appear and practice before this Court. D. Me. Local Rule 83.1(c)(2)(A)(i), (ii), (iii).

In its Complaint, Plaintiff alleges, *inter alia*, that Title IX and its implementing regulations (34 C.F.R. §§ 106.1 – 106.82) "use of the term 'sex' means biological sex; the term 'sex' does not mean gender identity." Complaint ¶ 22. That is false.[2]

From that false predicate, Plaintiff, through Attorney Donnelly's representation, conduct, and communication in this proceeding, intentionally seeks to discriminate against persons – who

---

[2] *See, e.g., L.B. & M.B., individually & on behalf of their minor child A.B.; C.M. & A.H., individually & on behalf of their minor child J.M.; & on behalf of others similarly situated, Plaintiffs, v. PREMERA BLUE CROSS, Defendant.*, 2025 WL 1149630, at *6 (W.D. Wash. Apr. 18, 2025) ("Courts have reached conflicting conclusions concerning how 'sex' should be defined" under Title IX."); *cf. Bostock v. Clayton Cnty.*, 590 U.S. 644, 651–52 (2020) ("An employer who fires an individual for being homosexual or transgender fires that person for traits or actions it would not have questioned in members of a different sex. Sex plays a necessary and undisguisable role in the decision, exactly what Title VII forbids."); *Roe by & through Roe v. Critchfield*, 131 F.4th 975, 990 (9th Cir. 2025) ("Neither Title IX nor its implementing regulations defines the term.").

are adolescents and fellow human beings – on the basis of gender identity. *See* Complaint ¶¶ 70, 81 – 84, 90 – 93, 100,³ 102, 103 – 108, 110,⁴ – 113, 121, 123,⁵ 125.⁶

In particular, Attorney Donnelly, in furtherance of his representation of Plaintiff, alleges in the Complaint that, "[a]fter Executive Orders 14168 and 14201, which confirmed Title IX's term 'sex' means biological sex, MPA's executive director stated that the Executive Orders and Maine's Human Rights Act are in conflict and that the MPA would continue to follow the state's law when it comes to gender identity." Complaint ¶ 136. Attorney Donnelly goes on to allege that, "[o]n February 21, 2025, in response to Executive Orders 14168 and 14201, Maine Governor Mills stated that Maine was going to continue to allow boys to compete in girls' sports and that the federal executive branch would need to file a lawsuit to attempt to secure compliance with Title IX, and at one point stating: 'We'll see you in court.'" Complaint ¶ 137.⁷

Count I of Plaintiff's Complaint, signed by Attorney Donnelly as its counsel, alleges that MDOE is in violation of "Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. and its implementing regulations" due to its recognition and protection of gender identity as a civil right, and that "[u]nless restrained by this Court, Defendant will continue to violate Title IX." Complaint ¶¶ 157, 159. *See also* Count II of Complaint.

In its Prayer for Relief, advocated by Attorney Donnelly, Plaintiff seeks, *inter alia*:

(1)   a declaratory judgment that MDOE's recognition and protection of gender identity as a civil right violates Title IX;

---

³ "Student A is a boy currently and recently competing as [sic] on the girls' track and field team ...." Complaint ¶ 100.
⁴ "Student B is a boy currently and recently competing in girls' skiing …." Complaint ¶ 110.
⁵ "Student C is a boy recently competing on the . . . girls' basketball team." Complaint ¶ 123.
⁶ "Beyond Students A, B, and C, other boy athletes have competed in, and will continue to compete in, athletic sports and competitions designated for girls ...." Complaint ¶ 125.
⁷ Governor Mills' full statement was, "I am complying with State and federal laws," and came in response to Donald Trump's statement that "I am, we are, the federal law." Trump is a convicted felon for Falsifying Business Records in the First Degree. *See The People of the State of New York v. Donald J. Trump*, Indictment No. 71543-23 (Supreme Court of the State of New York, County of New York: Part 9). He is the individual currently vested with the "executive Power" of the United States of America. *See* U.S. Const. art II, § 1, cl. 1. He is not "the federal law." *See* U.S. Const. art. I, II, and III.

(2) a permanent injunction barring MDOE from recognizing and protecting gender identity as a civil right, thereby directly, intentionally, and specifically discriminating against persons solely on the basis of gender identity; and

(3) a permanent injunction ordering and requiring MDOE to, in fact, discriminate against persons solely on the basis of gender identity, and which permanent injunction would also order and require MDOE to direct "all Maine schools" to discriminate against persons solely on the basis of gender identity.

*See* Complaint, Prayer for Relief, pp. 29, 30.

## II. Discussion

While discrimination against other human beings on the basis of, for example, ethnicity, national origin, or, in this instance, gender identity, is ugly, repugnant, and contrary to this country's professed beliefs in equality for all persons, private actors and citizens are nevertheless currently free to hold those repellent personal prejudices. Attorneys engaged in the practice of law on behalf of clients before this Court, however, have professional and ethical obligations and duties separate and apart from their clients to refrain from engaging in such ugly discrimination against other human beings, including all persons on the basis of gender identity.

> We take this opportunity to remind Maine's attorneys of their ethical obligations as members of the legal profession. Attorneys, unlike their clients, are subject to the Maine Rules of Professional Conduct. *See* M.R. Prof. Conduct 8.4 cmt. 1 ("Lawyers are subject to discipline when they violate or attempt to violate the Rules of Professional Conduct ...."). Attorneys are bound by the contents of the briefs they sign. *See* M.R. Prof. Conduct 3.3 cmt. 3 ("An advocate is responsible for pleadings and other documents prepared for litigation...."). Therefore, when a client who is represented by counsel insists on presenting any argument or assertion that is not endorsed by the attorney – particularly one that, if made by the attorney, might violate the Maine Rules of Professional Conduct, *see* M.R. Prof. Conduct 1.2 cmt. 13 – such argument or assertion *should not* be incorporated into the brief drafted and submitted by the attorney. Rather, it is incumbent upon the attorney to advise the client to obtain leave of the Court to independently present the argument or assertion in a separate brief or writing signed by the client only.

*State v. Williams*, 2020 ME 17, ¶ 27, 225 A.3d 751, 760 (emphasis in original).

Unfortunately here, as is plain from the allegations of the Complaint, Attorney Donnelly is violating his professional and ethical obligations and duties to this Court. Attorney Donnelly is actively and knowingly engaging in conduct and communication in this proceeding, through his representation of Plaintiff, that is – specifically and intentionally – discriminatory against Students A, B, C, and all other similarly-situated persons in Maine, on the precise and sole basis of gender identity.

That is professional misconduct on Attorney Donnelly's part pursuant to this Court's Local Rules 83.3(a) and (b) and Maine Rule of Professional Conduct 8.4(a), (d), and (g).

### A.   D. Me. LBR 83.1

Attorney Donnelly, as a government attorney for Plaintiff, is granted leave to appear and practice before this Court pursuant to D. Me. Local Rule 83.1(c)(2)(A)(i), (ii), (iii), and (iv).[8] And, having been permitted to appear before this Court, Attorney Donnelly has also conferred disciplinary jurisdiction on this Court with respect to his violations of his professional and ethical obligations for his discrimination against persons, including Students A, B, and C, on the basis of gender identity. *See* D. Me. Local Rule 83.3(a) ("Any attorney . . . who is permitted to appear and practice before this Court confers disciplinary jurisdiction on the Court for any alleged misconduct of that attorney.").

### B.   D. Me. LBR 83.3

D. Me. Local Rule 83.3(a) provides that this Court has adopted as its own the Maine Rules of Professional Conduct. *Id.* ("Standards of Professional Conduct. This Court adopts as its standard for professional conduct the Maine Rules of Professional Conduct adopted by the Supreme Judicial Court of Maine, as amended from time to time by that Court.").

---

[8] D. Me. Local Rule 83.1(c)(2)(B) requires that Attorney Donnelly "read and comply with" this Court's Local Rules.

C. **Maine Rule of Professional Conduct 8.4**

In turn, Maine Rule of Professional Conduct 8.4 provides (in relevant part) as follows:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate any provision of either the Maine Rules of Professional Conduct or the Maine Bar Rules, or knowingly assist or induce another to do so, or do so through the acts of another; . . .

(d) engage in conduct that is prejudicial to the administration of justice; . . . or

(g) engage in conduct or communication related to the practice of law that the lawyer knows or reasonably should know is harassment or discrimination on the basis of . . . gender identity.

   (1) "Discrimination" on the basis of . . . gender identity as used in this section means conduct or communication that a lawyer knows or reasonably should know manifests an intention: to treat a person as inferior based on one or more of the characteristics listed in this paragraph; to disregard relevant considerations of individual characteristics or merit because of one or more of the listed characteristics; or to cause or attempt to cause interference with the fair administration of justice based on one or more of the listed characteristics. . .

   (3) "Related to the practice of law" as used in the section means occurring in the course of representing clients; interacting with witnesses, coworkers, court personnel, lawyers, and others while engaged in the practice of law . . . .

M.R. Prof. Conduct 8.4.

The foundational basis for Plaintiff's Complaint and its claims for relief against MDOE, as communicated by Attorney Donnelly in his conduct and representation of Plaintiff before this Court, is literally the intentional discrimination against persons, including Students A, B, and C, on the basis of gender identity, all of which violates M.R. Prof. Conduct 8.4(a) and (g) in particular. *See also Bd. of Overseers of the Bar v. Brown*, 2023 ME 58, ¶ 12 n.6, 301 A.3d 793, 798 ("'It is professional misconduct for a lawyer to: (a) violate or attempt to violate any provision of either

the Maine Rules of Professional Conduct or the Maine Bar Rules, or knowingly assist or induce another to do so, or do so through the acts of another.' M.R. Prof. Conduct 8.4(a).").

Under this Court's Local Rules and adopted Maine Rules of Professional Conduct, this Court should appoint a special counsel to investigate and prosecute, as necessary, formal disciplinary proceedings against Attorney Donnelly for his and that professional misconduct. *See* D. Me. Local Rule 83.1(d) and 83.3(d)(1) and (e).

Finally, with respect to Me. R. Prof. Conduct 8.4(g), Attorney Donnelly's professional misconduct does not fall under either advocacy exception set forth in 8.4(g)(4). As expressly set forth in the Complaint, he is neither advocating Plaintiff's "policy position" nor for a "change[s] in the law" with respect to Plaintiff's intentional discrimination against persons based upon gender identity.

Nothing in the Complaint alleges, claims, asserts or remotely suggests that it is simply Plaintiff's "policy position" that MDOE is violating Title IX. To the contrary, everything alleged in the Complaint by Attorney Donnelly directly and affirmatively alleges, states, and claims that MDOE is in direct violation of Title IX itself, as federal law, and not simply Plaintiff's policy position concerning that federal law. *See, e.g.,* Complaint, preamble ("The State of Maine, through its Department of Education, is openly and defiantly flouting federal anti-discrimination law . . . .") (emphasis added); *Id.* ¶ 1 ("The United States brings this action to enforce Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*. and the implementing regulations of the United States Department of Education, 34 C.F.R. Part 106, and Department [sic] Health and Human Services, 45 C.F.R. Part 86."); *Id.* ¶ 6 ("Defendant continues to violate federal law. Despite Title IX's equal opportunity mandate…."); *Id.* ¶ 8 ("The United States accordingly seeks a judgment . . . for Defendant's violations of Title IX…."); *see also* Complaint ¶¶ 17 – 21, 24 – 30,

87, 132 – 135, 140, 145 – 147, 151, 156 (Count I – Violation of Title IX), 157 (same), 161 (Count II – Violation of Title IX Contractual Assurances), 162 (same), and Prayer for Relief ¶¶ (a), (b), (c) (emphasis added).

If undersigned counsel has that wrong, and it is, in fact, just Plaintiff's "policy position" that MDOE is out of compliance with Title IX, as opposed to actually being in violation of that federal law (notwithstanding every allegation to the contrary), whether due to the Orwellian named and drafted Executive Orders 14168 and 14201 or otherwise, then this Motion can be denied without further consideration. At that point, Plaintiff's Complaint should also be dismissed. It would also then be fair to question whether Attorney Donnelly satisfied his filing obligations with respect to the Complaint in the first instance under Federal Rule of Civil Procedure 11(b).

MDOE is obviously not bound by any mere policy position of the Executive Branch of the federal government. In that regard, MDOE is only bound by the United States Constitution and actual federal law.[9] Nor is any state, university, college, law firm, organization, or person bound by unconstitutional or unenforceable Executive Orders. *See, e.g., Doe v. Trump*, 2025 WL 485070, at *16 (D. Mass. Feb. 13, 2025) ("What the Constitution has conferred neither the Congress, nor the Executive, nor the Judiciary, nor all three in concert, may strip away." *Nishikawa*, 356 U.S. at 138, 78 S. Ct. 612 (Black, J., concurring). Here, the Constitution confers birthright citizenship broadly, including to persons within the categories described in the [Executive Order]."); *see also CASA, Inc. v. Trump*, 2025 WL 408636, at *4 (D. Md. Feb. 5, 2025) ("The plaintiffs claim the Executive Order violates the Fourteenth Amendment's Citizenship Clause. There is no question that the Court may review the constitutionality of the Executive Order and grant injunctive relief. The Supreme Court consistently has "sustain[ed] the jurisdiction of federal courts to issue

---

[9] *See, e.g., State of Maine v. United States Department of Agriculture, et al.*, Case No. 1:25-cv-00131-JAW.

injunctions to protect rights safeguarded by the Constitution." *See Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) ("[I]njunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally."). The Supreme Court has affirmed that "the President's actions may … be reviewed for constitutionality." *See Franklin v. Massachusetts*, 505 U.S. 788, 801, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992); *see also Dalton v. Specter*, 511 U.S. 462, 473–74, 114 S.Ct. 1719, 128 L.Ed.2d 497 (1994).").

Nor is Attorney Donnelly advocating for a "change[s] in the law" of Title IX. The version of Title IX that existed on January 19, 2025 is the same as the version of Title IX that existed sixteen days later on February 6, 2025, after the issuance of Executive Orders 14168 (January 20) and 14201 (February 5). *See* Complaint ¶¶ 1, 6, 8, 17 – 21, 24 – 30, 87, 132 – 135, 140, 145 – 147, 151, 156, 157, 161, 162. Attorney Donnelly and his client are not advocating for a "change" of Title IX. They are seeking to "enforce" it by intentionally discriminating against human beings on the basis of gender identity.

### D. Attorney Donnelly is Entitled – As With All Persons – to Due Process

As set forth above, it is Movant's view that Attorney Donnelly has and is engaging in professional misconduct under Me. Rule. Prof. Conduct 8.4(a), (d), and (g). Whether that is true, however, is for this Court to decide. But before the Court can make that determination, Attorney Donnelly is – as he should be, given this Country's centuries-long commitment to the fundamental rights of due process and an opportunity to be heard – entitled to a fair opportunity to file any response or other opposition he deems appropriate to this Motion. *See* D. Me. Local Rule 7(b).

Then, once the facts, issues, and legal arguments have all been briefed and submitted to the Court for consideration, the Court will have an opportunity to review the filings, consider the arguments and law, and render its findings of fact and conclusions of law.

Moreover, even if the Court does conclude at the end of that preliminary process that there are "allegations of misconduct . . . which, if substantiated, would warrant discipline or other corrective action," then the Court may take the next step and appoint a special counsel to investigate the matter further, which process itself will introduce more and additional safeguards of due process, notice, and an opportunity to be heard (*see* D. Me. LBR 83.3(d)(2)).  In other words, Attorney Donnelly, as with all persons, is – and should be – entitled to due process.

### E.      Standing

Under First Circuit authority, having become aware of Attorney Donnelly's professional misconduct before this Court through his intentional and discriminatory advocacy on behalf of his client against persons based solely upon gender identity, Movant was obligated to bring Attorney Donnelly's professional misconduct to the Court's attention.

> [W]e should not be misinterpreted as discouraging district courts from conducting inquiry into suspected unethical behavior when the particular circumstances appear to warrant it.  Nor do we intend to silence parties or counsel who encounter impropriety on the part of an opponent.  On the contrary, "(w)hen an attorney discovers a possible ethical violation concerning a matter before a court, he is not only authorized but is in fact obligated to bring the problem to the court's attention", *In re Gopman*, 531 F.2d 262, 265 (5th Cir. 1976). . . .  Having done so, however, the role of a party or counsel is at an end.  It remains for the court to vindicate its authority, if it so chooses….

*Ramos Colon v. U.S. Atty. for Dist. of Puerto Rico*, 576 F.2d 1, 8–9 (1st Cir. 1978) (Coffin, C.J.)

### III. Conclusion

WHEREFORE, for all these reasons, Randy J. Creswell, Esq., an attorney-at-law in good standing and admitted to practice before this Court, pursuant to District Court Local Rules

83.1(c)(2)(A) and (B), and (d) and 83.3(a), (b), (d)(1), and (e) and Maine Rule of Professional Conduct 8.4(a), (d), and (g), hereby requests that this Court:

(i) appoint special counsel to investigate and prosecute, as necessary, formal disciplinary proceedings against Matthew J. Donnelly, Esq., arising from his professional misconduct and engagement in conduct and communication related to the practice of law that he knows or should know is discrimination on the basis of gender identity;

(ii) grant and schedule, in the strong public interests of: (a) rejecting discrimination in all its forms, including specifically gender identity; (b) vindicating and enforcing the Court's adopted rules of professional conduct for attorneys appearing and practicing before it; and (c) maintaining the confidence of the public at large, as well as all the members of this federal bar, in the judiciary's independence as a co-equal branch of the federal government, oral argument on this Motion; and

(iii) grant Movant such other and further relief as may be just and equitable under the circumstances.

Dated at Portland, Maine this 24th day of April, 2025.

/s/ Randy J. Creswell
Randy J. Creswell, Esq.

CRESWELLLAW
PO Box 7340
Portland, ME  04112
207.358.1010
rcreswell@creswelllaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, pursuant to Federal Rule of Civil Procedure 5 and District Court Local Rule 5(c), I have served on this day the above Motion for Appointment of Special Counsel and this Certificate of Service upon each of the parties listed on the Notice of Electronic Filing via the Court's Administrative Procedures Governing the Filing and Service by Electronic Means.

Dated at Portland, Maine this 24th day of April, 2025.

/s/ Randy J. Creswell
Randy J. Creswell, Esq.

CRESWELLLAW
PO Box 7340
Portland, ME  04112
207.358.1010
rcreswell@creswelllaw.com