## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MAINE DEPARTMENT OF EDUCATION,<br><br>    Defendant. | Case No. 1:25-cv-00173-SDN |

### UNITED STATES' OBJECTION TO PROPOSED SCHEDULING ORDER

Pursuant to Local Civil Rule 16.2(d), and the proposed Scheduling Order, ECF No. 13, the United States files this Objection to the proposed Scheduling Order. The Order proposed the Standard Track for discovery. As explained below, United States submits that the complexity and size of the case necessitate more expansive discovery.

The Parties held their Rule 26(f) conference (by video) on May 15, 2025. The attendees were Matthew Donnelly for the United States, and Kimberly Patwardhan, Sarah Forster, and Christopher Taub for the Defendant. The Parties also exchanged follow-up emails after this conference. Ultimately, the Parties were not able to reach agreement on a proposed Scheduling Order, with the Defendant essentially content with the proposed Order, and the United States desiring alterations to reflect the more extensive nature of the case. The United States accordingly submits the below requested changes to the proposed Order in Part II below.

### I.    NEEDS AND SCOPE OF DISCOVERY GENERALLY

The Order proposed assigning this case to the Standard Track, but the United States submits that the complexities and size of the case necessitate more expansive discovery. This is

not a simple case between private parties.  Rather, this case involves the United States suing a

state government agency, the Defendant Maine Department of Education ("MDOE").  As the

Complaint, ECF No. 1, indicates this action extends to more than just the MDOE headquarters,

but also to the many schools it oversees.  MDOE headquarters oversees approximately 90 Maine

Regional School Units, which, in turn, sometimes have multiple schools they oversee.  *See, e.g.*,

Compl. ¶ 80 (giving example of Regional School Unit 21).  The action extends to another state

entity beyond Defendant MDOE, namely the Maine Human Rights Commission.  *See, e.g.*,

Compl. ¶ 40.  And the action heavily revolves around the Maine Principals' Association

("MPA").  *See, e.g.*, Compl. ¶¶ 45-56.  The case concerns millions of dollars in federal funding

to Maine.  *See, e.g.*, Compl. ¶ 135.  Finally, the case concerns the potential conflict between

federal law and state law.  *See, e.g.*, Compl. ¶ 136.

Given the nature, complexities, and size of the case, the United States submits that the

Standard Track fails to adequately address the needs of the case.  The United States accordingly

urges the below alterations, followed by a summary (in *italics*) of the United States'

understanding of the Parties' differing positions on the alterations.

## II.     THE UNITED STATES' PROPOSED ALTERATIONS

### A.  DISCOVERY SCHEDULE:

| Event | Order Proposed | US Proposed |
|-------|----------------|-------------|
| Rule 26(f) Conference | May 22, 2025 | (held May 15, 2025) |
| Rule 26(a) Initial Disclosures | June 5, 2025 | Friday, June 13, 2025 |
| Amend Pleadings / Join Parties | July 24, 2025 | Wednesday, September 3, 2025 |
| Initial Expert Reports | July 24, 2025 | Wednesday, September 3, 2025 |
| Response Expert Reports | August 28, 2025 | Monday, October 27, 2025 |
| Reply Expert Reports | (none) | Friday, November 21, 2025 |
| Plaintiff Make Written Settlement Demand | September 11, 2025 | Thursday, December 4, 2025 |

| Defendant's Respond to Settlement Demand | September 25, 2025 | Friday, December 19, 2025 |
|---|---|---|
| Discovery Close | September 25, 2025 | Friday, December 19, 2025 |
| Notice Intent Motion for Summary Judgment | October 2, 2025 | Friday, January 30, 2026 |
| Dispositive and *Daubert* Motions | October 16, 2025 | Thursday, February 19, 2026 |
| Expected Trial Date | December 3, 2025 | Wednesday, April 8, 2026 |

*      *      *      *      *

*Defendant's Position:  The United States' understanding is that Defendant agrees with the altered date for Initial Disclosures, but otherwise opposes the above modifications.*

*United States' Position:  The United States proposes longer intervals between events as well as an additional "Reply" round of expert report exchanges.  (In Part II.C below, the United States sets forth its summary justification for "Initial," "Response," and "Reply" reports, rather than "Plaintiff" and "Defendant" reports).  The complexity of the case and multiple involved entities merit these slightly lengthened intervals.  For example, the proposed Order sets Plaintiff's Expert Reports due on July 24, 2025, which is less than two months away.  The United States will need to:  (1) serve and receive responses to Requests for Production and subpoenas; then (2) use that information to take meaningful depositions; then (3) supply those documents and deposition transcripts to experts for their reports; and then (4) have the experts write and submit their reports.  Accomplishing this in under two months is unrealistic and will almost certainly require the United States to seek to adjust the discovery schedule, causing further delay.  As another example, the proposed Order sets just 35 days for a Response Report, where the Party will need to request documents, perhaps take non-expert depositions, and have an expert then turn that information into a responsive report.  Accomplishing this in 35 days is unrealistic and will almost certainly lead to requests for extensions.  The United States also envisions that both Parties will have multiple experts, which adds to the difficulty in meeting*

3

*these expert deadlines.  In contrast, the United States' proposal sets Initial Expert Reports due in approximately three months, then Response Expert Reports approximately two months later, and then Reply Expert Reports approximately one month later.  The United States believes this is still an extremely tight schedule, but nonetheless proposes it to accommodate the Parties' desire to resolve this case as quickly as possible.*

### B. DISCOVERY TOOLS

1. Generally:  All discovery must be propounded in such time that the deadline to respond or produce occurs on or before the close of discovery.

2. Interrogatories:  30 per opposing side.

3. Requests for Production:  2 sets of requests for production per opposing side.

4. Depositions:  15 per opposing side.  Of these 15 depositions, 5 depositions are limited to a maximum time of 7 hours, and 10 depositions are limited to a maximum time of 3.5 hours. The notice of deposition must state whether the deposition is for 7 hours or 3.5 hours.  Each side may additionally depose for 7 hours any expert the other side discloses.

*        *        *        *        *

*Defendant's Position:  The United States' understanding is that Defendant agrees with the above, except for Part II.B.4.*

*United States' Position:  Except for Part II.B.4, the above limits track the proposed Order.  The disputed Part II.B.4 concerns depositions, where the proposed Order indicated "5 depositions per side."  The complexity and various entities involved in this case merit more than 5 depositions.  As above, the case concerns not just the MDOE, but also the Maine Human Rights Commission, and the MPA.  With just one deposition of those three entities, the United States would be left with just two depositions.  The United States likely may need to take more*

*than one deposition of the officers of these three entities. And even if not, the United States will likely need to depose multiple people at the school level, such as administrators, coaches, etc., for some of the approximately 90 Maine Regional School Units. While the United States intends to target its discovery, and of course not depose someone from each Regional School Unit, it envisions needing to depose many more than two. The United States thus proposes 15 total depositions, but also proportionally limits 10 of those depositions to just 3.5 hours.*

### C. EXPERT DISCOVERY DISCLOSURES:

All Parties must disclose initial expert reports[1] by September 3, 2025. For any report disclosed on this date, the other party may disclose a response report on October 27, 2025. Any Party disclosing an initial report may disclose a reply report to the response report on November 21, 2025. A response report must be limited solely to rebutting an initial report, must stay within the scope of the initial report, and may not introduce new topics or subject areas that did not appear in the initial report. Similarly, a reply report must be limited solely to rebutting a response report, must stay within the scope of the initial report, and may not introduce new topics or subject areas that did not appear in the initial report. As noted above, any side may depose another side's expert and such deposition will not count against that side's non-expert deposition number limit noted above. Discovery of other evidence supporting an expert's written report shall be accomplished by subpoena to the expert, rather than serving discovery on the opposing side.

---

[1] "Report" in this paragraph means disclosure of all information related to an expert's testimony required by Rule 26(a)(2), including disclosures under Rule 26(a)(2)(C) for experts who do not need to provide a written report.

\*      \*      \*      \*      \*

*Defendant's Position:  The United States' understanding is that Defendant objects to this entire Part II.C.*

*United States' Position:  As above, the complexity of the case merits additional time for expert discovery and an additional round for Reply Reports.  The styling of expert disclosures as "Initial," "Response," and "Reply" reports, rather than "Plaintiff" and "Defendant" reports, promotes open discovery and guards against unfair surprise and delays.  If Defendant knows it intends to present expert evidence on a particular subject, Defendant should not arbitrarily hold that back until after the United States submits all its expert reports.  Otherwise, Defendant can unfairly surprise the United States with an expert report that injects a completely new subject. And under the proposed Order without any replies, the United States would have no opportunity to even scramble to respond.  If Defendant intends to submit expert reports that are truly responsive to the United States' reports, the United States' proposal with detailed criteria for what is a "Response," (rather than an unfair new subject), and "Reply" fully accounts for this while necessarily guarding against unfair surprise.  This also helps guard against a Party needing to move this Court to amend and lengthen the schedule because the other Party has, in the middle or end of expert exchanges, injected a new, unforeseen expert opinion.*

*The proposal also makes clear that expert depositions do not count against a Party's allotted deposition in Part II.B above, and makes clear that Parties should use subpoenas, rather that Requests for Production, to obtain expert documents, which is necessary to allow shorter intervals for Response and Reply reports.*

**D.  ATTORNEY-CLIENT AND WORK-PRODUCT PRIVILEGE LOGS:**

1.  The Parties have agreed that they need not produce or provide a privilege log for communications between (i) attorneys (and associated legal staff) for the Parties; or (ii) attorneys for the Parties and attorneys for another party/entity with which the attorneys for the Party hold a joint defense or common interest privilege.  This production and privilege log exception, however, applies to communications solely among attorneys (and their associated legal staff) and does not apply to such communications that include or copy any other person.

2.  Unless ordered by the Court for good cause, the Parties need not produce or provide a privilege log for attorney work product protected by Fed. R. Civ. P. 26(b)(3)(A) or for communications between a Party's attorney and an expert witness protected by Fed. R. Civ. P. 26(b)(4)(B)-(C), regardless of the form of the communication.

*        *        *        *        *

*Parties' Positions:  The United States' understanding is both Parties agree to the above Part II.D.*

**E.  PRESERVATION OF DISCOVERABLE INFORMATION:**

The Parties intend to work together on a mutually agreeable protocol for production of documents and things, including electronically stored information.  If the Parties reach an agreement, then they will file a joint motion for a stipulated protocol.  If no agreement is reached, a party desiring the preservation and production protocol will file an appropriate motion.

\*     \*     \*     \*     \*

*Parties' Positions:  The United States' understanding is both Parties agree to the above Part II.E.*

**F.  PROTECTIVE ORDER:**

The Parties are working together on a mutually agreeable protective order.  If the Parties reach an agreement, then they will file a joint motion for a stipulated protective order.  If no agreement is reached, a party desiring a protective order will file an appropriate motion.

\*     \*     \*     \*     \*

*Parties' Positions:  The United States' understanding is both Parties agree to the above Part II.F.*

## CONCLUSION

For the above reasons, the United States urges the Court to adopt the reasonable adjustments to the proposed Order that the United States proposes above.

Respectfully submitted,


 */s/ Matthew J. Donnelly*
MATTHEW J. DONNELLY
Attorney
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C.  20530
Telephone: (202) 616-2788
Email: matthew.donnelly@usdoj.gov


Dated:  May 29, 2025