UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:25-cv-00173-SDN |
| ) | |
| MAINE DEPARTMENT OF EDUCATION ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S MOTION TO AMEND ANSWER**
**WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 15(a)(2), the defendant, the Maine Department of Education ("Maine DOE"), respectfully seeks leave to file an amended answer to assert the following additional affirmative defense: "The United States' claims are barred because the United States is selectively enforcing Title IX against the Maine Department of Education and/or is maliciously and vindictively prosecuting this action." The deadline for amending pleadings has not yet passed and the amendment will supplement Maine DOE's other affirmative defenses that the United States' claims are barred because it is acting ultra vires and in violation of the Equal Protection and Due Process clauses of the United States Constitution. The United States does not consent to the relief requested in this motion.

**Memorandum of Law**

*Procedural History*

The plaintiff, the United States, filed this lawsuit on April 16, 2025. ECF No. 1. The United States alleges that Maine DOE is in violation of Title IX due to the participation of transgender female athletes on girls' and women's high school teams. *Id*. Maine DOE filed its

Answer on May 8, 2025. ECF No. 12. It asserted seven affirmative defenses. Its sixth affirmative defense states: "The United States' claims are barred because it is acting ultra vires." *Id.*, at 17. Its seventh affirmative defense states: "The United States' claims, and/or the relief the United States seeks, are barred by the Equal Protection and Due Process Clauses of the United States Constitution." *Id.* These defenses are intended to form the basis for Maine DOE's argument that that the complaint should be dismissed (or judgment entered in favor of Maine DOE) because the United States brought this action in bad faith and for improper motives, and singled out Maine DOE for enforcement.

On May 8, 2025, the Court issued a proposed Scheduling Order. ECF No. 13. The United States objected to several parts of the proposed Scheduling Order (ECF No. 14) and, on June 10, 2025, the Court partially granted the objection. ECF No. 18. Under the current Scheduling Order, the deadline for amending pleadings and joining parties is September 3, 2025. *Id.*

Maine DOE now seeks leave to amend its answer to add the following as its eighth affirmative defense: "The United States' claims are barred because the United States is selectively enforcing Title IX against the Maine Department of Education and/or is maliciously and vindictively prosecuting this action."

### *Legal Standard*

When, as here, a party cannot amend its pleading as a matter of course, it must obtain leave of the court.[1] Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "This is a relatively low standard. . . ." *El-Hajj v. Fortis Benefits Ins. Co.*, 156 F. Supp. 2d 27, 34 (D. Me. 2001).

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

---

[1] Leave of court is not required when the opposing party consents to the proposed amendment, but the United Staes does not consent here.

> by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Calderon-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 19 (1st Cir. 2013).[2]  Granting or denying a motion to amend "is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id*.

### *Argument*

Maine DOE anticipates arguing that this lawsuit should be dismissed, or judgment entered in Maine DOE's favor, because the United States brought this action in bad faith and for improper motives and is singling out Maine DOE.  The following is some of the evidence supporting this argument:[3]

1. On February 20, 2025, President Trump stated at a gathering of Republican governors that he heard "men are still playing in Maine."  *See* "Remarks at a Republican Governors Association Meeting" (Feb. 20, 2025).[4]  He continued:  "[W]ell, I hate to tell you this, but we're not going to give them any Federal money. They are still saying we want men to play in women's sports, and I cannot believe that they're doing that. . . so we're not going to give them any money – none whatsoever – until they clean that up."  *Id*.

---

[2] When a party seeks to amend after expiration of the deadline in the scheduling order for amending pleadings, "Rule 16(b)'s more stringent good cause standard supplants Rule 15(a)'s leave freely given standard."  *U.S. ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 192 (1st Cir. 2015); *see also Sargent v. NorDx*, No. 2:20-CV-00467-JAW, 2022 WL 17738711, at *5 (D. Me. Dec. 16, 2022).  Here, though, the deadline for amendments has not yet passed.

[3] Pursuant to the Court's order of August 13, 2025 (ECF No. 25), Maine DOE will be separately submitting a letter brief in support of its request to conduct discovery to obtain additional evidence about the events leading to this lawsuit.

[4] *See* https://www.presidency.ucsb.edu/documents/remarks-republican-governors-association-meeting.

2. The next day, on February 21, 2025, President Trump addressed a group of governors, including Maine Governor Mills, at a meeting of the National Governors Association. *See* "Trump administration orders investigation after Gov. Mills publicly defies president over transgender policy," *Portland Press Herald* (Feb. 21, 2025).[5] President Trump asked Governor Mills whether she was going to comply with his Executive Order addressing the participation of transgender athletes in school sports[6] and Governor Mills responded: "I'm complying with state and federal law." *Id*. President Trump responded: "Well, we are the federal law. You'd better do it. You'd better do it, because you're not going to get any federal funding at all if you don't." *Id*. Governor Mills responded: "See you in court." *Id*.

3. Subsequently, President Trump said that he "need[s] a full throated apology from the Governor herself, and a statement that she will never make such an unlawful challenge to the Federal Government again, before this case can be settled."[7]

4. The very same day as the exchange between Governor Mills and President Trump – February 21, 2025 – the United States Department of Education's Office for Civil Rights ("USDOE OCR") and the United States Department of Health and Human Services' Office of Civil Rights (HHS OCR) opened investigations into Maine DOE's alleged violation of Title IX. ECF Nos. 16-1 and 16-4. HHS OCR completed its "investigation" in just four days. ECF No. 16-5. On Maine DOE's information and belief, neither agency conducted

---

[5] *See* https://www.pressherald.com/2025/02/21/trump-threatens-to-cut-federal-funding-to-maine-over-transgender-athlete-policy.
[6] *See* Executive Order 14201, entitled "Keeping Men Out of Women's Sports," https://www.whitehouse.gov/presidential-actions/2025/02/keeping-men-out-of-womens-sports.
[7] https://thehill.com/homenews/lgbtq/5208797-donald-trump-maine-governor-transgender-sports-policy.

interviews of, or obtained information, from Maine DOE, any school district, or the Maine Principal's Association.

5. On February 27, 2025, the Acting Commissioner of the United States Social Security Administration emailed his staff about Maine's contracts with the SSA.[8] Staff warned him that "[t]erminating the contracts would result in improper payments and potential for identity theft." The Acting Commissioner responded: "Please cancel the contracts. While our improper payments will go up, and fraudsters may compromise identities, no money will go from the public trust to a petulant child."[9] The Acting Commissioner later explained that he "was ticked at the governor of Maine for not being real cordial to the president."[10]

6. On information and belief, many other states and school districts allow transgender female athletes to participate on girls' and women's high school teams but have not been sued by the United States.

At the time that Maine DOE filed its Answer, it contemplated that its sixth and seventh affirmative defenses (alleging ultra vires action and violation of the Equal Protection and Due Process Clauses) were sufficient to provide the foundation for its argument that the United States is bringing this action in bad faith and for improper motives. Subsequent research indicates, though, that arguments such as those Maine DOE intends to make are often brought under the rubric of selective enforcement. *See, e.g., Sec. & Exch. Comm'n v. Navellier & Assocs., Inc.*, 108 F.4th 19, 39 (1st Cir. 2024), *cert. denied sub nom. Navellier & Assoc. v. SEC*, No. 24-949, 2025 WL 1603606 (U.S. June 6, 2025); *Sec. & Exch. Comm'n v. Lemelson*, 532 F. Supp. 3d 30, 45 (D.

---

[8] https://oversightdemocrats.house.gov/sites/evo-subsites/democrats-oversight.house.gov/files/evo-media-document/2025-04-01-gec-to-ssa-dudek-re-maine.pdf.
[9] HHS did cancel the contracts but later reinstated them.
[10] https://www.nytimes.com/2025/03/24/us/politics/frank-bisignano-social-security-upheaval.html.

Mass. 2021); *United States v. Gibson Wine Co.*, No. 1:15-CV-1900-AWI-SKO, 2016 WL 1626988, at *7 (E.D. Cal. Apr. 25, 2016). Additionally, the First Circuit recognizes that criminal prosecutions are subject to dismissal if they are brought vindictively. *United States v. Jenkins*, 537 F.3d 1, 3 (1st Cir. 2008); *see also United States v. Tobin*, 598 F. Supp. 2d 125, 128 (D. Me. 2009).

Allowing Maine DOE to amend its Answer will avoid any potential issue over whether it adequately pled the foundation for its argument that the United States' claims are barred because it brought them in bad faith and for improper motives. Maine DOE is not acting with undue delay, in bad faith, or with dilatory motives. It seeks to make a single amendment to its Answer just four months after the lawsuit was filed and prior to the Scheduling Order's deadline for amending pleadings. This is first time Maine DOE has sought to amend its Answer. The United States will not be prejudiced by the amendment. Maine DOE's sixth and seventh affirmative defenses put it on notice that Maine DOE is challenging the United States' motivations for bringing this action. And in any event, discovery does not close until December 19, 2025, so the United States has ample opportunity to explore the basis for the proposed amendment.

Finally, the amendment is not futile. The First Circuit has recognized that selective enforcement is a defense to a civil enforcement action brought by the United States. *Navellier & Assocs., Inc.*, 108 F.4th at 39; *see also Lemelson*, 532 F. Supp.3d at 45; *Gibson Wine Co,*, 2016 WL 1626988, *7 ("Selective enforcement is a defense in a civil enforcement action."). The First Circuit has also recognized that vindictive prosecution is a defense to criminal charges. *Jenkins*, 537 F.3d at 3; *see also Tobin*, 598 F. Supp. 2d at 128. A prosecution is vindictive when "the prosecutor seeks to punish the defendant for exercising a protected statutory or constitutional right." *Jenkins*, 537 F.3d at 3. A vindictive prosecution violates a defendant's due process rights – "a defendant may be penalized for violating the law, but not punished for exercising his rights."

*Tobin*, 598 F. Supp. 2d at 128.  There is no reason that vindictive prosecution should not be equally applicable to civil enforcement actions as it is to criminal prosecutions.  Regardless of whether the federal government proceeds criminally or civilly, it should not be allowed to act vindictively in violation of a defendant's due process rights.  Because there is both a legal and factual basis for the proposed additional affirmative defense, the amendment is not futile.

### *Conclusion*

For the reasons set forth above, Maine DOE respectfully requests that it be permitted to amend its Answer to add the following as an Eighth Affirmative Defense:  "The United States' claims are barred because the United States is selectively enforcing Title IX against the Maine Department of Education and/or is maliciously and vindictively prosecuting this action."


Dated:  August 20, 2025                                  Respectfully submitted,

                                                              AARON M. FREY
                                                              Attorney General


/s/ Christopher C. Taub
CHRISTOPHER C. TAUB
Chief Deputy Attorney General
Christopher.C.Taub@maine.gov
SARAH A. FORSTER
Assistant Attorney General
Sarah.Forster@maine.gov
KIMBERLY L. PATWARDHAN
Assistant Attorney General
Kimberly.Patwardhan@maine.gov
Office of the Attorney General
State House Station 6
Augusta, ME 04333
Telephone: (207) 626-8800

## CERTIFICATE OF SERVICE

      I hereby certify that on this, the 20th day of August, 2025, I electronically filed the above document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.  To my knowledge, there are no non-registered parties or attorneys participating in this case.

      /s/ Christopher C. Taub
CHRISTOPHER C. Taub
Chief Deputy Attorney General
Six State House Station
Augusta, Maine  04333-0006
Tel.  (207) 626-8800
Christopher.C.Taub@maine.gov