**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

UNITED STATES OF AMERICA,

     Plaintiff,

v.

MAINE DEPARTMENT OF EDUCATION,

     Defendant.

CASE NO. 1:25-cv-00173-SDN

### MAINE PRINCIPALS' ASSOCIATION MOTION TO QUASH SUBPOENA FOR INSPECTION WITH INCORPORATED MEMORANDUM OF LAW

NOW COMES the Maine Principals' Association, by and through undersigned counsel, and files this motion to quash the Subpoena for Inspection ("subpoena"), pursuant to Federal Rule of Civil Procedure 45(d), served upon it by counsel for the United States of America ("subpoenaing party"), on the following grounds: (1) the subpoena requires the Maine Principals' Association to produce documents even though it is not a party in the action, and, given the allegations in the Complaint, the subpoenaed documents are irrelevant to the legal issue in the case; (2) the subpoenas are overbroad, overly burdensome, unreasonably duplicative, irrelevant nor likely to lead to the discovery of admissible evidence, designed to harass and annoy, and requests records that either do not exist, are not in the possession of the Maine Principals' Association, and/or are public records readily accessible to the United States of America; and (3) the records sought require disclosure of privileged or other protected matters and subjects the Maine Principals' Association to an undue burden including, but not limited to, confidential student names and records and school personnel protected unless otherwise ordered by the Court.

1

**BACKGROUND AND STATEMENT OF FACTS**

1.      This appears to be a civil case.

2.      The Maine Principals' Association ("MPA") is not a party to this action.

3.      This litigation involves a dispute between the United States of America and the Maine Department of Education ("MDOE") whereby the United States alleges that the State of Maine, through its Department of Education, has engaged in discriminatory practices that violate the core protections of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, which guarantees equal educational opportunities for all students, regardless of sex.

4.      A true and accurate copy of the subpoena is attached as **Exhibit A.**

**ARGUMENT**

The MPA moves to quash the subpoena for the following reasons:

**I.      The subpoena requires the MPA to produce documents even though it is not a party in the action, and, given the allegations in the Complaint, the subpoenaed documents are irrelevant to the central legal issue in the case.**

The subpoena served on the MPA should be quashed because it seeks documents that are irrelevant, disproportionate, and impose an undue burden on a non-party that has merely complied with applicable state law. Based on the allegations in the Complaint, the central legal issue in this case is whether federal law preempts the Maine Human Rights Act. The subpoena at issue here improperly seeks to shift the focus to the practical effects of the state law on a private organization and individuals within the state—matters that are not relevant to the legal question of preemption. Thus, this Court should grant the MPA's motion to quash since all the requested documents have nothing to do with the merits of the case. *See Nat'l Collegiate Ass'n v. Smith*, 525 U.S. 459, 461 (1999).

The MPA is a private entity operating in the State of Maine. It is not a party to this action, and the United States of America's Complaint does not allege any facts supporting a plausible inference that the MPA receives federal financial assistance, either directly or indirectly, or that any federal recipient "cede[d] controlling authority over a federally funded program to" the MPA. *Nat'l Collegiate Ass'n v. Smith*, 525 U.S. 459, 461 (1999). Accordingly, the MPA is not subject to Title IX. *See id.* at 468; *Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605–06 (1986). The U.S. Department of Justice's ("DOJ") Title IX Legal Manual ("Manual") affirms this principle, noting that Title IX applies only to entities that "actually receive federal financial assistance," not those who merely benefit from it in an attenuated way. *See* U.S. Dep't of Just., Title IX Legal Manual § III(B)(7) (citing *Nat'l Collegiate Ass'n v. Smith*, 525 U.S. 459, 468 (1999)). Courts have consistently held that an indirect economic benefit does not render an organization a "recipient" for purposes of Title IX or related statutes. *Smith*, 525 U.S. at 468; *Paralyzed Veterans*, 477 U.S. at 607.

The MPA is instead subject to the state's Maine Human Rights Act, and it has continued to act in accordance with state law. Despite the MPA not being a party to this action, the United States' subpoena seeks confidential and sensitive information from the MPA, apparently in an effort to build a factual record about the "effects" of the state's law on the MPA and on individuals who interact with the MPA. But this approach improperly expands the scope of discovery and distorts the nature of the preemption analysis that is central to this case.

Given that subpoenas are governed by the same standards as to proportionality of the discovery, the Court must balance the needs of the case against the burden on the non-party, especially when the subpoena extends beyond the core legal issues. *See FEDEQ DV004, LLC v. City of Portland*, No. 2:21-CV-00327-GZS, 2022 WL 17082083, at *3 (D. Me. Nov. 18, 2022);

*see, e.g.*, *Solamere Cap. v. DiManno*, 621 F. Supp. 3d 152, 158 (D. Mass. 2022). Discovery must be "proportional to the needs of the case," and courts "must limit the extent of discovery" if the burden outweighs the likely benefit, particularly for non-parties. Fed. R. Civ. P. 26(b)(1), 26(b0(2)(C), 45(D)(1)–(3). Discovery is not a tool for building a political or narrative case, especially when directed at non-parties, and courts have consistently held that discovery must be tethered to the claims and defenses at issue, not used for policy exploration or indirect attacks. *See* Fed. R. Civ. P. 26(b)(1), 45(d)(1). Courts will instead look to how critical the subpoena requests are in resolving the substantive issues in the case.

Here, the legal issue is whether federal law preempts a state statute—a question of legal authority, not of subjective outcomes. Preemption turns on whether the state law conflicts with or is superseded by federal law, not on the personal or institutional effects of the law on a private third party that simply followed it. Moreover, attempting to use discovery to identify individual students who were either impacted or protected by the state law improperly reframes the litigation from a legal question of federal supremacy into a social inquiry about perceived harms or benefits. That is not a function of the preemption doctrine, nor is it a proper use of discovery. Courts have repeatedly rejected efforts to use third-party subpoenas as backdoor policy fact-finding missions untethered from the actual claims and defenses.

This situation is analogous to a dispute over whether a new federal environmental regulation preempts a state recycling law. But rather than focusing on whether the two laws conflict or whether the federal law occupies the field, the federal government demands access to the internal records of private businesses that follow the state recycling rules—even if those businesses are not regulated by federal law at all. It then seeks to use those records, and the opinions of employees and customers, to argue that the state law has had "negative effects." This has nothing

4

to do with whether preemption applies; it simply burdens private entities for following the law enacted by the state. Moreover, this is not a legal argument—it is a policy critique. Here, the United States of America requests, for example, rosters of all students playing interscholastic sports in the State of Maine, MPA organizational charts, as well as "all complaints, concerns, praise or reports received by the MPA" from any individual in the State of Maine. Again, it remains to be seen why documents discussing the practical impacts of the law can be used to support a claim for federal preemption.

Furthermore, the United States of America did not proceed with a claim against the MPA, by virtue of the fact the MPA is not subject to Title IX because they do not receive indirect or direct federal funding. This in itself demonstrates the lack of relevance of these documents, as the relevancy of them would be to merely provide additional support for what is already known, that the MPA is subject to the Maine Human Rights Act. The question is not how the Maine Human Rights Act has impacted individuals in the state.

In light of the foregoing, because the MPA is neither a "recipient" as defined by Title IX and the Manual, nor a direct or indirect recipient of federal funding, and therefore, is not subject to Title IX. Accordingly, the documents requested by the United States of America are irrelevant as further set forth below and are unlikely to lead to the discovery of admissible evidence. Moreover, the requested documents contain sensitive personal information about students, staff, and personnel in the State of Maine that is confidential.

II.    **The subpoena should be quashed because it is overbroad, irrelevant and the requested information is not discoverable, unreasonably duplicative, deigned to harass and annoy, and requests records that either do not exist, are not in the possession of the MPA, and/or are public records readily accessible to the United States of America.**

"A subpoena served on a third party pursuant to Federal Rule of Civil Procedure 45 is subject to the same standards as to relevance and proportionality governing discovery between the parties." *FEDEQ DV004, LLC v. City of Portland*, No. 2:21-CV-00327-GZS, 2022 WL 17082083, at *3 (D. Me. Nov. 18, 2022); *see, e.g.*, *Solamere Cap. v. DiManno*, 621 F. Supp. 3d 152, 158 (D. Mass. 2022) ("A third-party subpoena is subject to the relevance and proportionality requirements of Rule 26(b)(1).")

> Fed. R. Civ. P. 26 states that
>
> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Additionally, the overbreadth of the subpoenas indicate that the United States does not know what records exist and is merely speculating about what it may discover—when in reality, much of the information requested does not exist. These kinds of blind-fire requests should be considered "a fishing expedition" by this Court, similar to those rejected by the court in *Solamere Cap. v. DiManno*, 621 F. Supp. 3d 152, 161 (D. Mass. 2022).

In *Solamere*, the defendant made the defective requests to the plaintiff after deposing the plaintiff and learning they did not have responsive documents. *Id.* Further, the defendant did so even after receiving 168,000 pages of documents from another party regarding the same conflict. *Id.* The court held that the defendant's requests were impermissibly anchored on "hope and speculation." *Id.* (citing *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) (affirming motion to quash deposition subpoenas of nonparty corporate employees based on mere "'hope' that" testimony "will contradict" prior deposition of nonparty corporate

employer; and characterizing such "'cumulative or duplicative'" discovery as "fishing expedition")).

This Court must deny the United States of America's fishing in this matter. Like in *Solamere*, the United States is throwing a net at the MPA and hoping for responsive materials in bad faith; they have given no indication, on knowledge or supported belief, that the MPA is in possession of what they seek. This is supported by the fact that some of what the United States of America requests is not only not in the possession of the MPA, but it has never existed to begin with. Moreover, they are using this same tactic against the MDOE, further highlighting why these requests to the MPA are unreasonably cumulative, duplicative, and ultimately, defective.

*Smith v. Brown Univ.*, highlights an instance in which a plaintiff requested academic records from a university as part of an inequity to his Title IX claim, which is analogous to the United States of America's requests to the MPA. *Smith v. Brown Univ.*, 695 F. Supp. 3d 246, 250 (D.R.I. 2023). However, in *Smith*, unlike the situation here, the plaintiff requested only six records out of thirty total records that were in the defendant's possession. *Id.* In fact, the plaintiff's requests in *Smith* sought "redacted files" that were "limited to recent cases involving female students," and did not seek the "disclosure of the identity of the students involved." *Id.*

The United States of America's requests to the MPA act almost as a foil to those in *Smith*. Here, the United States' requests are seeking voluminous files and most certainly an "unnecessary and time-consuming detour." *Id.* They are requests which are overbroad by design and seek information of which the scope would be undoubtedly burdensome for the MPA to produce, especially as a third party to litigation between the United States of America and the MDOE. Furthermore, the United States has not clearly demonstrated the relevance of the requested documents. Unlike the situation in *Smith*, where the requested records directly related to the

plaintiff's Title IX claim—that he was wrongly accused of misconduct and sought protection under the statute—the documents there were plainly relevant to understanding the defendant's decision-making process regarding a finding of sexual assault against a male student. That context stands in stark contrast to the present case. Here, there is no individual asserting protections under Title IX, and the matter does not concern the application of Title IX to a specific student or disciplinary action. Instead, the central issue is a question of law: whether Title IX preempts the Maine Human Rights Act. The United States has offered no meaningful argument explaining how any of the subpoenaed documents that may be held by the MPA, could reasonably lead to the discovery of relevant evidence. It remains unclear how such documents would support the United States's legal theory that federal law preempts state law in this case.

The court in *Smith* ruled in favor of the plaintiff in part because he articulated, in detail, the relevance of his discovery requests, demonstrated their proportionality under Fed. R. Civ. P. 26, and crucially, because of their limited scope. *Smith*, at 249–51. Thus, the United States' requests should be denied due to the scope of theirs.

III. **The subpoena should be quashed because the records sought require disclosure of privileged or other protected matters and subjects the MPA to an undue burden including, but not limited to, confidential student names and records, and school personnel, which are protected unless otherwise ordered by the Court.**

The MPA objects to any request that requires disclosure of privileged or other or other protected matters and subjects the MPA to an undue burden, including, but not limited to, confidential student names and records and school personnel protected unless otherwise ordered by the Court. Fed. R. Civ. P. 45(d)(3)(A)(iii) and (iv) provide that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that: . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden."

A.  Family Educational Rights and Privacy Act

In addition to the limitations to the scope of discovery as set out in Fed. R. Civ. P. 26, the United States of America must comply with the higher discovery burden established by the Family Educational Rights and Privacy Act ("FERPA"). *See Smith v. Brown Univ.*, 695 F. Supp. 3d at 249 ("[FERPA] . . . places a 'higher burden on a party seeking access to student records to justify disclosure'"). Because of this higher burden, courts are asked to balance a party's need for information in order to litigate sufficiently with the privacy and sensitive nature of students' education records. *Id.* (citing Fed. R. Civ. P. 26(b)(1); 34 C.F.R. § 99.31(a)(9)(i)–(ii)). Moreover, the court in *Smith* continued to emphasize that even where the plaintiff met his burden for seeking discovery of educational records, it is "paramount that in allowing him to fully litigate his claims, the parties take reasonable steps to protect the interests of individuals not party to this case." *Id.* at 250. Unlike in *Smith*, the United States fails to prove that their discovery needs outweigh the privacy needs of student-athletes in the State of Maine and/or school staff and personnel. As highlighted above, the United States of America's requests starkly contrast with those propounded on Brown University by Mr. Smith. However, the other factor inherent to the court's holding in *Smith*, was the plaintiff's requests' compliance with FERPA's protective framework.

B.  Notice

Typically, pursuant to 34 C.F.R. § 99.30(a) of FERPA, "[a] parent or eligible student shall provide a signed and dated written consent before an educational agency or institution discloses personally identifiable information from the student's education records, except as provided in § 99.31."

Though there is a litigation exception to Section 99.30(a), 34 C.F.R. § 99.31(a)(9) provides that the exception permits disclosure pursuant to a judicial order or subpoena*,* "provided that the

institution makes a reasonable effort to notify the parents or students in advance." *Doe v. Town of Stoughton*, No. 1:24-CV-11316-MPK, 2025 WL 580941, at \*4 (D. Mass. Feb. 21, 2025). The purpose of this litigation exception is to "notify the parent or eligible student of the order or subpoena in advance of compliance, so that the parent or eligible student may seek protective action." 34 C.F.R. § 99.31(a)(9)(ii).

The United States of America is asking this Court to spearhead the circumvention of the rights of parents and students by forcing the disclosure of sensitive information through the MPA, without consent and in contravention to the FERPA framework. Parents and students should have, and according to FERPA, *do have*, the right to lodge their own written objections and motions against the United States of America's discovery requests before the MPA should be compelled to disclose it unilaterally by the DOJ.

   C. <u>Privacy</u>

Notwithstanding the inability of the United States of America's requests as written to comply with FERPA, the overall privacy concerns inherent to their discovery requests drastically outweigh their use to the United States in their litigation against the MDOE.

*Smith* identifies the central issue inherent to the United States' request here, which is that even "redacted disclosure[s] pose[] a risk to third parties given the detail and volume of information that is likely to be in these files." *Smith*, 695 F. Supp. 3d at 250. This reality poses an issue with the United States of America's requests to the MPA, especially when they are requesting exhaustive and unredacted records.

The United States' requests here *rely* on specific identification of data and identities—for their search to identify a small, pin-point focused faction of student-athletes. Not only that, but the DOJ is attempting to target this subsection of athletes through requests which compromise the

security and data of a broader cross-section of students; they are willing to burn the haystack to find their needle.[1]

Even in instances where courts side with the production of materials, privacy is a precedential priority. *See LaRoe v. Div. of Bureau of Special Educ. Appeals*, No. 3:21-CV-30020-MGM, 2024 WL 1093052 (D. Mass. Mar. 13, 2024) (citation modified) ("[a]t this time, [the Plaintiff] may (and should) redact, or cover up, the names of parents and children of the families for whom she was acting as an educational advocate and whom she alleges were involved in SPS's retaliation against her. If [the defendant] objects to redactions, it must propose a solution that protects to the extent possible the identities of third parties . . . .").

## IV.    Conclusion

For the foregoing reasons**,** (1) the subpoena improperly compels the MPA to produce documents because the MPA is not a party to this action and because the subpoenaed documents are irrelevant to the central legal issue in this case; (2) the subpoenas are overbroad, unduly burdensome, unreasonably duplicative, seek irrelevant information not reasonably calculated to lead to the discovery of admissible evidence, appear designed to harass and annoy, request records that either do not exist or are not in MPA's possession and/or are public records accessible to the United States, and constitute a fishing expedition; and (3) the records sought implicate privileged or otherwise protected matters and impose an undue burden on the MPA, including but not limited to disclosure of confidential student information and personnel records protected from disclosure

---

[1] The privacy of teachers, staff, and Maine citizens who may be named in the records sought should also be taken into consideration by this court. The United States of America's requests as written, would be denied by Maine's Freedom of Access Act ("FOAA"), which has disclosure exemption carve-outs for associations like the MPA. *See* 1 M.R.S. § 402(3). Allowing the United States to circumvent the public policy considerations, and overall protections for people's privacy, applicable to entities like the MPA would undermine the purpose and intent of statutes such as FERPA and FOAA.

absent a Court order. Accordingly, the MPA requests that this Court quash the subpoena, or in the

alternative, limited the scope of the subpoena served on MPA by the United States of America.


DATED: August 29, 2025                    /s/ James E. Belleau_____
                                          James E. Belleau, Esq., Maine Bar No. 8314
                                          *Attorney for Maine Principals' Association*
                                          Trafton, Matzen, Belleau & Frenette, LLP
                                          P.O. Box 470, 10 Minot Avenue
                                          Auburn, Maine 04212-0470
                                          (207) 784-4531
                                          Jbelleau@tmbf-law.com