UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MAINE DEPARTMENT OF EDUCATION,<br><br>Defendant. | Case No. 1:25-cv-00173-SDN |

**UNITED STATES' RESPONSE IN OPPOSITION TO THE
MAINE PRINCIPALS' ASSOCIATION MOTION TO QUASH**

This Court should deny the Maine Principals' Association's Motion to Quash, ECF. No. 28. The United States' Subpoena seeks highly relevant information from the Maine Principals' Association ("MPA") that is proportional to the needs of this important case concerning boys playing in sports designated for girls. The Defendant Maine Department of Education ("MDOE") has effectively ceded its responsibility for interscholastic athletics over to the MPA, which means that the MPA possesses a vast amount of highly relevant evidence.

As explained below, this Court should deny the MPA's Motion because: (1) the MPA's evidence is highly relevant; (2) the MPA failed to object with the required specificity, but regardless the Subpoena does not impose an undue burden but rather is proportional to the needs of the case; and (3) the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, contains an exception for the United States that dispels the MPA's stated privacy objections.      .

## I.     LEGAL STANDARD[1]

Courts subject subpoenas issued pursuant to Federal Rule of Civil Procedure 45 to the scope of discovery that Rule 26(b)(1) provides. *FEDEQ DV004, LLC v. City of Portland*, No. 2:21-CV-00327-GZS, 2022 WL 17082083, at *3 (D. Me. Nov. 18, 2022) (citation omitted); *In re W. Maine Acct. Servs., LLC*, No. 2:22-MC-00081-KFW, 2022 WL 2604597, at *1-2 (D. Me. July 7, 2022); *Vesper Mar. Ltd. v. Lyman Morse Boatbuilding, Inc.*, No. 2:19-CV-00056-NT, 2020 WL 877808, at *1 (D. Me. Feb. 21, 2020). Rule 26(b), in turn, provides that the:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Similarly, Rule 45(d)(3)(A)(iv) requires that a subpoena not "subject[] a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).

The movant seeking to quash a subpoena bears the burden of establishing any undue burden. *In re W. Maine Acct. Servs., LLC*, 2022 WL 2604597, at *1-2 (citing *Fuller v. Unum Grp.*, No. 2:13-MC-140-DBH, 2013 WL 5967019, at *2 (D. Me. Nov. 8, 2013); 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2463.1, at 507 (3d ed. 2008)), *report and recommendation adopted,* No. 2:22-MC-00081-GZS, 2022 WL 3716244 (D. Me. Aug. 29, 2022); *accord Vesper Mar. Ltd.*, 2020 WL 877808, at *1.

As part of carrying that burden, a movant "cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of

---

[1] The United States' Response in Opposition incorporates its memorandum of law in this single document.

2

the burden and the injurious consequences of insisting upon compliance." *Strike 3 Holdings, LLC v. Doe*, No. 25-CV-11552-ADB, 2025 WL 2323608, at *1 (D. Mass. Aug. 12, 2025) (quoting *In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, No. MDL 13-2419-FDS, 2013 WL 6058483, at *6 (D. Mass. Nov. 13, 2013). General, boilerplate objections are insufficient. *See Jiang v. Kobe Japanese Steakhouse, Inc.*, No. CV 22-11867-FDS, 2024 WL 4872395, at *8 (D. Mass. Nov. 22, 2024).

## II.     ARGUMENT

### 1. The MPA's Evidence is Highly Relevant

The United States' subpoena to the MPA seeks evidence that is highly relevant and proportional to the United States' claims. Fed. R. Civ. P. 26(b). As explained below, Defendant MDOE has ceded its responsibility over interscholastic athletics to the MPA, the Complaint thus makes many allegations centered on the MPA, and the MPA accordingly possesses a large amount of evidence that is highly relevant to the United States' allegations and claims.

The MPA's chief overriding objection is that it views this case as a "preemption" case, where the central issue is "whether federal law preempts the Maine Human Rights Act." MPA Motion to Quash at 2. According to the MPA (at 2), the MPA's evidence has "nothing to do with the merits of the case." Defendant MDOE apparently disagrees because it filed an Answer, ECF No. 12, rather than move to dismiss the Complaint based on any legal grounds such as lack of preemption.

The United States would happily have this Court resolve the case based on a stipulated record. But Defendant MDOE did not move to dismiss the Complaint on legal grounds, and instead denied virtually every allegation in the United States' Complaint. *See* generally MDOE Answer. The United States accordingly must secure evidence to support the Complaint's

3

allegations, and the MPA—as the MDOE's administrator of interscholastic athletics—possesses a large amount of that evidence supporting the claims.

The words "Maine Principals' Association" or "MPA" appear well over 100 times in the Complaint. Four of the Complaint's subject headers concern the MPA, namely "The Maine Principals' Association's Organizational Structure and Control Over Maine School Sports," Compl. ¶¶ 45-56; "The Maine Principals' Association's Athletics Participation Bylaw that Only Partially Separates Sports by Sex," *id.* ¶¶ 57-84; *"*MDOE's Responsibility for MPA's Discriminatory Athletics Participation Bylaw," *id.* ¶¶ 85-93; and *"*MDOE's Failure to Stop the Maine Principals' Association's Athletics Participation Bylaw Denies Equal Benefits and Opportunities to Girl Athletes," *id.* ¶¶ 94-131. The preceding amounts to 87 (of a total of 164) Complaint paragraphs that come under an MPA header. Defendant's Answer outrighted denied, or denied based on its claimed lack of knowledge, virtually everyone one of these Complaint paragraph allegations. MDOE Answer ¶¶ 45-131.

The Complaint paragraphs directly tie the MPA to the United States' claims and show that, contrary to the MPA's suggestion (at 2), the MPA's evidence has much "to do with the merits of the case." And this belies the MPA's accusation (at 4) that the United States is seeking information "for building a political or narrative case" and a "backdoor policy fact-finding missions untethered from the actual claims and defenses." The United States's Subpoena to the MPA seeks highly relevant evidence directly tied to the Complaint's allegations and its claims.

The MPA incorrectly asserts (at 3) that it is not subject to Title IX because the United States "did not allege any facts supporting a plausible inference that a federal recipient ceded 'controlling authority over a federally funded program to' the MPA." MPA Motion to Quash at 4 (quoting *Nat'l Collegiate Ass'n v. Smith*, 525 U.S. 459, 461 (1999)). Yet the Complaint

specifically alleges the contrary, namely that the "MDOE, despite having the obligation and authority to control athletics for primary and secondary education schools in Maine, *has effectively ceded that control to the Maine Principals' Association*." Compl. ¶ 45 (emphasis added). And as above, the Complaint, among other things, also contains a header entitled "MDOE's Responsibility for MPA's Discriminatory Athletics Participation Bylaw." *See* Compl. ¶¶ 85-93.

The MPA is similarly mistaken (at 5) that the United States "did not proceed with a claim against the MPA, by virtue of the fact the MPA is not subject to Title IX." Because the MDOE has ceded control to the MPA, the United States could have named the MPA as a defendant. *See, e.g.*, *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1294 (11th Cir. 2007) (applying the ceding control as applicable to the University of Georgia Athletic Association); *A.B. v. Hawaii State Dep't of Educ.*, 386 F. Supp. 3d 1352, 1357 (D. Haw. 2019) (applying ceding control to Oahu Interscholastic Association); *Barrs v. Southern Conference*, 734 F. Supp. 2d 1229, 1235 (N.D. Ala. 2010) (collegiate athletic conference that governed, regulated, operated, and controlled intercollegiate athletics of its member schools could be liable under Title IX if member schools delegated and assigned authority to do so to conference); *Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n*, 80 F.Supp.2d 729, 733-34 (W.D. Mich. 2000); *see also Horner v. Kentucky High Sch. Ath. Ass'n*, 43 F.3d 265, 272 (6th Cir. 1994) (Kentucky High School Athletic Association properly sued under Title IX where it had control over interscholastic athletic programs that were receiving federal financial assistance).[2] Despite this

---

[2] The MPA cites (at 3, 5) an internal out-of-date, non-authoritative "Title IX Legal Manual," which the Department of Justice no longer publishes or uses. The United States believes that even that out-of-date Manual specifically cautioned (at footnote 22) that "[t]he Court in [*Nat'l Coll. Athletic Ass'n v. Smith*, 525 U.S. 459 (1999)] did not address the Department's argument that [ ]when a recipient cedes controlling authority over a federally

Title IX jurisdiction of the MPA, the United States simply sued Defendant MDOE because the MDOE is ultimately responsible for interscholastic athletics and the authority it has ceded to the MPA.

Regardless, that the United States simply sued Defendant MDOE, of course, does not somehow change that MPA possesses a large amount of highly relevant evidence. This Court should accordingly deny the MPA's Motion to Quash.

**2. The Subpoena Does Not Impose an Undue Burden.**

This Court should also deny the MPA's request to quash the Subpoena because of the MPA's failure to object with sufficient specificity. But regardless, the Subpoena's request for the MPA's highly relevant evidence is not unduly burdensome but rather proportional to the needs of this important case concerning boys playing in sports designated for girls.

The MPA never reveals which particular requests are unduly burdensome, much less why a particular request is unduly burdensome. Beyond the preemption argument above, the MPA just makes a general overall boilerplate objection that the Subpoena will cause an undue burden. *See* MPA Motion to Quash at 7 ("They are requests which are overbroad by design and seek information of which the scope would be undoubtedly burdensome for the MPA to produce."), 6 ("The overbreadth of the subpoenas indicate that the United States does not know what records exist and is merely speculating about what it may discover . . ."). The MPA, however, "cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance." *Strike 3 Holdings, LLC v. Doe*, No. 25-CV-11552-ADB, 2025 WL 2323608, at *1 (D. Mass. Aug.

---

funded program to another entity, the controlling entity is covered by Title IX regardless whether it is itself a recipient. *Id.* at 469-71."

12, 2025) (citation omitted); *accord Jiang v. Kobe Japanese Steakhouse, Inc.*, No. CV 22-11867-FDS, 2024 WL 4872395, at *8 (D. Mass. Nov. 22, 2024) (finding general, boilerplate objections are insufficient).

Moreover, the MPA's assertions (at 6, 7) that the United States' requests seek "much" information that "does not exist" cuts against any undue burden. The MPA does not need to gather and produce documents for those, but rather just respond that it has no responsive documents.

Despite the MPA failing to object with the required specificity, the United States will articulate the high relevance of its particular requests:

- Requests numbers 1-4 go to necessary background evidence on the MPA, such as who runs the MPA (and relatedly who the United States may need to depose), which schools are MPA members, and athletic rosters. *See, e.g.*, Compl. ¶¶ 45-56; *cf.* Answer ¶¶ 45-56.

- Request numbers 5-9 ask for records of athletic competitions where students are competing in athletic events designated for the opposite sex, which is highly relevant to, among other things, "MDOE's Failure to Stop the Maine Principals' Association's Athletics Participation Bylaw Denies Equal Benefits and Opportunities to Girl Athletes." *See, e.g.*, Compl. ¶¶ 94-131; *cf.* Answer ¶¶ 94-131.

- Request numbers 10-16 request evidence on the MPA's Handbook and polices that allow boys to compete in sports designated for girls, and also particularly the reasons why the MPA changed its policy from first acknowledging that boys have an unfair athletic advantage and can pose an unacceptable risk of physical injury to then completely deleting this acknowledgement. This is highly relevant to, among other

things, "The Maine Principals' Association's Athletics Participation Bylaw that Only Partially Separates Sports by Sex." *See, e.g.*, Compl. ¶¶ 57-84, 55-56; *cf.* Answer ¶¶ 57-84, 55-56.

- Request number 16 asks for documents showing differences in standards for sports designated for males compared to sports for females, (such as equipment size), which is highly relevant to, among other things, the inherent athletic advantages of males. *See, e.g.*, Compl. ¶¶ 27, 61, 68-72, 96 & 129; *cf.* Answer ¶¶ 27, 61, 68-72, 96 & 129.

- Request numbers 17-18 request evidence regarding "complaints, concerns, praise, or reports" regarding transgender athlete participation and the MPA's response, which is highly relevant to, among other things, "MDOE's Failure to Stop the Maine Principals' Association's Athletics Participation Bylaw Denies Equal Benefits and Opportunities to Girl Athletes." *See, e.g.*, Compl. ¶¶ 94-131; *cf.* Answer ¶¶ 94-131, *see also* Compl. ¶¶ 126-27 ("Girl athletes and their families haven an interest, and have expressed this interest…"); *cf.* Answer ¶¶ 126-27; 34 CFR § 106.41(c) (Educational programs shall "provide equal athletic opportunity for members of both sexes," including "the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes.").

- Requests numbers 20-21 ask for non-privileged memoranda discussing MPA's Title IX obligations, and the MDOE's obligations, regarding student athletic participation and gender identity. This evidence is highly relevant to, among other things, MDOE's responsibility for interscholastic athletics, the "MDOE's Control over School Athletics and Obligation to Ensure Equal Athletic Opportunities," and MDOE's ceding that authority over to the MPA. *See e.g,*, Compl. ¶¶ 31-45; *cf.* Answer ¶¶ 31-45.

- Requests numbers 22-23 ask for communications with the MDOE (and its joint rule partner the Maine Human Rights Commission) regarding student athletic participation, which is highly relevant to, among other things, MDOE's responsibility for interscholastic athletics and MDOE's ceding that authority over to the MPA.[3] *See e.g,,* Compl. ¶¶ 31-45; *cf.* Answer ¶¶ 31-45; *see also* Compl. ¶ 40 (regarding MDOE's joint rule with the Maine Human Rights Commission).

All these requests for the MPA's highly relevant evidence are also proportional to the needs of the case. The United States submits that boys playing in girls' sports is an incredibly "important[t]" "issue[] at stake in the action." Fed. R. Civ. P. 26(b)(1). As above the MPA is a major focus of the United States' allegations, and the MPA's evidence is immensely "important[t] to "resolving the issues." Fed. R. Civ. P. 26(b)(1). The requests contain a reasonable time limit of January 2021 to the present, which corresponds to the 2021 amendment of the Maine Human Rights Act. *See* Compl. ¶ 37. The Defendant MDOE has denied virtually all the Complaint's allegations regarding the MPA; the United States thus does not have other "access to [this] relevant information." Fed. R. Civ. P. 26(b)(1). This Court should accordingly find that the "likely benefit" of the subpoenaed evidence "outweighs" any "burden or expense" on the MPA. *Id.*[4]

---

[3] Given that Defendant MDOE essentially disavows it has anything to do with the MPA, the MPA seemingly could easily fulfill this request with a simple response of "no responsive documents."

[4] The United States' cover letter to the Subpoena explained that the United States was "of course, willing to take reasonable measures to work with you to reduce any burdens that the enclosed subpoena may impose one you." *See* Exhibit 1. The MPA did not take the United States up on that offer prior to filing its Motion.

This Court accordingly should deny the MPA's Motion to Quash because it lacks the required specificity, but also because the Subpoena requests highly relevant evidence that is proportional to the needs of the case.

### 3. The Family Educational Rights and Privacy Act Excepts the United States.

The MPA also argues (at 8-10) that compliance with the United States' subpoena would require the disclosure of student records in violation of the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g.  The statute, however, contains an exception for the United States applicable here.  FERPA permits disclosure without consent to "authorized representatives of the Attorney General" of the United States, 20 U.S.C. § 1232g(b)(1)(c)(ii), for the purpose of investigating or enforcing federal legal requirements applicable to federally supported education programs, *id.* § 1232g(b)(3).  *See also* 34 C.F.R. § 99.31(a)(3)(ii) (stating no consent required for disclosure to Attorney General); *id.* § 99.35.  This includes enforcement of Title IX here

Moreover, even if FERPA applied to the United States's Subpoena, the United States submits that this Court's likely soon entering a Confidentiality Order in this case should address all the MPA's privacy concerns.  *See, e.g.*, U.S. Response to Def.' Motion for Entry of Confidentiality Order, ECF. No. 34.

### III.  CONCLUSION

For the above reasons, this Court should deny the MPA's Motion to Quash and order the production of the requested evidence from the MPA.

        Respectfully submitted,

        */s/ Matthew J. Donnelly*
        MATTHEW J. DONNELLY
        Attorney
        United States Department of Justice
        950 Pennsylvania Avenue, NW
        Washington, D.C. 20530
        Telephone: (202) 616-2788
        Email: matthew.donnelly3@usdoj.gov

Dated: September 3, 2025