UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MAINE DEPARTMENT OF EDUCATION,<br><br>    Defendant. | CASE NO. 1:25-cv-00173-SDN |

**MAINE PRINCIPALS' ASSOCIATION'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO QUASH SUBPOENA FOR INSPECTION WITH INCORPORATED MEMORANDUM OF LAW**

NOW COMES the Maine Principals' Association ("MPA"), by and through undersigned counsel, and hereby replies to Plaintiff's Opposition to MPA's motion to quash the subpoena served on it by counsel for the United States of America ("subpoenaing party"), as follows. Without waiving any prior objections, the MPA is largely willing to produce documents responsive to the United States of America's requests, to the extent the requests are in MPA's possession and: (1) seek information relevant to the legal issues in this matter; (2) are not overbroad or unduly burdensome; and (3) do not require disclosure of personally identifiable information of individual students, teachers, or personnel, unless otherwise ordered by this Court. MPA has specifically set forth its objections to the requests that fail to meet these criteria. The following arguments detail the grounds on which the MPA objects to those specific requests, including issues of relevance, burden, overbreadth, and confidentiality. Accordingly, MPA respectfully requests that the Court quash or appropriately limit the affected portions of the subpoena.

1

### I. The Requests Are Not Relevant

Under the Federal Rules of Civil Procedure, a subpoena must be limited to materials that are nonprivileged and relevant to the claims or defenses in the case, and proportional to any relevant party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1), 45. Requests that are untethered from the specific factual or legal issues of the case do not meet this standard. Here, although some of the United States' requests may touch upon relevant issues, not all of them are justified by the scope of the matter as alleged in the Complaint, including but not limited to: requests for the production of all athletic rosters for the state (No. 4); "all complaints, concerns, praise, or reports received by the MPA from school districts, parents, students, educations, or community members" (No. 18); and "all documents regarding the MPA's response to the complaints, concerns, praise, or reports described in Request Number 18, including internal assessments, investigations, conclusions, and any communications with school districts" (No. 19). These requests reach far beyond what is necessary to evaluate the specific issues in dispute. For example, the United States has not demonstrated how the production of all athletic rosters for the entire state—including schools, grades, and individual names—or the production of complaints and concerns from the public (of which there are thousands), would help prove or disprove a material fact or lead to admissible evidence. The request lacks reasonable bounds and includes personally identifiable information of individuals who are entirely unrelated to the underlying controversy.

Additionally, the United States of America clearly already possesses much of this information, including MPA's handbook as well as the names, schools, athletic participation, and performance statistics of the students central to this dispute, as acknowledged in the Complaint.

Complaint ¶¶ 57–72, 100–25. The breadth of these requests demonstrates that this is not a narrowly tailored request but rather an impermissible fishing expedition.

Furthermore, even where the United States' requests are found to be relevant to the present issues in dispute, the Court must balance the relevance of the information requested with the confidentiality interests at stake. *Sterling Merchandising Inc. v. Nestle, S.A.*, No. CIV.06-1015 SEC, 2008 WL 1767092, at *2 (D.P.R. Apr. 15, 2008). In *Sterling Merchandising Inc. v. Nestle, S.A.*, even though the court found that the requested information was relevant and not privileged, the court still imposed protective measures to balance the parties' competing interests. *Id.*

**II.     The Subpoena Imposes An Undue Burden and Is Overbroad**

   A. <u>Overbroad</u>

As a nonparty to this matter, MPA is entitled to heightened protection from overly burdensome or intrusive subpoenas, as courts have consistently recognized that nonparties should not be subject to the same discovery demands as parties to the litigation. *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (citing *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993); *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980); *Addamax Corp. v. Open Software Found., Inc.*, 148 F.R.D. 462, 468 (D. Mass. 1993)). Several of the subpoena requests, as discussed in Section I, are vastly overbroad, particularly when directed at MPA—a nonparty that has not initiated or shaped the underlying policy, but has merely implemented requirements mandated by state law. *See* Complaint, ¶¶ 86, 89, 91–92. The Complaint itself concedes that the State of Maine amended its Human Rights Act in 2021, and that the MPA is obligated to comply. Complaint ¶ 37. MPA is not a policy-making entity; it is simply acting in accordance with legal directives imposed by the State of Maine.

   B. <u>Undue Burden</u>

Furthermore, complying with requests, such as Numbers 4, 18, and 19, would require reviewing, sorting, processing, and likely redacting, a significant number of student records from schools across the entire state as well as personally identifiable information of students, teachers, and personnel. That process would be resource-intensive, time-consuming and place a significant financial and operational burden on MPA—a nonparty in this case.

### III. FERPA Exception Does Not Eliminate Student Privacy Interests

The United States correctly asserted in its opposition to MPA's motion to quash that the Family Educational Rights and Privacy Act ("FERPA"), in 20 U.S.C. § 1232g(b)(1)(c)(ii) and § 1232g(b)(3), contains an exception allowing disclosure of student records without consent to authorized representatives of the Attorney General of the United States. *See also* 34 C.F.R. § 99.31(a)(3)(ii). However, the Act further provides that although access to student records is permitted in that context, this access is limited, such that "when collection of personally identifiable information is specifically authorized by Federal law, any data collected by such officials shall be protected in a manner which will not permit the personal identification of students and their parents." 20 U.S.C. § 1232g(b)(3). This suggests that although there are exceptions for the disclosure of records, these exceptions neither negate the privacy interests embedded in the statute nor remove the court's duty to consider safeguards for student confidentiality. Thus, even where a subpoena fits within a FERPA exception, the sensitivity of the information requested (e.g., names, grade, sports participation of minors) compels caution. The Court should recognize that mass disclosure of personally identifiable information for thousands of uninvolved students is not appropriate, especially where narrow and targeted requests would suffice.

### IV. Objections to Subpoena

Without waiving any of its previous objections, MPA sets forth below its specific objections to each subpoena request, identifying those requests to which it will produce responsive documents, and those it opposes, along with the corresponding legal and factual bases for each position, which are discussed in further depth in the preceding sections. In summary, MPA agrees to produce relevant documents in its possession sought by the United States that are not overly burdensome, overbroad, and that are limited in scope to remove any personally identifiable information for students, teachers, and personnel, unless otherwise ordered by the Court.

**REQUEST NO. 1:** Please produce a current organizational chart for the Maine Principals' Association ("MPA") reflecting current positions and current occupants of those positions.

**Response:** MPA will produce this information.

**REQUEST NO. 2:** If not included in response to Request Number 1, please produce current organizational charts for the MPA's Interscholastic Management Committee and the Gender Identity Equity Committee.

**Response:** MPA will produce this information.

REQUEST NO. 3: Please produce a list of all schools that were members of the MPA during the 2023-2024 school year, and separately schools that were members for the 2024-2025 school year. The United States assumes the MPA maintains this information as ESI; if not please produce documents with the requested information, or portions of the information, that if compiled together would enable the creation of such a list.

**Response:** MPA will produce this information.

**REQUEST NO. 4:** Please produce all interscholastic athletic rosters for schools, including names, school, and grade (e.g., 12th or senor) maintained or received by MPA from the 2023-2024 and 2024-2025 school years showing student participation disaggregated by sport and sex. The United States assumes the MPA maintains this information as ESI; if not please produce documents with the requested information that if compiled together would enable the creation of such a list.

**Response:** MPA does not collect this information, other than post-season tournament rosters. MPA further objects to this request as irrelevant, ambiguous, overbroad, unduly burdensome, and not proportional, as it would require MPA to produce rosters containing personally identifiable

5

information of students, many of whom are unrelated to the underlying controversy.

**REQUEST NO. 5:** Please produce a list of all known male student athletes who competed in any MPA athletic competition designated for females. The list should include the students' name, school, grade, and the sport or team. If no such comprehensive list exists, please produce documents with the requested information, or portions of the information, that if compiled together would enable the creation of such a list.

**Response**: MPA does not collect this information.

**REQUEST NO. 6:** For any student athlete included in the response for Request Number 5, please produce documents showing the results of the athletic events the student participated in, including any ranking statistics, (such as the full order of placements and times in a race), as well as, if applicable, the results and ranking statistics of the companion (i.e., same or similar) athletic competition designated for males.

**Response**: MPA does not collect this information. The MPA further adds that information responsive to this request is maintained by a third party and is publicly available to the United States of America.

**REQUEST NO. 7**: If not included in your response for Request Number 6, please produce documents showing the results of athletics events, including any ranking statistics, (such as the full order of placements and times in a race), as well as, if applicable, the results and ranking statistics of the companion (i.e., same or similar) athletic competition designated for the opposite sex, for the following students: . . . .

**Response**: Information responsive to this request is maintained by a third party and is publicly available to the United States of America.

**REQUEST NO. 8:** Please produce a list of all known female student athletes who competed in any MPA athletic competition designated for males. The list should include the students' name, school, grade, and the sport or team. If no such comprehensive list exists, please produce documents with the requested information, or portions of the information, that if compiled together would enable the creation of such a list.

**Response:** MPA does not collect individual student information.

**REQUEST NO. 9:** For any student athlete included in the response for Request Number 8, please produce documents showing the results of the athletic events the student participated in, including any ranking statistics, (such as the full order of placements and times in a race), as well as, if applicable, the results and ranking statistics of the companion (i.e., same or similar) athletic competition designated for females.

**Response:** MPA does not collect this information.

**REQUEST NO. 10**: For the period of January 1, 2018, to the present, please produce all iterations of the MPA Handbook.

        **Response:**    MPA will produce this information.

**REQUEST NO. 11**: Please produce all meeting minutes and any transcripts or recordings of meetings for the MPA's Gender Identity Equity Committee.

        **Response:**    MPA objects to this request as irrelevant, ambiguous, overbroad, and unduly burdensome, not proportional and includes personally identifiable information concerning students, teachers and personnel.

**REQUEST NO. 12**: Please produce all documents that show, record, or reflect the reasons for the iterations of MPA Handbook, Interscholastic Division Bylaws, Article II, § 12, which the MPA has styled "Transgender Student Athlete Participation," "Gender Equity and Inclusion Policy," and potentially other names.

        **Response:**    MPA objects to this request as irrelevant, ambiguous, overbroad, and unduly burdensome, not proportional and includes personally identifiable information concerning students, teachers and personnel.

**REQUEST NO. 13**: If not included in your response to Request Number 12, please produce all documents that show, record, or reflect the reasons for the MPA deleting the following language from MPA Handbook, Interscholastic Division Bylaws, Article II, § 12: At the same time, the MPA is committed to ensuring fair competition and adequate protection of student athletes. Consistent with its principles, the MPA believes that all students should have the opportunity to participate in MPA activities in a manner that is consistent with their gender identity, unless such participation would result in an unfair athletic advantage or would present an unacceptable risk of injury to other student athletes.

        **Response:**    The 2022-2023 MPA Handbook will be produced and includes a message regarding the change in policy.

**REQUEST NO. 14:** If not included in your response to Request Number 12, please produce all documents that show, record, or reflect the reasons for the MPA eliminating the Handbook provision that an athlete's participation in an opposite sex designated sport should not be approved if the Gender Identity Equity Committee is convinced that "allowing the student to compete on a single sex team consistent with his or her gender identity would likely give the student athlete an unfair athletic advantage or pose an unacceptable risk of physical injury to other student athletes."

        **Response:**    MPA will not produce this information as these documents are protected by attorney-client privilege between the MPA

and MPA's counsel. This is also overly broad, unduly burdensome and not proportional to Plaintiff's claims.

**REQUEST NO. 15:** If not included in your response to Request Number 12, please produce all documents that show, record, or reflect the reasons for the MPA deleting the following language from MPA Handbook, Interscholastic Division Bylaws, Article II, § 12: BINARY (SINGLE SEX) SPORTS TEAMS. The MPA supports student athletes regardless of their gender identity or expression. The MPA also recognizes that high school sports teams have traditionally been binary (single sex) and believes that it is important to continue to offer single sex interscholastic athletic teams in order to ensure equal athletic opportunities for girls. Although there are many exceptions to the rule, most high school aged boys have a distinct athletic advantage competing against their female counterparts.

  **Response:**  Responsive information may be found in the MPA Handbooks that will be produced under "Student Eligibility".

**REQUEST NO. 16:** Please produce all documents showing any differences in MPA standards for male designated sports as compared to the companion (i.e., same or similar) sport designated for females, such as differences in equipment (e.g., ball size, shot put weight, hurdle height), distances (e.g., golf tee off locations), weight classes, times, etc.

  **Response:**  MPA adheres to the set of public athletic guidelines and rules promulgated by the National Federal of State High School Associations ("NHFS") and Maine law. Information responsive to this request is maintained by a third party and is publicly available to the United States of America. MPA will provide the documents responsive to Request No. 10 and will also produce bulletins for MPA activities.

**REQUEST NO. 17:** Please produce all policies, guidance, directives, or memoranda issued by the MPA to any school district regarding sex-based classifications in student athletics or student-athlete facility access (e.g., locker rooms, restrooms), including any addressing gender identity or transgender student participation.

  **Response:**  MPA objects to this request as irrelevant, ambiguous, overbroad, and unduly burdensome, not proportional and includes personally identifiable information concerning students, teachers and personnel.

**REQUEST NO. 18:** Please produce all complaints, concerns, praise, or reports received by the MPA from school districts, parents, students, educators, or community members regarding transgender student participation in sex-segregated sports or use of sex-specific athletic facilities (e.g., locker rooms, restrooms).

>**Response:** MPA objects to this request as irrelevant, ambiguous, overbroad, and unduly burdensome and not proportional and it would require MPA to produce thousands of communications that may identify individual students, staff, and personnel.

**REQUEST NO. 19:** Please produce all documents regarding the MPA's response to the complaints, concerns, praise, or reports described in Request Number 18, including internal assessments, investigations, conclusions, and any communications with school districts.

>**Response:** MPA objects to this request as irrelevant, ambiguous, overbroad, and unduly burdensome and not proportion and it would require MPA to produce thousands of communications that may identify individual students, staff, and personnel.

**REQUEST NO. 20:** Please produce all non-privileged internal memoranda, legal analyses, or other documents discussing MPA's obligations under Title IX.

>**Response:** MPA will not produce this information as these documents are protected by attorney-client privilege between the MPA and MPA's counsel. This is also overly broad, unduly burdensome and not proportional to Plaintiff's claims.

**REQUEST NO. 21:** Please produce all documents explaining the role of the Maine Department of Education ("MOOE") in implementing or enforcing state or federal laws or policies related to student athletic participation and gender identity.

>**Response:** MPA will produce the priority notice sent out by the MDOE. It is unaware of any other responsive documents.

**REQUEST NO. 22:** Please produce all communications between the MPA and the MDOE regarding student participation in interscholastic athletics.

>**Response:** None.

**REQUEST NO. 23**: Please produce all communications between the MPA and the Maine Human Rights Commission regarding student participation in interscholastic athletics based on sex or gender identity.

>**Response:** MPA will not produce this information as these documents are protected by attorney-client privilege between the MPA and MPA's counsel. This is also overly broad, unduly burdensome and not proportional to Plaintiff's claims.

### V.     Conclusion

Accordingly, several portions of the subpoena: (1) are overbroad and seek records concerning thousands of students, teachers, and personnel with no connection to the underlying case and are not proportional to the Plaintiff's claims; and (2) impose an undue burden on a nonparty that is merely implementing policies mandated by state law. While FERPA may permit disclosure under certain exceptions, it does not eliminate the need protect the confidentiality of student information, particularly when the records include sensitive details such as names, grade, and sex. In light of these concerns, the Court should carefully balance the parties' competing interests by quashing the overbroad requests, or at a minimum, narrowing the scope and requiring appropriate protective measures, including redactions and/or a protective order, to safeguard student privacy.

DATED: September 4, 2025                     /s/ James E. Belleau_____
                                             James E. Belleau, Esq., Maine Bar No. 8314
                                             *Attorney for Maine Principals' Association*
                                             Trafton, Matzen, Belleau & Frenette, LLP
                                             P.O. Box 470, 10 Minot Avenue
                                             Auburn, Maine 04212-0470
                                             (207) 784-4531
                                             Jbelleau@tmbf-law.com