UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MAINE DEPARTMENT OF EDUCATION,<br><br>Defendant. | Case No. 1:25cv00173-SDN |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO AMEND ANSWER**

This Court should deny the Defendant Maine Department of Education's Motion to Amend Answer, ECF No. 26.  Defendant seeks to amend its Answer, ECF No. 12, to add affirmative defenses for "selective enforcement" and "vindictive prosecution."  Like Defendant's similar request to take discovery on these assertions, *see* Def.'s Ltr. Br., ECF No. 27, this Court should deny the Motion to Amend here because these purported defenses are frivolous and futile, *see* US Ltr. Br., ECF No. 38.

The Maine Governor publicly admitted that Maine was violating Title IX, and when challenged by the President, the Maine Governor publicly and steadfastly confirmed that Maine was going to continue to violate Title IX—ending with "See you in court."  Two months later, the United States filed this suit.  And it did so only after two federal Departments investigated, found Title IX violations (which the Governor had already publicly admitted), and received Defendant's affirmative confirmation that there was no chance that Defendant would voluntarily comply with Title IX.

Given that background, the Court should find Defendant's selective enforcement and vindictive prosecution accusations are futile.  The law grants the United States a formidable

presumption that it proceeded with regularity and brought this case in good faith.  Defendant cannot make out the necessary elements for its purported defenses.  As explained below, Defendant cannot show that the United States singled Defendant out for its selective enforcement defense.  And Defendant has not identified a protected statutory or constitutional right for its novel attempt to add a vindictive prosecution defense in this civil case.  These failures doom Defendant's purported defenses as a matter of law.  Moreover, even if Defendant's additional purported defenses were somehow not futile on the necessary elements, the requested amendment is still futile because Defendant cannot effectively get its stated dismissal relief because Defendant's Title IX violations are ongoing.

This Court accordingly should deny Defendant's attempt to impermissibly sidetrack this case, and deny Defendant's requested amendment as futile, and a dilatory attempt to take irrelevant, harassing discovery of the United States' internal privileged materials.

## MEMORANDUM OF LAW

### I.  BACKGROUND

On February 17, 2025, a boy won first place in the girls' high school pole vault competition at the Maine Indoor Track & Field Meet.  Compl. ¶ 102.  The boy's win was widely reported in the news and social media, including through a Maine State House Representative's social media posts on February 17, 2025.  *See Libby v. Fecteau*, No. 25-CV-83, 2025 WL 1148726, at *2-3 (D. Me. Apr. 18, 2025).[1]  Days later on February 20, 2025, the President relayed at a public event that he "heard men are still playing" in Maine and that "they need to

---

[1] *See also* https://www.wmtw.com/article/maine-lawmaker-highlights-transgender-track-and-field-athlete/63845602.

clean that up" to keep federal funding.[2] Later that same day, the Maine Governor and state Attorney General responded by releasing statements that they would "take necessary legal action to restore" any terminated funding and "defend Maine's laws."[3] (As this Court knows, Maine has a state law that purports to allow boys to play in girls' sports. Me. Rev. Stat. Ann. tit. 5, § 4601.) The next day, February 21, 2025, the President asked the Maine Governor at a public event whether Maine was going to comply with an Executive Order that, in accordance with Title IX, seeks to prevent boys from playing in girls' sports. The Governor expressed her (incorrect) opinion that Maine was complying with "federal law." [4] More importantly, she also publicly and steadfastly responded that Maine would not comply with the Executive Order that captures Title IX's prohibition on boys in girls' sports, ending with: "See you in court.[5]

The relevant substance of these events is: (1) the Maine Governor publicly confirmed that Maine was going to keep allowing boys to compete in girls' sports; (2) the President then publicly challenged the Governor as to whether Maine was going to continue this; and (3) in response, the Maine Governor again publicly confirmed that Maine was going to keep allowing boys to compete in girls' sports. This amounts to the Maine Governor publicly confirming that Maine was violating and will continue to violate Title IX.

There is nothing sinister or even remarkable about multiple federal agencies immediately starting Title IX investigations after the Governor's public admission. Right after the Governor's public admission, the offices for civil rights at the U.S. Department of Education ("USDOE

---

[2] *See* https://www.pressherald.com/2025/02/21/trump-threatens-to-cut-federal-funding-to-maine-over-transgender-athlete-policy/; https://fortune.com/2025/02/21/trump-threatens-to-withhold-federal-funding-from-maine-governor-law-transgender-athletes-state/.
[3] *Id.*
[4] *Id.*
[5] *Id.*

OCR") and U.S. Department of Health and Human Services ("HHS OCR") initiated investigations into Defendant. Shortly after on February 25, 2025, the U.S. Attorney General sent Title IX warning letters to Maine, Minnesota, and California.[6] Subsequently HHS OCR, and then later also USDOE OCR, made findings that Defendant was violating Title IX. *See* HHS OCR Feb. 25, 2025, Ltr., ECF No. 16-5; USDOE OCR March 19, 2025, Ltr., ECF No. 16-2.[7] Defendant suggests (at 4-5) that these agencies made these findings quickly, but this is unsurprising as they just needed to confirm the Governor's public admission of Title IX violations.

After the findings, both HHS OCR and USDOE OCR unsuccessfully attempted to obtain Defendant's voluntary compliance with Title IX. Defendant had no interest. On April 11, 2025, Defendant sent USDOE OCR a letter confirming that Defendant would "not sign the Resolution Agreement, and we do not have revisions to counter propose. We agree we are impasse." Def. ltr. to USDOE OCR at 1, April 11, 2025, ECF No 38-1. That letter also confirmed that Defendant believes that "[n]othing in Title IX or its implementing regulations prohibits schools from allowing transgender girls and women to participate on girls' and women's sports teams." *Id.* A few days after this confirmed impasse and confirmed incorrect view of Title IX, the United States filed suit on April 16, 2025.

---

[6] Letter from Attorney General Bondi to the State of Maine, https://www.justice.gov/ag/media/1390796/dl; Letter from Attorney General Bondi to the State of Minnesota, https://www.justice.gov/ag/media/1390801/dl; Letter from Attorney General Bondi to the State of California, https://www.justice.gov/ag/media/1390791/dl.

[7] Defendant's reference (at 4) to an apology "subsequently" requested by the President, occurred on March 22, after the agencies had already made their findings. *See* https://www.politico.com/news/2025/03/22/donald-trump-trans-athletes-maine-00003871; https://truthsocial.com/@realDonaldTrump/posts/114205890583765400.

## II.     LEGAL STANDARD

Pursuant to Rule 15, Defendant may amend its answer with this "[C]ourt's leave," and the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But this Court should not allow amendment when sought for a "dilatory" reason or the amendment would be "futile." *Rife v. One W. Bank, F.S.B.*, 873 F.3d 17, 20–21 (1st Cir. 2017) (denying motion to amend); *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Rule 1 provides that Rule 15, like all the Rules, should be "construed, administered, and employed by the court . . . to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

## III.    ARGUMENT

This Court should deny Defendant's requested amendment because it is legally futile and would serve no purpose other than to improperly impede the "the just, speedy, and inexpensive determination" of the case. Defendant cannot make out the required elements for its purported "selective enforcement" or "vindictive prosecution" defenses. And Defendant's "vindictive prosecution" defense is not even available in this civil case. Last, the amendment is futile because Defendant's Title IX violations are ongoing, making any requested dismissal effectively a request to delay because a dismissal could not grant Defendant permission to keep violating Title IX in perpetuity.

### A. Defendant's Selective Enforcement Defense is Futile.

For its selective enforcement defense, Defendant would bear the burden of proving that "(1) [Defendant], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Rubinovitz v. Rogato*, 60 F.3d 906, 909-10 (1st Cir. 1995) (citation omitted); *accord*

*SEC v. Navellier & Assocs., Inc.*, 108 F.4th 19, 39 (1st Cir. 2024), *cert. denied,* No. 24-949, 2025 WL 1603606 (U.S. June 6, 2025)).  Defendant does not point to exercising a constitutional right, nor can it invoke race, religion, or some other suspect class.  Defendant accordingly must hang its purported defense solely on bad faith or malicious intent.  *Rubinovitz*, 60 F.3d at 911.

      Defendant would fail on the first "selectively treated" element.  Despite Defendant's assertion (at 2, 5) that it was "singled out," the United States has sued and has ongoing similar Title IX sports related investigations against multiple jurisdictions.  As above, the U.S. Attorney General sent a letter not just to Maine, but also to California and Minesota.  Just days after the United States sued Defendant here, Minnesota preemptively sued the United States in the middle of its Title IX investigation.  Compl., *Minnesota v. Trump*, No 25cv1608 (D. Minn. April 22, 2025).  According to Minnesota, the United States "Target[ed] Minnesota, Maine, and California."  *Id.* at p. 6.  More importantly, the United States has filed a Title IX lawsuit against California that is extremely similar to this case.  *See* Compl., *United States v. California Interscholastic Federation*, No. 8:25cv1485 (C.D. Cal. July 9, 2025), ECF No. 1.  These lawsuits preclude any selective enforcement defense.

      Moreover, USDOE OCR has multiple ongoing Title IX sports related investigations.  *See* ECF No. 38-2.  These investigations also preclude a selective enforcement defense.  And that some have not yet resulted in litigation is of no moment:  the United States has limited resources and thus cannot investigate or pursue every violator (and certainly not all at once).  *United States v. Stokes*, 124 F.3d 39, 45 (1st Cir. 1997) (A "prosecutor does not have the resources (time, money, staff) to charge every suspected malefactor . . . they may (indeed, they should) make judgments about dangerousness, set priorities, and give heightened attention to cases which inspire a sense of outrage."); *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980) (The

6

Constitution "does not require that all evils of the same genus be eradicated or none at all."). The United States understandably made Defendant one of its higher priorities after a highly publicized sporting event, and the Governor publicly admitted Maine was and would keep violating Title IX, and Defendant confirmed it would not voluntarily comply with Title IX. Defendant has not and cannot identify a similarly situated comparator that has not been sued, which doubly dooms its selective enforcement defense. *Rubinovitz*, 60 F.3d at 910; *Navellier & Assocs., Inc.*, 108 F.4th. at 40 (rejecting comparator that had committed fewer wrongful acts and received less warning).

Because Defendant cannot meet this necessary similarly situated element, Defendant's purported "selective enforcement" defense would automatically fail regardless of the second element concerning bad faith. *Navellier & Assocs., Inc.*, 108 F.4th at 40 ("We need not consider whether the alleged selective treatment was based on impermissible considerations or bad faith"); *Lewis*, 517 F.3d at 25. But Defendant cannot meet that element either. Bad faith requires more than "angry responses" to Maine's "recalcitrance," but rather "adverse governmental action that is not motivated by 'legitimate governmental objectives.'" *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005) (quoting *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir.1995)). "If the motivation to punish is to secure compliance with agency objectives, then by definition the motivation is not spite, or malice, or a desire to '"get"' [Defendant] for reasons wholly unrelated to any legitimate state objective.'" *Id.*; *see also Yerardi's Moody St. Restaurant & Lounge, Inc. v. Bd. Of Selectmen of Town of Randolph*, 932 F.2d 89, 94 (1st Cir. 1991) (The "malice/bad faith standard should be scrupulously met," and it is the "infrequent" case in which a party can show "evidence of bad faith or malicious intent to injure."). Here, regardless of any rhetoric, the legitimate government objective was (and remains) to get Maine to comply with Title IX.

7

This Court should accordingly find that Defendant's purported "selective enforcement" defense would be futile.

### B. DEFENDANT'S VINDICTIVE PROSECUTION DEFENSE IS FUTILE.

A "vindictive prosecution" necessarily requires proof that "the prosecutor [sought] to punish the defendant for exercising a protected statutory or constitutional right" *United States v. Jenkins*, 537 F.3d 1, 3 (1st Cir. 2008) (citation omitted); *accord United States v. Cameron*, 658 F. Supp. 2d 241, 247 (D. Me. 2009) ("The legal definition of vindictive prosecution requires that the prosecution of the defendant be tied to his assertion of a protected statutory or constitutional right."). A defendant may establish a vindictive prosecution by either "(1) by producing evidence of actual vindictiveness or (2) by demonstrating circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness." 537 F.3d at 3 (citation omitted).

Defendant's selective prosecution assertion would fail at the outset because it never identifies and cannot identify a "protected statutory or constitutional right" that it was exercising. *Jenkins*, 537 F.3d at 3; *Cameron*, 658 F. Supp. 2d at 247 ("Nowhere in [defendant's] memorandum does he specifically identify the rights that he asserted and that the prosecution violated."). For reference, "the classic situation" of vindictive prosecution is a prosecutor filing more severe charges after the defendant successfully exercising his right to appeal. *United States v. Deschambault*, No. 2:19-CR-00187, 2022 WL 2916052, at *11 (D. Me. July 25, 2022); *Jenkins*, 537 F.3d at 3; *United States v. Lanoue*, 137 F.3d 656, 664 (1st Cir. 1998) ("Successful assertions of vindictive prosecution are most common where a defendant advances some procedural or constitutional right and is then punished for doing so."). Defendant alleges nothing like that here. To the extent Defendant subsequently claims some sort of Government First Amendment exercise, that would fall flat. Surely, vindictive prosecution does not apply when a

8

defendant admits a violation of law and then claims the First Amendment protects against prosecution for that admission.

More fundamentally, Defendant has conceded that it is unaware of *any* court *ever* recognizing vindictive prosecution as a valid defense in a civil case. Def.'s Ltr. Br. at 2, ECF No. 27. And for good reason: The defense intrudes on the Government's wide discretion in enforcing the law, and should not be imported outside the more weighty criminal context where life and liberty from imprisonment are at stake.

This Court should accordingly find that Defendant's purported "selective enforcement" defense would be futile.

C. **DEFENDANT'S CONTINUING TITLE IX VIOLATIONS MAKE THE ADDITION OF THESE PURPORTED DEFENSES FUTILE.**

Finally, the Court should find Defendant's new proffered defenses are futile and a waste of time because, even if available in a civil case and somehow not futile on the necessary elements, they cannot lead to Defendant's purported relief of dismissal. These defenses can lead to dismissals in cases involving static, past violations of the law, such as for a one-time criminal event. But they cannot forever shield a defendant who is, like here, engaging in a continuing violation.

During the August 13, 2025, discovery conference, defense counsel confirmed that these would be collateral defenses that have no bearing on whether Defendant is violating Title IX. A dismissal on these defenses thus would not determine whether Defendant's actions violate Title IX. Defendant's Title IX violations are not static, but ongoing. And a requested dismissal on collateral grounds could not possibly give Defendant a license to discriminate in violation of Title IX in perpetuity. At best for Defendant, the United States would need to refile the case and start over. Accordingly, even if *arguendo* these defenses were available, they would be futile

because they would simply delay the "just, speedy, and inexpensive determination" of the actual issue in this case—Defendant's ongoing Title IX violations. *See* Fed. R. Civ. P. 1

### IV.   CONCLUSION

For the above reasons, this Court should deny the Defendant's Motion to Amend Answer.


Respectfully submitted,


*/s/ Matthew J. Donnelly*
MATTHEW J. DONNELLY
Attorney
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C.  20530
Telephone: (202) 616-2788
Email: matthew.donnelly3@usdoj.gov


Dated:  September 10, 2025