# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MAINE DEPARTMENT OF EDUCATION, <br><br> Defendant. | CASE NO. 1:25-cv-00173-SDN |

## MOTION BY GLBTQ LEGAL ADVOCATES & DEFENDERS FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF IN SUPPORT OF MAINE PRINCIPALS' ASSOCIATION MOTION TO QUASH SUBPOENA

GLBTQ Legal Advocates & Defenders (GLAD Law) respectfully moves for leave to submit the attached amicus curiae brief in support of Maine Principal Association's Motion to Quash Subpoena, Dkt. No. 28.

For over four decades, GLAD Law has represented the interests of LGBTQ people and families to equal justice under law in all aspects of life through litigation, policy making and public education. GLAD Law's longstanding transgender rights work addresses issues of discrimination, health care, insurance coverage, family law, equal participation in the military and other societal institutions, and as in this case, the treatment of LGBTQ students.

GLAD Law remains attentive to the essential partnership between schools and parents in maintaining safe and positive school environments where all students can learn and succeed in school and in life.

1

GLAD Law's recent litigation as party counsel includes *Doe v. Dept. of Defense*, No. 8:25-cv-02947 (DLB) (D. Md. Sept. 8, 2025) (Tricare exclusion of transgender medical care for minors); *Talbott v. U.S.*, Civ. No. 25-cv-00240 (ACR), *Doe v. McHenry III*, 763 F. Supp. 3d 81 (D.D.C. 2025) (reassignment of transgender women in Bur. of Prisons facilities to men's facilities); *Doe v. Ladapo*, 737 F. Supp. 3d 1240 (N.D. Fla. 2024) (transgender minor health care ban). GLAD Law's recent participation in school-related cases as amicus curiae includes *Foote v. Town of Ludlow*, 128 F.4th 336 (1st Cir. 2025); *L.M. v. Town of Middleborough,* 103 F. 4th 854 (1st Cir. 2024), cert. denied, 145 S. Ct. 1489 (2025); and *Doe v. Hopkinton Public Schools*, 19 F.4th 493 (2021).

While the Federal Rules of Civil Procedure are silent as to participation from amici curiae, the District Court possesses "inherent authority and discretion to appoint amici." *Boston Gas Co. v. Century Indem. Co.*, 02-cv-12062-RWZ, 2006 U.S. Dist. LEXIS 41133, at *4 n.1 (D. Mass. June 21, 2006). In addition, "District courts frequently welcome amicus briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved," especially where "the amicus has 'unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'" *NGV Gaming, Ltd. v. Upstream Point Molate*, LLC, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005) (quoting Cobell v. Norton, 246 F. Supp. 2d 59, 62 (D.D.C. 2003)).

GLAD Law requests this Court to exercise its discretion to allow GLAD Law to file an amici brief of 10 pages to assist the Court. As a non-party deeply familiar

with transgender people the law across issue areas, GLAD Law has "information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1064 (7th Cir. 1997). GLAD Law is deeply familiar with the current targeting of transgender people, especially minors, across litigation about the full range of transgender issues. To GLAD Law, this case warrants vigilance and caution in review of the government's subpoena and the Maine Principals' Association Motion to Quash. For these reasons, amicus curiae requests that this Court grant their motion and accept the attached brief for filing.

Respectfully submitted,

/s/ Mary L. Bonauto
Mary L. Bonauto
GLBTQ Legal Advocates & Defenders
18 Tremont St. Ste. 950
Boston, MA 02108
(617) 426-1350
mbonauto@gladlaw.org

Counsel for Amicus Curiae

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

                                                /s/ *Mary L. Bonauto*
                                                Mary L. Bonauto

**UNITED STATES DISTRICT COURT
DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MAINE DEPARTMENT OF EDUCATION,<br><br>Defendant. | CASE NO. 1:25-cv-00173-SDN |

### *AMICUS CURIAE* BRIEF OF GLBTQ LEGAL ADVOCATES & DEFENDERS IN SUPPORT OF MAINE PRINCIPALS' ASSOCIATION MOTION TO QUASH SUBPOENA

The interest of GLBTQ Legal Advocates & Defenders ("GLAD Law") in seeking to file as amicus curiae here is addressed in the incorporated Motion for Leave to File. GLAD Law has long represented transgender individuals and filed amicus briefs in federal court to protect their civil rights. GLAD Law offers legal analysis and context on the serious privacy and safety implications raised by the subpoena at issue.

### INTRODUCTION AND SUMMARY OF ARGUMENT

On August 14, 2025, the U.S. Attorney's Office served the nonparty Maine Principals' Association (MPA) with a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action under Federal Rule of Civil Procedure 45. Several requests seek personally identifiable information on athletes state-wide, all of whom are nonparties, from Jan. 1, 2021, to the present (with stated exceptions). This includes the request for all athletes on all rosters for

the last two school years (Request No. 4); identification of all transgender student-athletes (Request Nos.5 (transgender girls) 8 (transgender boys)), and results from athletic events in which a transgender student participated, and the student's rankings and placements (Request Nos. 6, 7, 9). Other requests seek communications received by the MPA about transgender students' sports participation or facility usage, and MPA's internal assessments, communications and responses. (Request Nos. 18-19). Request No. 11 seeks minutes and transcripts of the MPA's Gender Identity Equity committee, which addresses the MPA's gender identity participation policy, including at times when MPA required more documentation of medical and other information from student athletes seeking to participate in sports.

The MPA moved to quash the subpoena, arguing, *inter alia*, that some of the requests seek confidential and/or personally identifiable student information, and of teachers and other school staff. In addition, the MPA argued that the requested documents are not relevant to the legal questions at issue in this case, particularly where MPA is not a party; the requests are overbroad, overly burdensome, not proportional, irrelevant, and include items not in the MPA's possession and/or publicly available. Maine Principals' Ass'n Mot. to Quash Subpoena at 1, (Dkt. 28).

GLAD Law submits this brief to address the grave risks to nonparty students and their families from compelled disclosure of their identities and personally identifiable information.[1] As discussed below, transgender youth and their families are facing unprecedented attacks from the Trump Administration. While transgender

---

[1] GLAD Law adopts and incorporates the arguments set forth in the Motion To Quash of the Portland Public Schools.

2

youth have, for too long, endured acts and threats of violence, harassment, stalking, doxxing, that have harmed their physical and mental health, these concerns are exacerbated when the President of the United States himself targets these young people and their families. The United States' facial Title IX challenge to Maine's policy does not require disclosure of any student's identity or personally identifiable information. There is no basis for revealing identifying information about students and their families or school staff in this matter. Rule 45(d)(3) requires quashing subpoenas that impose undue burdens on nonparties. Amicus urges this court to grant MPA's motion to quash the subpoena with respect to Requests 4–9, 11, and 18–19 because those responses would contain personally identifying information, as MPA asserts, and would contain medical and/or legal documents concerning a student's transgender status. The information sought is neither relevant nor necessary to the government's actions against the Maine Department of Education (MDOE), and will unduly burden transgender students and their families–also non-parties—by revealing their identities and subjecting them to irreversible psychological and physical harm as targets of this administration and members of the public.

## I. The Current Federal Campaign to Target Transgender Students Heightens the Risks of Disclosure and Underscores the Need for Robust Privacy Protections as to the Requested Documents.

Transgender youth face high rates of bullying and suicidality. A recent survey by the Centers for Disease Control and Prevention found that "25.3% of transgender students . . . skipped school because they felt unsafe[,] . . . 40% of transgender and questioning students were bullied at school, and . . . 72% of transgender students

experienced persistent feelings of sadness or hopelessness, a marker for experiencing depressive symptoms."[2] Recent federal actions and rhetoric have compounded the distress and anguish felt by transgender youth. In early 2025, the President issued a series of anti-transgender executive orders that directly target and harm transgender youth.[3] The executive orders use inflammatory language that demonizes transgender people, seek to choke off transgender adolescents' ability to secure essential medical care they need to thrive, and reverse existing protections for transgender students and prevent schools from being able to take the steps educators know transgender young people need to be able to succeed in school.

The rhetoric extends beyond executive orders. On April 16, 2025, in a national press conference announcing that the U.S. Department of Justice would bring this lawsuit against the State of Maine for its transgender athletics policy, Attorney General Pam Bondi publicly demeaned a transgender girl who qualified for the state's pole-vaulting regionals.[4] In May 2025, President Trump singled out a 16-year-old transgender high school girl on Truth Social, stating that "large scale fines will be imposed!!!"[5] Indeed, the President has repeatedly referred to transgender athletes

---

[2] Nicolas A. Suarez et al., *Disparities in School Connectedness, Unstable Housing, Experiences of Violence, Mental Health, and Suicidal Thoughts and Behaviors Among Transgender and Cisgender High School Students — Youth Risk Behavior Survey, United States, 2023*, at 50, CENTERS FOR DISEASE CONTROL AND PREVENTION (Oct. 10, 2024).

[3] *See, e.g.*, Exec. Order 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615 (Jan. 20, 2025); Exec. Order 14187, *Protecting Children from Chemical and Surgical Mutilation*, 90 Fed. Reg. 8771 (Jan. 28, 2025); Exec. Order 14190, *Ending Radical Indoctrination in K12 Schooling*, 90 Fed. Reg. 8853 (Jan. 29, 2025); Exec. Order 14201, *Keeping Men Out of Women's Sports*, 90 Fed. Reg. 9279 (Feb 5, 2025).

[4] WMTW8, *"We Are Taking Them to Court." U.S. Attorney General Announces Lawsuit Against Maine over Title IX* (Apr. 16, 2025), https://www.wmtw.com/article/us-attorney-general-announces-action-against-maine-title-ix/64498147.

[5] @realDonaldTrump, Truth Social (June 2, 2025, 9:56 PM), https://truthsocial.com/@realDonaldTrump/posts/114617654959425582.

with disdain and hatred, including by stating at a rally: "These people are sick. They're deranged."[6] This unprecedented campaign by the federal government causes serious harms by cutting off access to essential medical care and reversing school policies that transgender students need to integrate into and succeed at school.

In this Circuit, the Massachusetts district court recently recognized the hostility animating the Trump administration's initiatives. In disallowing U.S. Department of Justice subpoenas seeking identification of those receiving transgender medical care at Boston Children's Hospital ("BCH"), it noted that:

> The Administration has been explicit about its disapproval of the transgender community and its aim to end [transgender medical care]. The subpoena reflects those goals, comprising overbroad requests for documents and information seemingly unrelated to investigating fraud or unlawful off-label promotion. It is abundantly clear that the true purpose of issuing the subpoena is to interfere with the Commonwealth of Massachusetts' right to protect [transgender medical care within its borders, to harass and intimidate BCH to stop providing such care, and to dissuade patients from seeking such care.

*In re Administrative Subpoena No. 25-1431-019*, Case No. 1:25-mc-91324-MJJ, 2025 WL 2607784, at *7 (D. Mass. Sept. 9, 2025). Here, as in the BCH matter, the overbroad subpoena requests aim to search out and identify transgender athletes to stigmatize transgender young people and deter them and their schools from allowing participation in school activities and sports. *See also Orr v. Trump*, 778 F.Supp.3d 394, 414, 417-18 (D. Mass. 2025) (finding that the *"Defending Women"* executive order is "built on irrational prejudice" and the "bare desire to harm transgender Americans" in a "coordinated and rapid rollback of rights and protections previously afforded to

---

[6] Sally Jenkins, *Ban on Trans Athletes Seeks to Demonize, Not Protect*, Wash. Post (Feb. 5. 2025), https://www.washingtonpost.com/sports/2025/02/05/trans-athlete-ban-trump-executive-order/.

5

transgender Americans."), *stay pending appeal denied sub. nom. Agatha v. Trump*, No. 25-1579, 2025 WL 2538860 (1st Cir. Sept. 4, 2025).

The current level of animus directed at transgender people, and especially young people, is key to understanding that compelled disclosure of nonparty transgender students' identities will predictably lead to harassment and harm.

## II. These Requests Should Be Quashed Because They Are Irrelevant, Overbroad, Unduly Burdensome, and Pose Grave Privacy Harms to Nonparty Students

Federal Rule of Civil Procedure 45(d)(3) requires courts to quash or modify a subpoena that "subjects a person to undue burden." A court must consider (1) relevance and need, (2) breadth, and (3) burden. *Strike 3 Holdings, LLC v. Joe Doe*, No. 25-cv-11552-ADB, 2025 WL 2323608, at *1 (D. Mass. Aug. 12, 2025). In doing so, "concern for the unwanted burden thrust upon non-parties," like MPA and the transgender student-athletes, "is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).

Here, the government's requests, *supra* at 2, are both unnecessary and wholly irrelevant to its claim that Maine's policy violates Title IX on its face. According to the government's complaint, the U.S. Department of Education (ED), and the U.S. Department of Health and Human Services (HHS) conducted investigations,[7] made findings as to a facial violation of Title IX based on transgender students participating in interscholastic athletics, and brought this lawsuit to initiate

---

[7] Amicus curiae does not take a position in this brief as to whether these "investigations" satisfied Constitutional, statutory, and regulatory requirements.

enforcement proceedings for MDOE's purported Title IX violation. (Dkt. 1). The names, grades, schools, and event-by-event results of specific student-athletes are neither necessary nor relevant to government's determination, and much of the competition data is publicly available from third parties. Any disagreement between MDOE and the government is strictly legal, *i.e.* the proper interpretation of Title IX and its application to transgender student-athletes, and not of any necessary fact. *Cf. Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 931-32 (7th Cir. 2004) (quashing the Bush administration's subpoena of a hospital's medical records pertaining to patients who had late-term abortion procedures because such records were wholly "irrelevant" to the administration's defense of the constitutionality of the Partial–Birth Abortion Ban Act of 2003).

The requested records, *see supra* at 2, include personally identifiable information for all athletes for two years, for transgender athletes from 2021 forward, and ranking statistics and placements for particular athletes. (Request Nos. 4-9). Request No. 11 requests information from the MPA's Gender Identity Equity committee, and would inevitably address particular students' circumstances (and parents, allowing for identification of their children) ranging from a student's transgender identity to a gender dysphoria diagnosis and the student's engagement with medical care and identity documents. Request Nos. 18-19 seek every communication received by MPA about transgender students' participation in sports or use of facilities, plus MPA's internal and external deliberations and/or communications. (Request Nos. 18-19). The government's requests for information

7

about individual transgender student-athletes is simply another effort to target those students and to build upon its narrative that transgender student-athletes are both endangering and depriving other students of their athletic opportunities. These narratives are plainly incorrect and irrelevant to the government's purported enforcement of Title IX.

Second, as described immediately above, the government's requests are overly broad and request information about individuals who are not parties or whose identities are not relevant to the government's actions. These requests far exceed any legitimate need tied to the United States' facial Title IX theory and is not proportional to the needs of the case, particularly as to a nonparty and the interests of student privacy. Only protecting the identifying information of transgender students while permitting the government to obtain identifying information for all other students may inadvertently reveal the identities of transgender students by omission.

Further, the government's requests are unduly burdensome to both MPA and the individuals whose identifying information would be produced in response to these subpoena requests. Disclosure of personal information would inflict severe and unique harms on nonparty students, most of whom are minors. This harm is well-documented, as numerous courts have recognized the strong privacy interest a person has in their transgender status. *E.g.*, *Hersom v. Crouch*, No. 2:21-cv-00450, 2022 WL 908503, at *2 (S.D. W.Va. Mar. 28, 2022); *Kadel v. Folwell*, 620 F. Supp. 3d 339, 391 (M.D.N.C. 2022); *Doe v. Genesis HealthCare*, 535 F. Supp. 3d 335, 339 (E.D. Pa. 2021). This privacy interest is rooted in the data, discussed above, establishing that

transgender youth experience elevated rates of violence, poor mental health, and suicidality compared to peers. The administration's attack on transgender individuals as described above and its specific targeting of transgender student-athletes only exacerbates the risks to students and families.

The First Circuit has emphasized that protecting identities is warranted when disclosure poses a reasonable fear of unusually severe physical or psychological harm, where nonparties would be harmed, or where anonymity prevents chilling effects on similarly situated individuals. *Doe v. Mass. Inst. of Tech.,* 46 F.4th 61, 71-72 (1st Cir. 2022). Courts regularly allow transgender youth and their parents to proceed in litigation anonymously for these reasons. *See*, *e.g.*, *Poe v. Drummond*, No. 23 Civ. 177, 2023 WL 4560820, at *5 (N.D. Okla. July 17, 2023) (allowing transgender adolescent plaintiffs and their parents to proceed under pseudonyms to challenge to ban on transgender medical care); *see also Poe v. Labrador*, No. 23 Civ. 269, 2023 WL 8935065, at *19 (D. Idaho Dec. 26, 2023) (noting that transgender adolescents and their parents were proceeding as plaintiffs pseudonymously to challenge to ban on transgender medical care); *Doe v. Ladapo*, 676 F. Supp. 3d 1205, 1215 (N.D. Fla. 2023) (same). Those considerations apply with even greater force when, as here, nonparty students and their families would be exposed by compelled third-party production.

Finally, compelled production of the type of personal and sensitive information requested by the federal government here implicates serious constitutional concerns. Transgender student-athletes are likely to have private medical information relating to their gender dysphoria diagnosis and treatment within the government's overly

9

broad records requests. Federal courts across the country recognize that government collection or disclosure of medical or health information, especially pertaining to socially stigmatized health conditions, implicate the federal right to informational privacy found in the Due Process Clause of the U.S. Constitution. *See, e.g.*, *Whalen v. Roe*, 429 U.S. 589, 599 (1977) (recognizing a Constitutional right to privacy protecting "the individual interest in avoiding disclosure of personal matters"); *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998) (noting that "few subject areas [are] more personal and more likely to implicate privacy interests than that of one's health or genetic make-up."); *Doe v. City of New York*, 15 F.3d 264, 267 (2nd Cir. 1994) ("Individuals … with the HIV virus clearly possess a constitutional right to privacy regarding their condition."); *Aid for Women v. Foulston*, 441 F.3d 1101, 1116 (10th Cir. 2006) ("[M]inors do possess a right to informational privacy."). This Court can and should quash the government's subpoena based on the Rule 45 "undue burden" factors in order to avoid "a course of events which promises to raise serious constitutional problems." *Bangor Baptist Church v. State of Me., Dept. Of Educational and Cultural Serivces*, 549 F. Supp. 1208, 1221 (D. Me. 1982).

## CONCLUSION

Because the subpoenaed information is irrelevant to the government's facial Title IX claims, extraordinarily overbroad, and would impose grave, undue, and constitutional burdens—especially the risk of severe harm from disclosure of nonparty students' identities—the Rule 45 factors decisively favor nondisclosure. We urge the Court to quash subpoena requests 4–9, 11, and 18–19.

Dated: September 16, 2025

Respectfully submitted,

*/s/ Mary L. Bonauto*
Mary L. Bonauto
GLBTQ Legal Advocates & Defenders
18 Tremont St. Ste. 950
Boston, MA 02108

257 Deering Ave.
Portland, ME 04103
(617) 426-1350
mbonauto@gladlaw.org

Counsel for Amicus Curiae

# CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

 /s/ Mary L. Bonauto
Mary L. Bonauto
