UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:25-cv-00173-SDN |
| ) | |
| MAINE DEPARTMENT OF EDUCATION, ) | |
| ) | |
| Defendant. ) | |

## MOTION OF PORTLAND PUBLIC SCHOOLS TO INTERVENE WITH INCORPORATED MEMORANDUM OF LAW

### MOTION

Pursuant to Fed. R. Civ. P. 24(a)(2) and 24(b)(1)(B), Portland Public Schools ("PPS") moves to intervene in this matter for the limited purpose of moving to quash a third-party subpoena that Plaintiff United States of America served on the Maine Principal's Association ("MPA"). As set forth in more detail below, PPS's interest in protecting the confidential education records of its students is directly affected by the Plaintiff's third-party subpoena to the MPA, which seeks, among other things, confidential education records of PPS's former and current students. In accordance with Fed. R. Civ. P. 24(c), a motion to quash the third-party subpoena to the MPA accompanies this motion as **Exhibit A**.[1]

### INCORPORATED MEMORANDUM OF LAW

**I.    BACKGROUND**

---

[1] Alternatively, PPS should be permitted to participate in this case on an *amicus curiae* plus basis. *See, e.g., Alliance of Auto. Mfrs. v. Gwadowsky*, 297 F.Supp.2d 305 (D. Me. 2003) (granting *amicus curiae* plus status to automobile dealers' association because the court concluded it could benefit from the association's specialized expertise).

Plaintiff filed a lawsuit against Defendant Maine Department of Education ("MDOE") alleging that the State of Maine, through MDOE, is violating Title IX by following the Maine Human Rights Act and allowing transgender girls to compete in girls' sports. (ECF No. 1). On or about August 14, 2025, Plaintiff served a third-party subpoena for documents on the MPA, seeking, among other things, confidential education records that the MPA received from Maine school districts, which is defined in the subpoena as "any public K-12 educational administrative district or unit in the State of Maine." (ECF No. 28-1 at 4). More specifically, to the extent that the MPA has any responsive documents for requests numbered 4, 5, 6, 7, 8, 9, 11, 18, and 19, at least some of the documents would have come directly from schools, including Portland Public Schools. Because PPS has a responsibility and interest in protecting the privacy interests of its students under the Family Educational Rights and Privacy Act ("FERPA")—independent of the MPA's responsibility and interest—PPS respectfully requests the opportunity to move to quash the subpoena to the extent it seeks confidential education records that would have come from the School Department.

## II.  ARGUMENT

There is First Circuit precedent that a third-party has the right to intervene for the limited purpose of moving to quash a subpoena when the subpoena implicates a cognizable interest of the third-party. *In re Grand Jury Subpoena*, 274 F.3d 563, 570 (1st Cir. 2001) (citing Fed. R. Civ. P. 24(a)(2)). In *In re Grand Jury Subpoena*, the court held that the third-parties had the right to intervene after asserting the attorney-client privilege and work product doctrine for documents requested in the subpoena. *Id.* In support of that holding, the court cited *In re Grand Jury Proceedings (Diamante)*, 814 F.2d 61, 66 (1st Cir. 1987) for the implied proposition that "the

existence of a privileged relationship or of a legitimate property or privacy interest in the documents possessed by the third party" establishes standing to intervene. *Id.*

Here, PPS has an interest in protecting the confidential education records of its students under FERPA. And, as set forth below, PPS meets the standard for intervention as of right under Rule 24(a), as well as the standard for permissive intervention under Rule 24(b). The Court must, and alternatively should exercise its discretion, to permit PPS to intervene in support of third-party MPA's opposition to Plaintiff's subpoena because "the subject matter of the lawsuit is of great public interest, the intervenor has a real stake in the outcome and the intervention may well assist the court in its decision through the production of relevant evidence and the framing of the issues." *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 116-117 (1st Cir. 1999) (Lynch, J., concurring).

### A. The Court Must Grant Intervention under Fed. R. Civ. P. 24(a)(2)

Rule 24(a)(2) governs intervention as of right and provides:

> On timely motion, the court must permit anyone to intervene who … claims an interest relating to the property of transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impeded the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Thus, under the Rule, a party seeking intervention as of right must demonstrate that: (i) the motion to intervene is timely; (ii) it has an interest relating to the property or transaction at issue; (iii) the disposition of the action threatens to impair or impede its ability to protect this interest; and (iv) no existing party adequately represents its interest. *Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011).

    i.    *The Motion is Timely*

The determination of the timeliness of a motion to intervene lies within the discretion of the trial court. *Geiger v. Foley Hoag LLP Ret. Plan*, 521 F.3d 60, 64 (1st Cir. 2008). The principal factor for consideration is the stage the litigation has reached at the time of the motion to intervene. *Id.* at 64-65. The Court may also consider other factors, including "1) the length of time the intervenor knew her interest was imperiled; 2) the foreseeable prejudice to the existing parties if intervention is granted, or to the intervenor if it is denied; and 3) any 'idiosyncratic circumstances' which weigh for or against intervention." *Id.* at 65 (internal citation omitted).

This litigation is not at an "advanced stage." Plaintiff filed their complaint (ECF No. 1) on April 16, 2025, and MDOE filed an answer on May 8, 2025 (ECF No. 12), and a motion to amend its answer on August 20, 2025 (ECF No. 26), which Plaintiff opposed on September 10, 2025 (ECF No. 39). Most relevant to the instant motion to intervene, Plaintiff served the third-party subpoena at issue to the MPA on or about August 14, 2025. The MPA filed a motion to quash the subpoena on August 29, 2025 (ECF No. 28), Plaintiff filed an opposition to the motion to quash on September 3, 2025 (ECF No. 34), and the MPA filed a reply on September 4, 2025 (ECF No. 37). The Court has scheduled a hearing on the MPA's motion to quash for September 19, 2025. In addition not the litigation being at its early stages, the issues relating to the Plaintiff's third-party subpoena to the MPA have only recently been briefed and have not yet been decided by the Court.

As for the other factors enumerated in *Geiger*, PPS has acted quickly to coordinate and authorize the filing of this motion to intervene. Additionally, there would be no prejudice to the existing parties if intervention were granted. Plaintiff's third-party subpoena to the MPA seeks documents that, to the extent the MPA has such documents in its possession, came from PPS (*i.e.* requests numbered 4, 5, 6, 7, 8, 9, 11, 18, and 19). Plaintiff is already aware of arguments in

opposition to the subpoena and planning to address such opposition to the Court at the scheduled hearing on September 19, 2025. By allowing PPS to also oppose the subpoena, the Court would simply be ensuring that all relevant information and legal authority supporting such opposition was considered prior to ruling on whether the subpoena, or portions of the subpoena, should be quashed. Finally, PPS is not aware of any "idiosyncratic circumstances" that weigh against intervention.

    ii.    *The School Department has the Requisite Interest in the Subject Matter of this Action*

Plaintiff's subpoena requests confidential education records from the MPA that, to the extent the MPA has such records its possession, the MPA would have received from the School Department. When PPS provides confidential education records to the MPA, it does so for the sole purpose of facilitating student participation in youth sports. This is because PPS has a responsibility and an interest in protecting the confidentiality of all education records under FERPA, including those records that it provides to the MPA. Indeed, students and families expect that PPS will act in accordance with this responsibility and interest. As the First Circuit has explained, "Congress enacted FERPA 'to assure parents of students ... access to their educational records and to protect such individuals' rights to privacy by limiting the transferability of their records without their consent.'" *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67–68 (1st Cir. 2002) (citing 120 Cong. Rec. 39,862 (1974) (joint statement of Sens. Pell and Buckley explaining major amendments to FERPA)). At bottom, PPS has a direct interest in what happens to the confidential education records that originated with the School Department.

    iii.    *Disposition of the Third-Party Subpoena Will Directly Affect the School Department's Interests in Protecting the Confidentiality of the Education Records it Provides to the MPA*

The Court's decision on third-party MPA's motion to quash Plaintiff's subpoena may very well impair or impede PPS's ability to protect its interests in preserving the confidentiality of the education records it provides to the MPA. For example, if the Court denies the motion to quash, and the MPA provides Plaintiff with confidential education records from PPS's students, then records that students and families thought were being transferred to facilitate participation in youth sports would be transferred for entirely different purposes. The practical consequences of this include that students and families may be deterred from participating in sports for fear of having confidential education records transferred beyond the MPA, and PPS loses the trust and confidence of its students and families in its ability to protect the integrity of confidential education records.

    iv.    *Neither the MDOE nor the MPA Adequately Represents the School Department's Interests*

The MDOE did not file a motion to quash the Plaintiff's subpoena to third-party MPA and, thus, does not adequately represent PPS's interests in opposing the subpoena. While the MPA did file a motion to quash, the MPA does not adequately represent the interests of any particular school district such as the School Department, which has its own responsibility, interest, and expertise under FERPA. Put differently, the MPA is a state-wide, private, nonprofit corporation that, among other things, promotes and administers interscholastic activities; whereas, PPS is a public school district, committed to cultivating a welcoming, inclusive and safe space for all students and staff and delivering a quality educational experience for all students. PPS has direct relationships with students and families whose confidential education records would be caught up in the Plaintiff's subpoena for records and PPS has a responsibility to those students and families to take all reasonable steps to protect the confidentiality of its specific students' records.

Accordingly, PPS has met its minimal burden of showing that its interests are not adequately represented in opposing the Plaintiff's subpoena. *See, e.g.*, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 807 F.3d 472, 475 (1st Cir. 2015) ("we begin with a recognition that Students' burden of establishing inadequate representation 'should be treated as minimal' and can be satisfied by showing 'that representation of [the] interest '*may* be' inadequate.'" (quoting *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972)).

### B. Alternatively, the Court Should Exercise its Discretion to Grant Permissive Intervention under Fed. R. Civ. P. 24(b)

Even in the absence of strict satisfaction of the four factor test for intervention as of right under Rule 24(a)(2), the Court may grant permissive intervention under Rule 24(b) where the putative intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Here, PPS's opposition to Plaintiff's subpoena turns on whether the federal government is entitled to PPS's confidential education records for use in this litigation. Thus, PPS's opposition to the subpoena shares a common question of law and fact that PPS wishes to share its specialized knowledge about with the Court prior to the Court deciding the MPA's motion to quash Plaintiff's subpoena.

Further, when deciding whether to grant permissive intervention, "the district court can consider almost any factor rationally relevant" and enjoys broad discretion in deciding the motion. *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 113 (1st Cir. 1999). Here, the case would not be unduly delayed or complicated by allowing PPS to move to quash the subpoena to the extent it seeks records that originated with the School Department, and PPS's involvement would be helpful in fully developing the case.

## **CONCLUSION**

For the forgoing reasons, Portland Public Schools respectfully requests that this Court grant its motion to intervene for the limited purpose of moving to quash Plaintiff's third-party subpoena to the MPA.

Dated: September 17, 2025  /s/ *Melissa A. Hewey*
Melissa A. Hewey
Attorney for Proposed Intervenor
Portland Public Schools

Drummond Woodsum
84 Marginal Way, Suite 600
Portland, ME 04101-2480
(207) 772-1941
mhewey@dwmlaw.com