UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> MAINE DEPARTMENT OF EDUCATION, ) </br> ) </br> Defendant. ) </br> ) | No. 1:25-cv-00173-SDN |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO AMEND ANSWER**

Plaintiff opposes Maine DOE's Motion to Amend on the grounds that the defenses of selective enforcement and vindictive prosecution are "frivolous and futile." Opp. Br., 1. But Maine DOE has proffered evidence supporting its claim that this action was brought in bad faith and for improper motives. And it expects that it will develop additional evidence during the course of the litigation. Rather than prematurely concluding that selective enforcement and vindictive prosecution are not viable defenses, Maine DOE respectfully requests that it be permitted to amend its answer so that the applicability of the defenses can be decided on a full factual record.

**Selective Enforcement**

The First Circuit has expressly recognized that selective enforcement is a defense to a civil enforcement action brought by the United States. *Sec. & Exch. Comm'n v. Navellier & Assocs., Inc.*, 108 F.4th 19, 39 (1st Cir. 2024). To establish selective enforcement, a defendant must establish that it was selectively treated as compared to others who are similarly situated and that the selective treatment "was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a

person." *Id*.  Plaintiff does not appear to challenge the legal viability of the defense but instead claims that Maine DOE cannot meet the necessary factual elements.

Plaintiff argues that Maine DOE cannot establish that it was treated selectively because plaintiff has filed a Title IX lawsuit against one other state – California – and that lawsuit is "extremely similar to this case." Opp. Br., 6.  But it is simply not the case that to prevail on a selective enforcement defense a defendant must establish that it is the only one that has been targeted.  Rather, a defendant need only show that it was treated differently than others who are similarly situated.  *Navellier & Assoc.*, 108 F.4d at 39.[1]  Given that 22 other states and the District of Columbia do not prohibit transgender girls and women from participating in sports based on their gender identity,[2] it is likely that transgender girls and women are participating in girls' and women's athletics in many other states.  Yet plaintiff has targeted only two of them with lawsuits.  Through discovery, Maine DOE expects to develop evidence that plaintiff is aware of transgender girls and women participating in girls' and women's high school athletics in other states but has not brought enforcement actions against those states.  This will show that plaintiff is acting selectively.

Plaintiff claims that the fact that USDOE OCR has "multiple ongoing Title IX sports related investigations" precludes a selective enforcement defense.  Opp. Br., 6.  But Maine DOE's argument is that it is the lawsuit that constitutes selective enforcement.  The investigations into Maine DOE are relevant only because the speed with which they were brought and the manner in which they were done is evidence that they were conducted maliciously and in bad faith.  This is

---

[1] Nor does plaintiff's argument that Maine DOE must show that it alone was selected for an enforcement action make sense.  It is hard to believe that the selective enforcement defense prohibits the government from bringing an enforcement action for unlawful motives against one defendant but not from improperly targeting two defendants.

[2] *See* https://williamsinstitute.law.ucla.edu/wp-content/uploads/Trans-Sports-Ban-EO-Feb-2025.pdf, at 6.

evidence that the lawsuit was also brought maliciously and in bad faith. Moreover, Maine DOE suspects (and will explore in discovery) that the other investigations identified by plaintiff (ECF No. 38-2) are real investigations (i.e., ones lasting more than four days and involving actual requests for information).³ Finally, all of the investigations identified by plaintiff are being conducted by the United States Department of Education. Plaintiff did not identify any investigation being conducted by the United States Department of Health and Human Services, which conducted one of the Maine DOE investigations (and which, Maine suspects, rarely initiates Title IX investigations into high school athletics). In sum, whether looking at the investigations against Maine DOE or the lawsuit against Maine DOE, it is clear that the treatment of Maine is highly unusual.

      As to the second element, plaintiff claims that Maine DOE will not be able to refute that in bringing this lawsuit, plaintiff was motivated by "legitimate governmental objectives." Opp. Br., 7. In other words, plaintiff argues that Maine DOE cannot establish bad faith or malice. Because Maine DOE has not had an opportunity to conduct any discovery into plaintiff's motivation for bringing its Title IX enforcement action, it would be premature to conclude, based purely on plaintiff's say-so, that plaintiff's motives are pure. This is not to say that whenever a defendant claims selective enforcement it should be allowed to conduct wide-ranging discovery in the hope that it might uncover supporting evidence. But here, even before conducting any discovery, Maine DOE has demonstrated that there is something highly irregular about this proceeding.

---

³ Although the list of investigations prepared by plaintiff is entitled "United States Department of Education Title IX Sports Related Investigations," ECF No. 38-2, three of the investigations (the ones involving Western Carolina University, five northern Virginia school districts, and Denver Public Schools) relate not to participation in sports but to the use of bathrooms, locker rooms, and other "intimate facilities" by transgender students.

Most notably, just <u>hours</u> after Governor Mills' February 21, 2025 confrontation with President Trump, two separate federal agencies opened investigations into Maine DOE. M. to Amend, 4. It seems unlikely that this was simply because the agencies heard about the dustup on their own and independently decided to initiate investigations. Plaintiff says there is "nothing sinister or even remarkable" about two federal agencies immediately starting investigations based on, and within hours of, a governor's "public admission" of violating Title IX. Opp. Br., 3. It is telling, though, that plaintiff carefully avoids asserting that there is <u>actually</u> a benign explanation for the immediate investigations and instead posits only that there <u>could</u> be such an explanation.

Further, the hypothetical benign explanation – that the agencies immediately sprang into action because Maine's Governor "publicly admitted" that Maine is in violation of Title IX – strains credibility. First, Governor Mills did not admit to a violation of Title IX. Rather, she said Maine was in compliance with state and federal law. M. to Amend, 4. If what plaintiff is trying to claim is that the Governor admitted that transgender girls are participating in girls' sports (which plaintiff wrongly claims is a Title IX violation), she did not say that either. And in any event, the investigations were shams – one lasted only four days and it appears that neither involved the collection of information from Maine DOE or other relevant parties.

There is also evidence that this Administration does not follow the law when it comes to taking action against Maine for its alleged violation of Title IX. The Secretary of Agriculture cut funds without following any legal process whatsoever. ECF No. 16-7; *Maine v. United States Dep't of Agric.*, 778 F. Supp. 3d 200, 232 (D. Me. 2025). The Acting Commissioner of the United States Social Security Administration canceled Maine's contracts (which he knew would increase fraud and other improper payments) to punish a "petulant child." M. to Amend, 5. And the

President is demanding a "full throated apology" from the Governor, M. to Amend, 4, raising the possibility that this lawsuit is leverage for that apology.

To be clear, it may turn out that there are benign explanations for all that has happened and that Maine DOE's selective enforcement claim fails. But Maine DOE should not be deprived of the opportunity to develop the factual basis for the defense, given that there is already sufficient evidence calling into question the motives for this lawsuit.

## **Vindictive Prosecution**

Vindictive prosecution is also a viable defense here. While plaintiff claims that Maine DOE cannot identify a protected statutory or constitutional right that it was exercising, Maine DOE expects to argue that the Governor's statements to the President constitute constitutionally-protected speech, and this lawsuit was brought in retaliation. Plaintiff claims that the vindictive prosecution does not apply when a defendant "admits a violation of law and then claims the First Amendment protects against prosecution for that admission." Opp. Br., 8-9. But, again, the Governor did not admit to violating Title IX. When the President asked whether Maine would comply with his executive order, the Governor said she would comply with state and federal law. The executive order did not, and cannot, amend Title IX, and Maine cannot be required to "comply" with it. And for the reasons discussed above, Maine DOE expects that through discovery, it will be able to establish the second element – vindictiveness. As with selective enforcement, Maine DOE should be permitted to develop the factual record needed to support its vindictive prosecution defense.[4]

---

[4] The discovery for the vindictive prosecution defense will likely be precisely the same as for the selective enforcement defense. So, if the Court permits Maine DOE to add the latter defense, there is no reason to not allow it to also add the former defense. There will be no added discovery burdens, and the merits of both defenses can then be decided on a full factual record.

### **Continuing Violation**

Finally, plaintiff argues that neither selective enforcement nor vindictive prosecution are available when the defendant is engaged in a "continuing violation." Opp. Br., 9-10. Plaintiff offers no legal support for this claim, though. Further, if Maine DOE prevailed on either defense, it would not mean that Maine DOE could "discriminate in violation of Title IX in perpetuity." Opp. Br., 9. Rather, it would mean only that plaintiff cannot bring an enforcement action against Maine DOE out of malice, in bad faith, or for some other improper purpose. Rather, it could do so only for legitimate purposes and by following the procedures it normally follows when bringing such actions. Applying the defense here is thus no different than applying it in a case "involving static, past violations of the law." Opp. Br., 9. Defendants who prevail on the defense are obviously not free, in the future, to commit the same violations. It is simply that any future enforcement actions must be taken for lawful reasons.

### *Conclusion*

For the reasons set forth above, Maine DOE respectfully requests that it be permitted to amend its Answer to add selective enforcement and vindictive prosecution as affirmative defenses.

Dated: September 18, 2025　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　AARON M. FREY
　　　　　　　　　　　　　　　　　　　　Attorney General


　　　　　　　　　　　　　　　　　　　　/s/ Christopher C. Taub
　　　　　　　　　　　　　　　　　　　　CHRISTOPHER C. TAUB
　　　　　　　　　　　　　　　　　　　　Chief Deputy Attorney General
　　　　　　　　　　　　　　　　　　　　Christopher.C.Taub@maine.gov
　　　　　　　　　　　　　　　　　　　　SARAH A. FORSTER
　　　　　　　　　　　　　　　　　　　　Assistant Attorney General
　　　　　　　　　　　　　　　　　　　　Sarah.Forster@maine.gov
　　　　　　　　　　　　　　　　　　　　KIMBERLY L. PATWARDHAN
　　　　　　　　　　　　　　　　　　　　Assistant Attorney General
　　　　　　　　　　　　　　　　　　　　Kimberly.Patwardhan@maine.gov
　　　　　　　　　　　　　　　　　　　　Office of the Attorney General
　　　　　　　　　　　　　　　　　　　　State House Station 6
　　　　　　　　　　　　　　　　　　　　Augusta, ME 04333
　　　　　　　　　　　　　　　　　　　　Telephone: (207) 626-8800


## CERTIFICATE OF SERVICE

　　　I hereby certify that on this, the 18th day of September, 2025, I electronically filed the above document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record. To my knowledge, there are no non-registered parties or attorneys participating in this case.

　　　　　　　　　　　　　　　　　　　　/s/ Christopher C. Taub
　　　　　　　　　　　　　　　　　　　　CHRISTOPHER C. Taub
　　　　　　　　　　　　　　　　　　　　Chief Deputy Attorney General
　　　　　　　　　　　　　　　　　　　　Six State House Station
　　　　　　　　　　　　　　　　　　　　Augusta, Maine  04333-0006
　　　　　　　　　　　　　　　　　　　　Tel.  (207) 626-8800
　　　　　　　　　　　　　　　　　　　　Christopher.C.Taub@maine.gov