UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| Plaintiff | ) ) ) |
| v. | ) ) )  No. 1:25-cv-00173-SDN |
| MAINE DEPARTMENT OF EDUCATION, | ) ) ) ) |
| Defendant | ) |

**ORDER ON DEFENDANT'S MOTION TO AMEND**

The Maine Department of Education (MDOE), Defendant in this Title IX discrimination case, moves for leave to amend its answer to add the affirmative defense of selective enforcement.[1]  *See* Motion (ECF No. 26).  Under the permissive standard established by Fed. R. Civ. P. 15(a)(2), I grant the MDOE leave to amend and assert a selective enforcement defense.

**I. Background**

The Government filed this lawsuit in April 2025 following investigations by the Department of Education and the Department of Health and Human Services into MDOE's Title IX compliance.  Motion at 4.  The agencies began investigating shortly after a February 21, 2025, National Governors Association meeting during which President Trump challenged Governor Mills over Maine's Title IX policies.  *Id.*

---

[1] Because the MDOE cites no authority supporting the viability of a vindictive prosecution defense in a civil case, I deny leave to amend as to that defense.  *See* Motion; MDOE Letter Brief (ECF No. 27) at 2 ("Maine DOE is not presently aware of a case in which a court recognized vindictive prosecution as a defense to a civil enforcement action.").

1

The lawsuit alleges that the MDOE is violating Title IX of the Education Amendments of 1972 and its regulations by implementing policies that "discriminate on the basis of sex and harm female student athletes under [the MDOE's] educational charge."  Complaint (ECF No. 1) ¶¶ 1-2.  In May 2025, the MDOE filed its answer asserting several affirmative defenses including that "[t]he United States' claims are barred because it is acting ultra vires," and that "[t]he United States' claims, and/or the relief the United States seeks, are barred by the Equal Protection and Due Process Clauses of the United States Constitution."  Answer (ECF No. 12) at 17.  In mid-June 2025, I issued an amended scheduling order setting September 3, 2025, as the deadline for amending pleadings.  ECF No. 18.

On August 20, 2025, the MDOE filed this motion to amend.  *See* Motion.  It seeks leave to add an eighth affirmative defense: that "[t]he United States' claims are barred because the United States is selectively enforcing Title IX against the Maine Department of Education and/or is maliciously and vindictively prosecuting this action."  *Id.* at 1.  The MDOE notes that twenty-two other states do not prohibit transgender girls from participating in sports based on gender identity.  *See* Reply at 2 (citing a combination of states with no policy on transgender participation and some with explicit protections).  Yet only two of these states have faced lawsuits from the federal government.  *Id.*  The MDOE also cites the timing of federal investigations, the Social Security Administration former acting commissioner's contract terminations accompanied by his statement, "no money will go from the public trust to a petulant child," and a demand by President Trump for a full apology

from Governor Mills, along with a promise never to challenge the federal government in such a manner again after the February 21, 2025, exchange. Motion at 3-5.

## II. Discussion

Under Federal Rule of Civil Procedure 15, after the period for amending a pleading "as a Matter of Course" has passed, a moving party must seek leave of court to amend, which should be "freely given when justice so requires." *Id.* The First Circuit has described this standard as reflecting a liberal approach to amendments. *See, e.g.*, *Amyndas Pharmaceuticals, S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 36 (1st Cir. 2022) ("The Civil Rules take a liberal stance toward the amendment of pleadings, consistent with the federal courts' longstanding policy favoring the resolution of disputes on the merits."). Thus, courts should deny leave to amend only if there is "undue delay, bad faith or dilatory motives," repeated failure to cure deficiencies by previously allowed amendments, undue prejudice, or if the amendment is futile. *Foman v. Davis,* 371 U.S. 178, 182 (1962).

None of the bases for denying leave are present here. The MDOE filed its motion to amend within the scheduling order's deadline. *See* ECF No. 26. It has not passed up previous opportunities to amend its answer. The selective enforcement defense shares a legal basis with the other defenses already pleaded, and there is no indication that granting leave would unduly prejudice the Government. *Compare* Answer (ECF No. 12), *with* Motion (ECF No. 26). In fact, the Government's response to the motion to amend does not mention prejudice. *See* ECF No. 39. Without prejudice, leave should be granted unless the amendment is legally frivolous.

*See Mascal v. Me. Dep't of Corr.*, No. 1:22-cv-00292-JDL, 2023 WL 8003484, at *2 (D. Me. Nov. 17, 2023) ("The most important factor to consider may be prejudice, if the court is persuaded that no prejudice will accrue, the amendment should be allowed." (cleaned up)).

Selective enforcement as a defense requires two elements: "(1) [that], compared with others similarly situated, [the defendant was] selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *SEC v. Navellier & Associates, Inc.*, 108 F.4th 19, 39 (1st Cir. 2024) (cleaned up). As previously noted, the MDOE already pleaded the legal basis for a selective enforcement defense in its original answer.[2] *See* Answer at 17 (alleging that the United States acted ultra vires and in violation of the Equal Protection and Due Process clauses of the United States Constitution). Therefore, the MDOE merely seeks to make explicit what was previously implicit in its original pleading. Denying such an amendment would be inconsistent with the basic policy behind Rule 15, which is to decide issues on the merits. *See* 6 Mary Kay Kane & Howard M. Erichson, *Federal Practice and Procedure* § 1487, Westlaw (database updated Sept. 2025) (explaining that Rule 15's underlying policy is to have

---

[2] The selective enforcement affirmative defense is rooted in the equal protection and due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, depending on whether it is asserted against a state or federal entity. *See Thorpe v. Upper Makefield Twp.*, 758 F. App'x 258, 262 (3d Cir. 2018) ("A selective enforcement claim is based on the well-established principle that discriminatory enforcement of a facially neutral law violates the Equal Protection Clause."); *Cohen v. Brown Univ.*, 101 F.3d 155, 182 n.20 (1st Cir. 1996) ("It is well settled that the reach of the equal protection guarantee of the Fifth Amendment Due Process Clause . . . is coextensive with that of the Fourteenth Amendment Equal Protection Clause.").

claims decided on the merits and limit the pleadings' role to providing notice of the nature of the dispute); *Foman*, 371 U.S. at 182.

The Government, as the party opposing the amendment, has the burden of demonstrating that it is legally frivolous. *See, e.g.*, *Mineo v. Town of Hempstead*, No. 22-CV-04092 (JMA) 2024 WL 1077874, at *11 (E.D.N.Y. Feb. 23, 2024) (rec. dec.), *aff'd* 2024 WL 1072569 (E.D.N.Y. Mar. 12, 2024) ("The party opposing the proposed amended pleading has the burden of establishing that amendment would be futile."). Rather than argue legal futility, the Government disputes the factual sufficiency of the defense. *See* Response at 6. Specifically, it asserts that its enforcement actions have not been selective or targeted, noting that it sent warning letters to three states—Maine, California, and Minnesota—regarding their compliance with Title IX. *Id.* The Government further points to its lawsuit against the California Interscholastic Federation and highlights multiple ongoing Title IX investigations across a range of states as evidence of its consistent enforcement efforts. *Id.* According to the Government, these actions demonstrate that similarly situated states are being treated alike, thereby undermining the selective enforcement defense. *Id.*

These contentions, however, raise factual questions about whether the states identified by the MDOE are, in fact, similarly situated and whether enforcement was uniform. *See Navellier & Associates, Inc.*, 108 F.4th at 39-40 (discussing the elements of the selective enforcement defense). Such disputes are not suitable for resolution on a motion to amend a pleading. *See, e.g.*, *J.S. McCarthy, Co., Inc. v. Brausse*

*Diecutting & Converting Equip., Inc.*, 226 F.R.D. 14, 17 (D. Me. 2005) ("[A Party's] urgent and well expressed disagreements with [the] allegations may prove out, but at this stage, the Court cannot resolve factual disputes."); *see also* Fed. R. Civ. P. 8(c)(1) (requiring "a party [to] affirmatively state any avoidance or affirmative defense" without requiring the defendant to plead facts supporting that defense).

The Government's remaining arguments regarding the ongoing nature of the violation and the presumption of regularity similarly do not demonstrate futility. *See* Response at 5-7. Selective enforcement focuses on the fairness and constitutionality of the enforcement, not the timing of the violation. *See Abcarian v. McDonald,* 617 F.3d 931, 940 (7th Cir. 2010) ("Equal protection claims are allowed in such circumstances not because the particular law at issue is facially invalid or inapplicable to the plaintiff's conduct, but because of the concern that individuals with discretion in law enforcement will take advantage of that discretion to oppress unpopular groups."); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 511 (1999) (Souter, J., dissenting) ("If authorities prosecute only those tax evaders against whom they bear some prejudice or whose protected liberties they wish to curtail, the ongoing nature of the nonpayers' violation does not obviate the interest against selective prosecution."). Therefore, a defendant is entitled to equal application of the law regardless of the timing of their alleged violation.

As for the presumption of regularity, the presumption "is an analytic tool, not an excuse to rubberstamp any and all executive action as lawful absent clear evidence to the contrary." *Walker v. Bellnier,* 146 F.4th 228, 255 n.48 (2d Cir. 2025) (quoting

*Conley v. United States*, 5 F.4th 781, 791 (7th Cir. 2021)). In any event, applying the presumption to deny amendment under Rule 15 would be premature because pleading the selective enforcement defense puts the Government on notice that the MDOE plans to challenge the presumption, but does not properly tee up the issue for a dispositive ruling at this stage of the litigation. *See Federal Practice and Procedure* § 1471, Westlaw (database updated Sept. 2025) (discussing the two purposes behind Rule 15).

In sum, leave to amend is warranted because the MDOE's motion was timely. *See* ECF No. 18. The amendment does not prejudice the Government. *See* ECF No. 39. Allowing the MDOE to amend and clarify the nature of its affirmative defenses is consistent with both the purpose of Rule 15 and the notice provided to the Government in the original answer, which already stated the legal basis for a selective enforcement defense. *See Federal Practice and Procedure* § 1487, Westlaw (database updated Sept. 2025).

### III. Conclusion

For the reasons stated above, the motion for leave to amend the answer is **GRANTED** with respect to the selective enforcement defense, stating, "The United States' claims are barred because the United States is selectively enforcing Title IX against the Maine Department of Education." Leave to amend is **DENIED** as to the vindictive prosecution defense. The Defendant shall file the amended answer within three business days of this order.

## *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the District Court and to any further appeal of this order.*

Dated: December 22, 2025

/s/ Karen Frink Wolf
United States Magistrate Judge

8