UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) CASE NO. 1:25-cv-00173-SDN |
| | ) |
| MAINE DEPARTMENT OF EDUCATION, | ) |
| | ) |
| *Defendant.* | ) |

**<u>MOTION TO QUASH WITH INCORPORATED MEMORANDUM OF LAW</u>**

In accordance with Federal Rules of Civil Procedure 24(c) and 45(d), Proposed Intervenor Portland Public Schools ("PPS") moves to quash that portion of Plaintiff United States of America's third-party subpoena for records to the Maine Principal's Association ("MPA") that requires production of student records (requests numbered 4, 5, 6, 7, 8, 9, 11, 18, and 19) (ECF Doc. 28-1 at 5-7). As set forth in more detail below, the third-party subpoena to the MPA must be quashed pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iii) because it seeks confidential education records, including records that the MPA would have received from PPS, and no exception or waiver applies. In support of this motion, PPS states as follows.

For students who wish to participate in youth sports administered by the MPA, PPS provides education records to the MPA for the sole purpose of facilitating student participation in youth sports. The Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA") protects the privacy of student education records, which are broadly defined as any "records, files, documents and other materials" that "contain information directly related to a student." 20 U.S.C. § 1232g(a)(4). PPS has adopted a Board policy affirming its privacy obligations. *See* PPS Board Policy JRA (available at [Policy - Portland Public Schools](#)). As the First Circuit has

explained, "Congress enacted FERPA 'to assure parents of students ... access to their educational records and to protect such individuals' rights to privacy by limiting the transferability of their records without their consent.'" *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67–68 (1st Cir. 2002) (citing 120 Cong. Rec. 39,862 (1974) (joint statement of Sens. Pell and Buckley explaining major amendments to FERPA)); *see also Doe v. Massachusetts Institute of Technology,* 46 F.4th 61 (1st Cir. 2022) ("By enacting the Family Educational Rights and Privacy Act of 1974 (FERPA), 88 Stat. 571, 20 U.S.C. § 1232g, Congress sought to prevent educational institutions from unilaterally disclosing 'sensitive information about students'….")

The importance of this requirement of confidentiality, both to schools and to the students and families they serve, cannot be overstated. On a daily basis, public schools are responsible for the social and emotional wellbeing of hundreds of students and to meet this responsibility, they need to obtain and collect information on a host of issues. Were it not for the obligation of schools to keep student records confidential, students and their parents and guardians would likely be unwilling to share information with the school, making it impossible to fulfill its obligation to protect its students and help them thrive.

Subpoena requests numbered 4, 5, 6, 7, 8, 9, 11, 18, and 19 request documents that plainly constitute education records including, but not limited to, documents that contain information about students' dates of birth, gender, extracurricular activities, as well as parent, staff, and community statements about students. Federal Rule of Civil Procedure 45(d)(3)(A)(iii) provides that the Court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies…." Therefore, unless those records fall within an exception to the confidentiality requirements, the portion of the subpoena requesting student records must be quashed.

The general rule under FERPA is that a school must have written permission from the parent or eligible student in order to release any information from a student's education records. 20 U.S.C. § 1232g(b). The sole exception to this general rule relied upon by Plaintiff is the provision in FERPA that a school may provide a student's education records to "authorized representatives of the Attorney General for law enforcement purposes…." *Id.* § 1232g(b)(1)(C). FERPA does not preclude authorized representatives "from having access to student or other records which *may be necessary* … in connection with the enforcement of the Federal legal requirements which relate to such programs…." *Id.* § 1232g(b)(3) (emphasis added). Plaintiff erroneously concludes that this exception ends the inquiry. (ECF No. 35 at 10). Plaintiff cannot, however, establish that the confidential education records that third-party MPA received from the schools, including PPS, for the purpose of facilitating student participation in youth sports, are necessary to Plaintiff's efforts to enforce Title IX. Put differently, the gender, date of birth, extracurriculars activities, and statements about students from PPS have no bearing on the fundamental legal issue in Plaintiff's complaint—whether the MDOE is violating Title IX by following the Maine Human Rights Act and allowing transgender girls to participate in girls' sports.

Nor does Plaintiff's one sentence reference to a likely confidentiality order carry the day. (ECF No. 35 at 10). FERPA protects the confidentiality of student records and unless the Plaintiff's request falls within an exception, the possible entry of a confidentiality order is beside the point. Even if a confidentiality order is adopted by the parties to the case, the Plaintiff will still have highly sensitive information relating to the gender of PPS's students in violation of the law and contrary to the protections PPS has assured its families they will have under Board

Policy JRA. While FERPA provides that "any data collected by such officials shall be protected in a manner which will not permit the personal identification of students and their parents by other than those officials, and such personally identifiable data shall be destroyed when no longer needed for such … enforcement of Federal legal requirements," 20 U.S.C. § 1232g(b)(3), PPS is deeply concerned that during the pendency of this action, private information about its students may be used in a manner that adversely affects the well-being of any students and families who may be the target of the Plaintiff's requests for documents.

*In Alig-Mielcarek v. Jackson*, 286 F.R.D. 521, 527 (N.D. Ga. 2012), the court emphasized "the significant privacy interests of nonparty students which underlie FERPA," and those interests are what are at stake here. *See also*, *id.*, (noting heavy burden party seeking disclosure must meet to show need for records outweighs significant privacy interests). What makes this issue particularly important is that the target of the Plaintiff's requests appears to be one of the most vulnerable segments of the PPS community. The literature overwhelmingly suggests that transgender youth have a high risk of engaging in suicidal behaviors, particularly when they are placed under a microscope like the one Plaintiff is trying to set up in this case. At the end of the day, the Court is going to decide the legal issue of whether MDOE is violating Title IX by following the Maine Human Rights Act, and it does not need to know the biological sex of Students A, B, and C, at PPS to make that decision. However the Court decides the legal issue in the case, PPS will be committed to cultivating a welcoming, inclusive, and safe space for all students and staff. To do so effectively, students and their families must have trust and faith that PPS's confidential education records will not be used in violation of the law.

For the foregoing reasons, PPS respectfully requests that the Court quash Plaintiff's third-party subpoena to the MPA seeking confidential education records of PPS students.

|  |  |
|---|---|
| Dated: December 22, 2025 | /s/ *Melissa A. Hewey* <br> Melissa A. Hewey <br> Attorney for Intervenor <br> Portland Public Schools <br><br> Drummond Woodsum <br> 84 Marginal Way, Suite 600 <br> Portland, ME 04101-2480 <br> (207) 772-1941 <br> mhewey@dwmlaw.com |