**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>MAINE DEPARTMENT OF EDUCATION,<br><br>        Defendant. | Case No. 1:25-cv-00173-SDN |

**UNITED STATES' RESPONSE IN OPPOSITION TO**
**PORTLAND PUBLIC SCHOOLS' MOTION TO QUASH**

Intervenor Portland Public Schools ("PPS") inexplicably objects to student information going to the United States in its law enforcement capacity here, while at the same time PPS apparently freely gave this same information to the non-law enforcement, third-party Maine Principals' Association ("MPA") without batting an eye. *See generally* PPS Mot. to Quash, ECF No. 59. Adding to the perplexity is the PPS's reliance on the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, which is a Spending Clause statute tied to funding that the United States provides and that, compared to the MPA, explicitly grants the United States the authority to get the information it subpoenaed here.

This Court should deny PPS's Motion to Quash because: (1) FERPA does not protect the subpoenaed documents from disclosure to the United States here, but rather specifically provides that the United States can obtain them; and (2) the subpoenaed documents are relevant and necessary.

## INCORPORATED MEMORANDUM OF LAW

### I.     ARGUMENT

**A.  FERPA Specifically Authorizes the United States to Get the Subpoenaed Documents.**

PPS bases its Motion to Quash entirely on FERPA's confidentiality protections.  *See, e.g.*, PPS Mot. to Quash at 1 (seeking to quash because subpoena "seeks confidential education records, including records that the MPA would have received from PPS, and no exception or waiver applies"); *id.* at 1-2 (stating subpoena seeks FERPA "education records" and Court must quash "unless those records fall within an exception").  PPS bears the burden to demonstrate that FERPA prevents disclosure to the United States here.  *See Delaney v. Town of Abington*, 890 F.3d 1, 12 (1st Cir. 2018).  This Court should find that FERPA does not protect the subpoenaed documents from disclosure to the United States here, but rather the statute specifically provides that the United States can obtain the documents.

As PPS concedes (at 3-4), FERPA includes a specific exception to its confidentiality protections for the United States to obtain and use student information for law enforcement purposes.[1]  While FERPA generally prohibits the disclosure of education records "of students without the written consent of their parents," it specifically allows "authorized representatives of the Attorney General" of the United States to access records "for law enforcement purposes."  20 U.S.C. § 1232g(b); *see also* 34 C.F.R. § 99.31(a)(3)(ii) (stating no consent required for disclosure to Attorney General).  Just as PPS can share FERPA protected student records with "School Officials with Legitimate Educational Interests,"[2] it can share FERPA protected student records

---

[1]  *Accord* MPA Reply Br. Mot. to Quash at 4, ("The United States correctly asserted [FERPA} contains an exception allowing disclosure of student records without consent to authorized representatives of the Attorney General."), ECF No. 37.

[2]  *See* PPS "Annual Notice of Student Education Records & Info, JRA-E, https://go.boarddocs.com/me/portland/Board.nsf/Public?open&id=B7VKNG52AD3A; *see also* PPS Mot. to Quash at 1-2.

with the United States here. Indeed, the FERPA exception for the United States does not merely *allow* school districts to provide education records to the Attorney General; it *requires* school districts to provide the records. *See* 34 C.F.R. § 99.35(a)(1) ("Authorized representatives . . . may have access to education records . . . for the enforcement of or compliance with Federal legal requirements that relate to those programs.").

Courts recognize and enforce this FERPA exception for the United States. *E.g.*, *K.E. v. Nat'l Sci. Found.*, No. 1-15-MC-023 RP, 2015 WL 12734167, at *1–2 (W.D. Tex. Mar. 2, 2015); *United States v. Lincoln Par. Sch. Bd.*, 922 F. Supp. 2d 582, 589-91 (W.D. La. 2013); *United States v. Bertie Cty. Bd. of Educ.*, 319 F. Supp. 2d 669, 671-72 (E.D.N.C. 2004); *see also Rios v. Read*, 73 F.R.D. 589, 599 (E.D.N.Y. 1977) (comparing government exception to private plaintiffs subject to higher burden, and finding that "[i]f the action had been brought by [the predecessor to the United States Department of Education], instead of the present plaintiffs, there is little doubt that government officials would have access to the school records").

Even if FERPA did not grant this specific permission for the United States, much of the information the United States seeks constitutes unprotected "directory information," which includes "participation in . . . sports." 20 U.S.C. § 1232g(a)(5) (explaining directory information); *id.* § 1232g(b)(1) ("No funds shall be made available . . . to any educational agency or institution which has a policy or practice of permitting the release of education records . . . *other than directory information*." (emphasis added)). And PPS's own policy even warns

3

students it will publicly divulge this directory information unless the student proactively objects at the beginning of the school year.[3]

More importantly, PPS's policy specifically notes that it may, like here, need to disclose student records to "other entities and individuals as specifically permitted by law" and even lists the United States Department of Education as the entity students should file complaints with about FERPA violations.[4] PPS has therefore provided plenty of notice to its students and parents that the United States could legally obtain the information the United States seeks here.

Indeed, as above, FERPA is a Spending Clause statute tied to funding the United States provides and that trusts the United States' executive branch with its enforcement. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 279-91 (2002) (finding no private right of action to enforce FERPA under 42 U.S.C. § 1983 because of, among other things, the United States' enforcement authority); *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 68-70 (1st Cir. 2002) (finding no private right of action to enforce FERPA because of, among other things, the United States' enforcement authority). That PPS apparently freely gave its students' educational records over to the third-party MPA, while now objecting under FERPA to these same records going to the United States—which enforces FERPA—is perplexing and nonsensical.

The United States subpoenaed the records here in its law enforcement capacity to facilitate fair, safe, and equal opportunity participation in girls' sports under Title IX. The FERPA statute gives the United States the exception to its general protections because it trusts

---

[3] *Id.* ("The School Department designates the following student information as directory information that may be made public at its discretion: name, participation and grade level of students in officially recognized activities and sports, height and weight of student athletes, dates of attendance in the school unit . . .").

[4] *Id.*

4

the United States to maintain the privacy and confidentiality interests that the statute protects—and trusts it with enforcement of FERPA itself.

Finally, FERPA and this Court's Confidentiality Order, ECF No. 43, eliminate PPS's purported concerns with the United States obtaining the subpoenaed information. FERPA itself limits the United States' use of student records to "law enforcement purposes" and requires the United States to "protect[]" education records "in a manner which will not permit the personal identification of students and their parents." 20 U.S.C. §§ 1232(b)(1)(C)(i) & 1232(b)(3). As such, the United States cannot unilaterally publicly disclose the protected information. Moreover, this Court's Confidentiality Order reinforces FERPA's privacy protections. The Parties may not disclose Confidential Information, including "sensitive personal information," "for any purpose other than to conduct this litigation." Confidentiality Order at ¶¶ 3, 9. Confidential Information may not be disclosed to the media, general public, or others uninvolved in this litigation and may be filed under seal. *Id.* ¶¶ 10, 13; *see also* Fed. R. Civ. P. 5.2 (providing that minors cannot be identified by their full names in public filings).

This Court should accordingly find that FERPA specifically grants the United States permission to obtain the records here, and that FERPA and the Confidentiality Order eliminate PPS's purported concerns.

**B. The Subpoena Targets Relevant and Necessary Information.**

PPS incorrectly urges that the exception for the United States should not apply here because the United States does not need any individual records here to prove the "fundamental legal issue" of "whether the MDOE is violating Title IX by following the Maine Human Rights Act." PPS Mot. to Quash at 3. As the United States explained in its Opposition to the MPA's Motion to Quash, ECF No. 35:

> Defendant MDOE apparently disagrees because it filed an Answer, ECF No. 12, rather than move to dismiss the Complaint based on any legal grounds such as lack of preemption.
>
> The United States would happily have this Court resolve the case based on a stipulated record. But Defendant MDOE did not move to dismiss the Complaint on legal grounds, and instead denied virtually every allegation in the United States' Complaint. The United States accordingly must secure evidence to support the Complaint's allegations, and the MPA—as the MDOE's administrator of interscholastic athletics—possesses a large amount of that evidence supporting the claims.

*Id.* at 3-4 (citations omitted).

The United States also outlined in response to MPA's objection why each subpoena request targets relevant and necessary information. *See* U.S. Opp. MPA Mot. to Quash at 7-9. For example, Requests 4-9 seek rosters and statistics regarding athletics.[5] Rather than being FERPA confidential "education records," this is "directory information" that PPS has already warned students and parents it could disclose. And regardless, this information is highly relevant to illustrating boys' inherent biological advantage in athletics, and the harmful effect of the MPA's athletics participation bylaw on girls' athletic opportunities. The Complaint contains examples of the harmful effects, (*see, e.g.*, Complaint ¶¶ 100-109), and this Court should not prevent the United States from securing evidence of more examples.

Requests Numbers 11, 18, and 19, target information regarding the MPA's reasons purportedly justifying its athletics bylaw, including changes it made to the bylaw, as well as the MPA's response to complaints or praise about the bylaw and "the selection of sports" to "effectively accommodate the interests and abilities of members of both sexes." 34 CFR § 106.41(c) (Educational programs shall "provide equal athletic opportunity for members of both

---

[5] The MPA strangely appears to suggest that, despite running interscholastic athletics for the state, the MPA has no lists, no information, or any idea as to who is participating in its athletics (beyond post season tournament rosters). *See* MPA Reply Br. Mot. to Quash at 5-6, ECF No. 37.

sexes," including "the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes."); *see also* Compl. ¶¶ 94-131; *cf.* Answer ¶¶ 94-131, Compl. ¶¶ 126-27 ("Girl athletes and their families haven an interest, and have expressed this interest . . ."); *cf.* Answer ¶¶ 126-27.

This Court should accordingly find that the subpoena targets relevant and necessary information.

## II. CONCLUSION

This Court should deny PPS's Motion to Quash.

Respectfully submitted,

 */s/ Matthew J. Donnelly*
MATTHEW J. DONNELLY
Attorney
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Telephone: (202) 616-2788
Email: matthew.donnelly3@usdoj.gov

Dated: January 12, 2026