UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MAINE DEPARTMENT OF EDUCATION,<br><br>Defendant. | Case No. 1:25cv00173-SDN |

**UNITED STATES' OBJECTION TO ORDER COMPELLING DISCOVERY**

Pursuant to Rule 72(a), the United States submits this Objection to the magistrate's Order compelling discovery, ECF No. 64 ("Compel Order"). That Compel Order erred in requiring the United States to respond to Defendant's discovery that purposefully targets the United States' internal communications and other obviously privileged documents.

Defendant seeks to improperly invade and scrutinize the United States' privileged, internal decision-making processes based on an unfounded accusation that the United States brought this suit for an improper purpose. Incredibly, Defendant makes this accusation after the Maine Governor publicly admitted that Maine was violating Title IX, 20 U.S.C. § 1681, and steadfastly confirmed that Maine intended to continue to violate Title IX.

Despite this public admission, Defendant cries bad faith, selective enforcement and asserts entitlement to the United States' privileged documents to attempt to prove it. But the law shields the United States from the undue burden of automatically having to respond to Defendant's harassing discovery requests targeting its motives. There is a formidable presumption that the United States proceeded with regularity and brought this case in good faith.

Here, Defendant has not made the required demanding showing to overcome this presumption and the United States should not need to respond.

The Compel Order made several legal errors in ruling that the United States needed to respond—including not addressing the presumption of good faith. This Court should overrule the Compel Order and deny Defendant's requested discovery because: (1) Defendant has not met its formidable burden to even seek discovery on its purported selective enforcement defense; (2) the pre-suit investigations by the federal agencies are irrelevant; and (3) Defendant's unduly burdensome discovery requests intentionally seek obviously privileged information.

## I.    BACKGROUND

News outlets and social media widely reported a boy winning first place in a Maine girls' high school competition on February 17, 2025. U.S. Ltr. Br at 1-2, ECF No. 38. On February 21, 2025, in response to the President's questions at a public event, Maine's Governor in substance publicly admitted that Maine was allowing boys to compete in girls' sports and steadfastly confirmed that it intended to keep doing so. This amounts to the Governor publicly confirming that Maine was violating and will continue to violate Title IX. *Id.*

Right after this public admission, the offices for civil rights at the United States Departments of Education ("USDOE OCR") and Health and Human Services ("HHS OCR") unsurprisingly initiated Title IX investigations. *Id.* On February 25, 2025, the U.S. Attorney General sent Title IX warning letters to Maine, Minnesota, and California. Subsequently HHS OCR and USDOE OCR found that Defendant was violating Title IX. *See id*; HHS OCR Feb. 25, 2025, Ltr., ECF No. 16-5; USDOE OCR March 19, 2025, Ltr., ECF No. 16-2. There is nothing sinister or even remarkable about these investigations or findings confirming the Maine Governor's public admission of the Title IX violation.

After the findings, both HHS OCR and USDOE OCR unsuccessfully attempted to obtain Defendant's voluntary compliance with Title IX.  U.S. Ltr Br. at 2-3.  Defendant had no interest.  On April 11, 2025, Defendant sent a letter confirming that Defendant would "not sign the Resolution Agreement, and we do not have revisions to counter propose.  We agree that we are at an impasse."  Def. Ltr. to USDOE OCR at 1, April 11, 2025, ECF No 38-1.  That letter also confirmed that Defendant (incorrectly) believes that "[n]othing in Title IX or its implementing regulations prohibits schools from allowing transgender girls and women to participate on girls' and women's sports teams."  *Id.*  A few days after this confirmed impasse and confirmed incorrect view of Title IX, the United States filed suit on April 16, 2025.

In June 2025, Defendant served discovery on the United States.  *See* Excerpts of U.S. Obj. & Resp. to Defs.' Interrogatories, ECF No. 23-1, and Document Requests, ECF. No. 23-2.  The United States objected to much of this requested discovery because, among other things, it was proactively calculated towards an improper, irrelevant collateral attack on the OCR investigations and purposefully sought large amounts of privileged information.  *See id.*; Compel Order at 1.  Defendant raised the dispute with the magistrate, who issued the Compel Order in January 2026.  That Compel Order largely requires the United States to respond to the disputed discovery.  Compel Order at 1.  The Compel Order found that the OCR investigations were relevant because the Complaint mentions them, the United States' motivations were relevant because of Defendant's selective enforcement defense, and the United States should write out a privilege log for all the requested privileged information.  See, *e.g.*, *id.* at 2, 4, 7.

## II. STANDARD Of REVIEW

For non-dispositive discovery orders issued by a magistrate, the district judge should "consider timely objections and modify or set aside any part of the order that is clearly erroneous

3

or is contrary to law." Fed. R. Civ. P. 72(a); *see also Gladu v. Magnusson*, No. 1:22-CV-00134-SDN, 2025 WL 1736716, at *1 (D. Me. June 23, 2025).

### III.     ARGUMENT

#### A. DEFENDANT HAS NOT MET ITS FORMIDABLE BURDEN TO EVEN SEEK DISCOVERY ON ITS PURPORTED SELECTIVE ENFORCEMENT DEFENSE.

Because of a presumption of regularity and good faith, Defendant must make a formidable showing before it can even seek discovery on its purported selective enforcement defense. U.S. Ltr. Br at 3-4. The Compel Order legally erred by not addressing or even mentioning this presumption.[1] This Court should find that Defendant has not made the required showing and accordingly deny the disputed discovery.

Defendant must overcome a formidable hurdle to even obtain discovery on its selective enforcement defense. The United States has "substantial discretion" in determining who to sue and what claims to bring. *United States v. Lewis*, 517 F.3d 20, 25-26 (1st Cir. 2008) (citing *United States v. Armstrong,* 517 U.S. 456, 464 (1996)). "Once made, these decisions enjoy a presumption of regularity," "which includes a presumption of good faith." *Id.* The presumption "should not lightly be discarded for it serves important policy interests"; it "enhances the efficacy of prosecutorial strivings to enforce the law while at the same time limiting courts' abilities to circumscribe executive authority in areas outside the realm of judicial competence." *Id.*

Because of this "formidable" presumption, Defendant must meet a "rigorous standard" to even obtain "discovery in aid of" its selective enforcement assertions. *Armstrong,* 517 U.S. at 465, 468. Defendant must at least make a "credible showing" with "some evidence" to support

---

[1] The Order on Defendant's Motion to Amend, ECF No. 58, also does not rule on or address the presumption.

4

each element of its defenses. *Lewis*, 517 F.3d at 25; *Armstrong,* 517 U.S. at 469; *see also United States v. Bass*, 536 U.S. 862, 863-64 (2002) (finding defendant "not entitled to discovery" because of failure to meet threshold showing for "similarly situated persons"). The Compel Order does not rule on or mention this formidable presumption and required showing. And this Court should find that Defendant has not made this required showing.

For its selective enforcement defense, Defendant bears the burden of proving that "(1) [Defendant], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Rubinovitz v. Rogato*, 60 F.3d 906, 909-10 (1st Cir. 1995) (citation omitted); *accord SEC v. Navellier & Assocs., Inc.*, 108 F.4th 19, 39 (1st Cir. 2024), *cert. denied,* No. 24-949, 2025 WL 1603606 (U.S. June 6, 2025)). Defendant has not pointed to exercising a constitutional right, nor can it invoke race, religion, or some other suspect class. Defendant accordingly must hang its purported defense solely on bad faith or malicious intent. *Rubinovitz*, 60 F.3d at 911.

Defendant fails on the first "selectively treated" element. Despite Defendant's assertion that it was "singled out," Def. Ltr. Br. at 2-3, the United States has sued and has ongoing similar Title IX sports related investigations against multiple jurisdictions. As above, the U.S. Attorney General sent a letter not just to Maine, but also to California and Minesota. Just days after the United States sued Defendant, Minnesota preemptively sued the United States before it could complete its Title IX investigation. Compl., *Minnesota v. Trump*, No 25cv1608 (D. Minn. April 22, 2025). According to Minnesota, the United States "[t]arget[ed] Minnesota, Maine, and California." *Id.* at p. 6. More importantly, the United States has filed a Title IX lawsuit against California that is extremely similar to this case. *See* Compl., *United States v. California*

*Interscholastic Federation*, No. 8:25cv1485 (C.D. Cal. July 9, 2025), ECF No. 1. These lawsuits preclude any selective enforcement defense, and this Court thus should bar any attempted discovery on that basis alone.

      Moreover, USDOE OCR has multiple ongoing Title IX sports related investigations. U.S. Ltr. Br. Ex. 2, ECF No. 38-2. These investigations also preclude a selective enforcement defense. And that some have not yet resulted in litigation is immaterial: the United States has limited resources and thus cannot pursue every violator (and certainly not all at once). *United States v. Stokes*, 124 F.3d 39, 45 (1st Cir. 1997) (A "prosecutor does not have the resources (time, money, staff) to charge every suspected malefactor . . . they may (indeed, they should) make judgments about dangerousness, set priorities, and give heightened attention to cases which inspire a sense of outrage."); *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980) (The Constitution "does not require that all evils of the same genus be eradicated or none at all.").

      The United States understandably made Defendant one of its higher priorities after a highly publicized sporting event, the Governor publicly admitting Maine was and would keep violating Title IX, and Defendant confirming it would not voluntarily comply with Title IX. Defendant simply has not and cannot identify a similarly situated comparator that has not been sued, which dooms its selective enforcement claim. *Rubinovitz*, 60 F.3d at 910; *Navellier & Assocs., Inc.*, 108 F.4th. at 40 (rejecting comparator that had committed fewer wrongful acts and received less warning).

      Because Defendant has not met this necessary similarly situated element, Defendant's discovery requests automatically fail regardless of the second element concerning bad faith. *Navellier & Assocs., Inc.*, 108 F.4th at 40 ("We need not consider whether the alleged selective treatment was based on impermissible considerations or bad faith"); *Lewis*, 517 F.3d at 25. But

Defendant cannot meet that bad faith element either.  Bad faith requires more than "angry responses" to Maine's "recalcitrance." *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005) (quoting *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir.1995)).  Instead, Defendant must show "adverse governmental action that is not motivated by 'legitimate governmental objectives.'" *Id.* "If the motivation to punish is to secure compliance with agency objectives, then by definition the motivation is not spite, or malice, or a desire to '"get" [Defendant] for reasons wholly unrelated to any legitimate state objective.'" *Id.*; *see also Yerardi's Moody St. Restaurant & Lounge, Inc. v. Bd. Of Selectmen of Town of Randolph*, 932 F.2d 89, 94 (1st Cir. 1991) (The "malice/bad faith standard should be scrupulously met," and it is the "infrequent" case in which a party can show "evidence of bad faith or malicious intent to injure.").  Here, regardless of any rhetoric, the legitimate government objective was to get Maine to comply with Title IX.  And Defendant cannot credibly claim that the reason the United States brought the suit was "wholly unrelated" to the Title IX violations.  932 F.2d at 94

    Because Defendant has not made the required showing on the selective prosecution elements, this Court should find Defendant has failed to overcome the presumption of regularity and good faith that prevents Defendant from even attempting to obtain the disputed discovery.

    B.   THE PRE-SUIT INVESTIGATIONS ARE IRRELEVANT

    The Compel Order also legally erred in determining that just because the Complaint mentions the USDOE and HHS Title IX investigations, they are automatically relevant and subject to discovery.  *See* Compel Order at 2; *cf.* U.S. Ltr. Br. at 5 (explaining lack of relevance).  This Court should overrule this determination.  The investigations are procedural prerequisites to the United States filing suit, and Defendant admits that United States satisfied these prerequisites and that the investigations have no relevance to this case's claims.

The Complaint lists these USDOE and HHS investigations and findings not because they are relevant to claims, but only because these events are necessarily procedural prerequisites to the United States filing suit. *See* 20 U.S.C. 1682 (requiring United States "advise[ ]" the funding recipient "of the failure to comply with" Title IX and "determine[ ] that compliance cannot be secured by voluntary means" before enforcement suit). For purposes of filing suit, the events just need to occur, and the veracity of the investigations and findings is irrelevant. Indeed, such investigations and findings are not even "final agency action" and thus not reviewable under the Administrative Procedure Act, 5 U.S.C. § 704. *See, e.g.*, *Pearl River Union Free Sch. Dist. v. Duncan*, 56 F. Supp. 3d 339, 382 (S.D.N.Y. 2014); *see also* 20 U.S.C. § 1682 (requiring subsequent APA hearing and findings for Title IX enforcement through funding termination).

Defendant even admits the United States complied with the prerequisites. Defendant "does not dispute that both USDOE OCR and HHS OCR notified it of the factual findings of their investigations and did not achieve voluntary compliance. *So both agencies properly referred the matter to DOJ.*" Def.' Resp. to U.S. Obj. to Prop. Sched. Order at 5 (emphasis added), ECF No. 16; *see also* Def. Ltr. to USDOE OCR at 1, April 11, 2025, (confirming "impasse" in response to USDOE voluntary compliance attempts prior to suit), ECF No 38-1.

Defense counsel also confirmed during oral argument that all the disputed discovery it seeks, including regarding the investigations, is completely irrelevant to the claims and whether Defendant was violating Title IX. *See* U.S. Ltr. Br. at 5. Instead, the Defendant concedes that the "discovery requests at issue are all designed to gather further facts to support Maine DOE's argument that this lawsuit was brought for improper purposes." Def. Ltr. Br. at 4, ECF No. 27.

Because Defendant admits the investigations' only substantive relevance is for its purported selective enforcement defense, the Complaint's references to the investigations does

8

not make them automatically relevant and subject to discovery. Instead, as above, Defendant needs to make the required showing to overcome the presumption of regularity and good faith, which Defendant failed to do and the Compel Order failed to address.

### C. DEFENDANT'S OVERBROAD, UNDULY BURDENSOME REQUESTS INTENTIONALLY SEEK OBVIOUSLY PRIVILEGED INFORMATION.

The Compel Order also erred in requiring the United States to produce an unduly burdensome and disproportionate privilege log when Defendant aims its discovery seemingly exclusively at obviously privileged information. *See, e.g.*, *Hall v. Baltimore Police Dep't*, No. CV 1:24-1137-RDB, 2025 WL 509130, at *15 (D. Md. Feb. 13, 2025) (finding privilege log not required for discovery aimed at work product because of undue burden); *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3-4 (D.D.C. 2017) (finding privilege log "would impose an undue and disproportionate burden" when "most" of the responsive documents defendant "could reasonably be expected to 'possess'" were privileged).

The United States is functioning in its law enforcement capacity here, with Department of Justice enforcement attorneys bringing the suit. Because of this enforcement posture, the United States has no involvement in, and is not a first-hand witness to, the transactions, events, or evidence concerning Defendant's Title IX violations. Rather, Department of Justice enforcement attorneys gather and compile evidence obtained from first-hand sources, such as Defendant. The same holds true for USDOE OCR and HHS OCR, which are also comprised of attorneys and associated legal staff and function as law enforcement entities.

Because of this enforcement posture, Defendant's discovery targeting the Department of Justice and the OCRs is the equivalent to targeting discovery on a law firm—and all the associated attorney privileges naturally apply. Because it is targeting attorneys, Defendant intentionally seeks documents specifically reflecting attorney-attorney communications, attorney

work product, attorney mental impressions, common-interest, and attorney-client communications. And other government privileges also apply, such as deliberative process and the law enforcement privilege.

For example, Requests 1 and 4 seek all documents—including communications—"concerning the decision" of both OCRs to initiate their investigations. This obviously intentionally seeks deliberative process privileged documents "concerning" a "decision." And because of the law enforcement posture, many of the attorney-related privileges also apply, such as attorney work product, mental impressions, and attorney-client.[2]

As another example, Requests 2 and 5 seek all documents "obtained or prepared by" USDOE OCR and HHS OCR during their investigations. The United States has already produced all "obtained" documents compiled from third-party sources. But because these OCRs are law enforcement entities comprised of attorneys, all non-public documents "prepared by" OCR are documents prepared by attorneys and thus privileged work-product and/or protected by the other attorney privileges.[3]

Because Defendant aims its discovery seemingly exclusively at obviously privileged information, this Court should find a privilege log is unduly burdensome and disproportionate.

## IV. CONCLUSION

This Court should overrule the Compel Order and deny Defendant's requested discovery.

---

[2] This is the equivalent of the United States requesting all documents from the Maine Attorney General's Office "concerning the decision" to assert affirmative defenses or not move to dismiss the Complaint.

[3] Beyond privilege, the Compel Order also erred in finding the document requests were proportional. Request seven seeks communications received by the entire Department of Justice, which currently employs over 100,000 people. *See* https://data.opm.gov/explore-data/analytics/workforce-size-and-composition.

        Respectfully submitted,

        */s/ Matthew J. Donnelly*
        MATTHEW J. DONNELLY
        Attorney
        United States Department of Justice
        950 Pennsylvania Avenue, NW
        Washington, D.C.  20530
        Telephone: (202) 616-2788
        Email: matthew.donnelly3@usdoj.gov

Dated:  January 29, 2026