**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00173-SDN |
| | ) | |
| MAINE DEPARTMENT OF EDUCATION | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MAINE DEPARTMENT OF EDUCATION'S RESPONSE TO**
**UNITED STATES' OBJECTION TO DISCOVERY ORDER**

On April 16, 2025, the United States filed this lawsuit alleging that the Maine Department of Education ("Maine DOE") is in violation of Title IX because it identified three transgender female athletes that participated on girls' high school teams. Maine DOE asserted affirmative defenses alleging that the United States' clams are barred because it is acting ultra vires, violating the Equal Protection and Due Process Clauses, and engaging in selective enforcement. *See* Sixth, Seventh, and Eighth Affirmative Defenses in Maine DOE's Amended Answer. ECF No. 60. These defenses are based on compelling evidence that the United States brought this action in retaliation for Maine's Governor standing up to the President when he confronted her at a White House event and for then not acceding to the President's demand for a "full throated apology" for having "unlawful[ly] challenge[d]" the "Federal Government."

As will be discussed, Maine DOE made a sufficient showing to overcome any presumption that this enforcement action was brought in good faith. It should thus be permitted to conduct limited discovery so that it can establish the elements of its affirmative defenses, including that the United States is engaged in selective enforcement. The discovery requests at issue are not as broad

ranging and burdensome as the United States claims. Rather, as relevant here, Maine DOE simply seeks documents relating to why two separate federal agencies decided to initiate Title IX investigations of Maine DOE within <u>hours</u> of the confrontation between the Governor and the President and whether they conducted the investigations in accordance with their usual standards.[1] Maine DOE also seeks documents relating to the motivation for this lawsuit. The Magistrate Judge concluded that the discovery requests were not unduly burdensome and sought relevant documents and, because the United States claimed that most or all responsive documents are privileged, ordered the United States to produce a privilege log.

The Court should affirm. The Magistrate Judge simply ordered what is standard practice when it comes to privilege claims – the party asserting the privilege must provide a log so that the other party (and the court) can independently assess the applicability of the claimed privileges.[2] To be clear, Maine DOE is <u>not</u> seeking privileged documents, but is seeking the opportunity to determine whether there is a basis for the United States' apparent (and implausible) argument that every single responsive document is privileged.

### **Factual Background**

On Friday, February 21, 2025, President Trump addressed a group of governors, including Governor Mills, at a meeting of the National Governors Association. *See* "Trump administration orders investigation after Gov. Mills publicly defies president over transgender policy," *Portland*

---

[1] Maine DOE also requested the agencies' investigation manuals and, through interrogatories, the identities of the persons who assisted in the investigations. Doc. Req. Nos. 22-23; Interrog. Nos. 15-16. ECF No. 23, Ex. Nos. 1 and 2. Over the United States' objections, the Magistrate Judge ordered the United States to produce the manuals and answer the interrogatories. Order, 2-3, 6-7 (ECF No. 64). It appears that the United States does not object to these aspects of the Magistrate Judge's order.

[2] Pursuant to the United States' instructions in its document requests, Maine DOE provided a privilege log when it produced its documents.

*Press Herald* (Feb. 21, 2025). [3] President Trump asked Governor Mills whether she was going to comply with his Executive Order addressing the participation of transgender athletes in school sports.[4] Governor Mills responded: "I'm complying with state and federal law." *Id*. President Trump responded: "Well, we are the federal law. You'd better do it. You'd better do it, because you're not going to get any federal funding at all if you don't." *Id*. Governor Mills responded: "See you in court." *Id*. [5] Subsequently, President Trump said that he "need[s] a full throated apology from the Governor herself, and a statement that she will never make such an unlawful challenge to the Federal Government again, before this case can be settled."[6]

Just hours after the exchange between Governor Mills and President Trump – February 21, 2025 – both the United States Department of Education's Office for Civil Rights ("USDOE OCR") and the United States Department of Health and Human Services' Office of Civil Rights ("HHS OCR") announced that they were initiating investigations into Maine DOE's alleged violation of Title IX. ECF Nos. 16-1 and 16-4. It is difficult to imagine that this timing was coincidental – it is far more likely that both agencies received communications directing or requesting that they investigate Maine DOE. And these investigations appear to be shams. HHS OCR completed its "investigation" in just four days, ECF No. 16-5, while USDOE OCR took less than a month, ECF No. 16-2. On information and belief, neither agency conducted interviews of or obtained information from Maine DOE, any school district, or the Maine Principal's Association.

---

[3] https://www.pressherald.com/2025/02/21/trump-threatens-to-cut-federal-funding-to-maine-over-transgender-athlete-policy/
[4] *See* Executive Order 14201, entitled "Keeping Men Out of Women's Sports," https://www.whitehouse.gov/presidential-actions/2025/02/keeping-men-out-of-womens-sports
[5] It is simply not true that Governor Mills "publicly admitted that Maine was violating Title IX . . . and steadfastly confirmed that Maine intended to continue to violate Title IX." Obj., 1.
[6] https://thehill.com/homenews/lgbtq/5208797-donald-trump-maine-governor-transgender-sports-policy.

And there is more evidence of a bad faith motive. On February 25, 2025, Attorney General Bondi sent Governor Mills a letter taking issue with the Governor allegedly stating that President Trump was "acting like 'a dictator'" and claiming, without citing any legal support, that Title IX prohibits transgender girls from participating in girls' sports and threatening legal action against Maine. ECF No. 16-8.

On February 27, 2025, the Acting Commissioner of the United States Social Security Administration emailed his staff about Maine's contracts with the SSA.[7] Staff warned him that "[t]erminating the contracts would result in improper payments and potential for identity theft." The Acting Commissioner's response was remarkable: "Please cancel the contracts. While our improper payments will go up, and fraudsters may compromise identities, no money will go from the public trust to a petulant child."[8] The Acting Commissioner later explained that he "was ticked at the governor of Maine for not being real cordial to the president."[9]

On April 2, 2025, the Secretary of Agriculture announced that she was freezing certain school nutrition funding because of Maine's alleged non-compliance with Title IX. ECF No. 16-7. The State promptly sued. In granting the State's motion for a temporary restraining order, Judge Woodcock concluded that the Agriculture Secretary froze the funds "without observance of procedure required by law." *Maine v. United States Dep't of Agric.*, 778 F. Supp. 3d 200, 232 (D. Me. 2025).

## Procedural History

On June 26, 2025, Maine DOE served interrogatories and requests for production on the United States that sought in part information regarding the motives for the two investigations and

---

[7] https://oversightdemocrats.house.gov/news/press-releases/ranking-member-connolly-calls-ssa-acting-commissioner-dudek-resign-after-emails
[8] SSA did cancel the contracts but later reinstated them.
[9] https://www.nytimes.com/2025/03/24/us/politics/frank-bisignano-social-security-upheaval.html.

this lawsuit.  After the United States objected to many of the requests and interrogatories, and did not provide a privilege log, Maine DOE sought relief from the Magistrate Judge.  ECF No. 23. The Magistrate Judge concluded that Document Requests Nos. 1, 2, 4, and 5 (asking for documents about the two agency investigations) all sought relevant documents and were not overbroad. Because the United States had claimed that all responsive documents were privileged, the Magistrate Judge ordered the United States to produce a privilege log so that Maine DOE can assess the privilege claims.  Order, 4-5, 7.  With respect to Document Request No. 7, the Magistrate Judge similarly directed the United States to produce a privilege log.  *Id.*, 5, 7.

The Magistrate Judge also ordered the United States to produce the most recent case processing manuals from USDOE OCR and HHS OCR in response to Request Nos. 22 and 23 and to answer Interrogatory Nos. 15 and 16 (requesting the identifies of the persons who conducted the two agency investigations).  *Id.*, 2-3, 6-7.[10]  The Magistrate Judge held that because Request Nos. 8, 9 and 10 were "either irrelevant or disproportionate to the needs of the case," the United States need not make any further production for these requests.  *Id.*, 7.

## Argument

The United States first argues that it is entitled to a "presumption of regularity and good faith," and that Maine DOE has failed to make a sufficient showing to rebut this presumption such that it is entitled to conduct discovery on whether the United States is acting in bad faith.  Obj., 4-5.  Whatever presumption of good faith may have applied in the past, recent events make it hard to argue that the United States is still entitled to a presumption that its legal actions are brought in good faith. [11]  Indeed, one district court has held that the United States is no longer entitled to this

---

[10] As noted above, it appears that the United Staes is not objecting to these aspects of the order.
[11] *See, e.g.,* "How Trump Is Using the Justice Department to Target His Enemies," *New York Times* (Oct. 17, 2025), https://www.nytimes.com/interactive/2025/10/07/us/politics/trump-enemies-justice-

presumption: "The presumption of regularity that has been previously extended to [the United States] that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds." *United States v. Oregon*, No. 6:25-CV-01666-MTK, 2026 WL 318402, at \*11 (D. Or. Feb. 5, 2026); *see also Fed. Educ. Ass'n v. Trump*, 795 F. Supp. 3d 74, 89-92 (D.D.C. 2025) (noting that "[g]enerations of presidential administrations and public officials have validated [the] underlying premise of the presumption of regularity" and collecting recent cases reflecting "instance after instance of departures from this tradition").[12]

In any event, Maine DOE did present evidence sufficient to overcome any applicable presumption – the United States simply fails to even mention it or try to refute it. The United States does not explain how it is good faith for the SSA's Acting Commissioner to order staff to cancel Maine SSA contracts to punish a "petulant child" who he was "ticked off" at for "not being real cordial to the president," even though he knew that the action would lead to more improper payments and fraud. The United States does not explain how it is good faith for the Secretary of Agriculture to freeze school nutrition funding without, as this Court concluded, following any of the required legal procedures. The United States does not explain how it is good faith for the President to demand a "full throated apology" from the Governor and promise to never

---

department-investigations.html; "Trump's tactics are bending the criminal justice system to his agenda," *Washington Post* (Aug. 6, 2025), https://www.washingtonpost.com/politics/2025/08/06/trump-criminal-justice-judges-political-enemies/; "Fed chair becomes latest target of Trump's weaponized DOJ," National Public Radio (Jan. 13, 2026), https://www.npr.org/2026/01/13/nx-s1-5675980/fed-chair-becomes-latest-target-of-trumps-weaponized-doj; "Justice Department investigating a growing number of Trump political foes," NBC News (Jan. 24, 2026), https://www.nbcnews.com/politics/justice-department/growing-number-trump-political-foes-investigated-justice-department-rcna255049; "Trump Administration Begins Criminal Inquiry Into Minnesota Leaders," New York Times, Jan. 16, 2026, https://www.nytimes.com/2026/01/16/us/politics/tim-walz-jacob-frey-investigation-trump.html.

[12] It is not true, as the United States claims, Obj., 4 n.1, that the order allowing Maine DOE to amend its answer did not address the presumption of regularity. ECF No. 58, 6-7 ("As for the presumption of regularity, the presumption 'is an analytic tool, not an excuse to rubberstamp any and all executive action as lawful absent clear evidence to the contrary.'") (quoting *Walker v. Bellnier*, 146 F.4th 228, 255 n.48 (2d Cir. 2025)).

"unlawful[ly] challenge the Federal Government" again before a dispute could be resolved. *See President & Fellows of Harvard Coll. v. United States Dep't of Homeland Sec.*, 788 F. Supp. 3d 182, 205 (D. Mass. 2025) (declining to apply presumption to conduct that is "so unusual and therefore irregular on its face").

The only evidence of good or bad faith the United States does address is the supposed independent decisions of both USDOE OCR and HHS OCR to open investigations into Maine DOE within hours of the confrontation between the Governor and the President. According to the United States, it is "unsurprising" that the two agencies immediately opened investigations because the Governor had "publicly confirm[ed] that Maine was violating and will continue to violate Title IX." Obj., 2. Of course, the Governor made no such admission. But even if she had, the speed with which the two agencies acted was breathtaking. It is hard to believe that officials at two different agencies independently learned of the Governor's response to the President (which, again, was simply that Maine is complying with state and federal law) and instantly sprang into action on a Friday evening.

With respect to Maine DOE's selective enforcement defense (which is in addition to its ultra vires and Equal Protection/Due process defenses), the United States argues that Maine DOE has not demonstrated that it will be able to establish the necessary elements. A defendant proves selective enforcement by establishing that "(1) they, compared with others similarly situated, were selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Sec. & Exch. Comm'n v. Navellier & Assocs., Inc.*, 108 F.4th 19, 39 (1st Cir. 2024) (cleaned up), *cert. denied*, 145 S. Ct. 2777 (2025).[13] The

---

[13] The First Circuit has recognized that selective enforcement is a defense to a civil enforcement action brought by the United States. *Navellier & Assocs., Inc.*, 108 F.4th at 39.

United States argues that Maine DOE cannot establish that it was singled out because the United States has also filed a Title IX lawsuit against California. Obj., 5-6.[14] But it is simply not the case that to prevail on a selective enforcement defense a defendant must establish that it is the only one that has been targeted. Rather, a defendant must show that it was treated differently than others who are similarly situated. *Navellier & Assoc.*, 108 F.4d at 39.[15] Twenty-three states and the District of Columbia do not ban transgender youth from participating in sports consistent with their gender identity. [16] Yet the United States has sued only two of them. And it started with one of the smallest states and did not sue the most populous state until months later.

Nor is there any merit to the United States' argument that Maine DOE has failed to make a sufficient showing on the second element of selective enforcement – that the action was brought in bad faith or for illegitimate government objectives. Obj. 6-7. As is set forth above, there is ample evidence that this action was brought not for the legitimate objective of enforcing Title IX, but as punishment for Maine's governor "not being real cordial to the president" and then not offering a "full throated" apology. In short, Maine DOE has made more than a sufficient showing to warrant allowing it to at least seek discovery regarding the United States' motives for bringing this action.

Citing to two out-of-circuit district court cases, the United States argues that it should not have to produce a privilege log because Maine DOE's discovery is aimed "seemingly exclusively at obviously privileged information." Obj., 9 (citing *Hall v. Baltimore Police Dep't.*, No. CV 1:24-

---

[14] The United States also points to a lawsuit that Minnesota filed against the United States, Obj., 5-6, but it is impossible to see how the United States being a defendant in a case has anything to do with whether it is engaged in selective enforcement against Maine.

[15] Nor does plaintiff's argument that Maine DOE must show that it alone was selected for an enforcement action make sense. It is hard to believe that the selective enforcement defense prohibits the government from bringing an enforcement action for unlawful motives against one defendant but not from improperly targeting two defendants.

[16] *See* https://williamsinstitute.law.ucla.edu/wp-content/uploads/Trans-Sports-Ban-EO-Feb-2025.pdf, at 6.

1137-RDB, 2025 WL 509130 (D. Md. Feb. 13, 2025); *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1
(D.D.C. 2017)).   In both cases, though, subpoenas were served on law firms that previously
represented parties in the litigation, so there was little question that most responsive documents
would be privileged. [17]   Here, Request Nos. 1, 2, 4, and 5 seek documents relating to the USDOE
OCR and HHS OCR investigations.   There is no reason to think that, unlike with a law firm, most
of the requested documents will be privileged.   For example, a document from a White House
official to one of the agencies requesting that it initiate an investigation would be both highly
relevant and likely not privileged.

Moreover, the United States expressly alleges that this matter came to the Department of
Justice ("DOJ") upon referrals from USDOE OCR and HHS OCR after they completed their
investigations and reported their findings to the DOJ.   Complaint (ECF No. 1), ¶¶ 146, 152.   Maine
DOE should be allowed to obtain information regarding how the agencies reached their
conclusions that were the impetus for this lawsuit.

With respect to Request No. 7, which seeks documents received by the DOJ from other
federal agencies or officials, some responsive documents may well be privileged.   But there is no
reason to think that all responsive documents are privileged.   For example, it is hard to see how a
communication from a non-DOJ official directing DOJ to bring a Title IX enforcement action
against Maine DOE would be privileged.   If the United States claims otherwise with respect to

---

[17] That it was subpoenas on third parties at issue, and not discovery requests on parties, that were at issue
is significant.  *See Hall*, 2025 WL 509130, at *5 ("Where, as here, the discovery dispute concerns a non-
party, courts exercise greater vigilance and scrutiny. Non-party status receives special weight and leads to
an even more demanding and sensitive inquiry than the one governing discovery generally.") (cleaned up).

such a document or any other document it received from another federal agency, Maine DOE should be allowed to independently assess the privilege claim.[18]

Finally, the United States argues that Request No. 7 is overly burdensome because it "seeks communications received by the entire Department of Justice, which currently employs over 100,000 people." Obj., 10 n.3. Presumably, the United States is not trying to suggest to the Court that it would need to ask all 100,000 of these employees whether they have responsive documents. DOJ has more than 40 components, including, for example, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the Drug Enforcement Administration, the Federal Bureau of Investigations, the Federal Bureau of Prisons, and the United States Marshall Service. *See* https://www.justice.gov/careers/our-components. Sixty-four percent of DOJ's employees work for just two components – the Federal Bureau of Prisons and the Federal Bureau of Investigation. https://www.justice.gov/archives/doj/page/file/452126/dl?inline. It is likely that there are only a handful of DOJ employees who would have responsive documents, and the United States can identify probable custodians, just as in any other civil matter.

## Conclusion

In sum, Maine DOE has provided more than sufficient evidence that the United States brought this action in bad faith. It is therefore entitled to conduct discovery on that issue so that it can establish its affirmative defenses. Accordingly, to the extent the United States has documents responsive to the requests at issue, it should either produce them or describe them on a privilege log.

---

[18] The United States' claim that Maine DOE is "intentionally seek[ing] obviously privileged information" is specious. Obj., 9; *see also id*., 3 (claiming that Maine DOE is "purposefully [seeking] large amounts of privileged information"). Maine DOE is seeking only non-privileged documents relating to the United States' real motivation for bringing this action. But without a privilege log, it has no way of assessing what is, and what is not, privileged.

Dated:  February 10, 2026           Respectfully submitted,

AARON M. FREY
Attorney General


/s/ Christopher C. Taub
CHRISTOPHER C. TAUB
Chief Deputy Attorney General
Christopher.C.Taub@maine.gov
SARAH A. FORSTER
Assistant Attorney General
Sarah.Forster@maine.gov
KIMBERLY L. PATWARDHAN
Assistant Attorney General
Kimberly.Patwardhan@maine.gov
Office of the Attorney General
State House Station 6
Augusta, ME 04333
Telephone: (207) 626-8800

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 10th day of February, 2026, I electronically filed the above document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.  To my knowledge, there are no non-registered parties or attorneys participating in this case.

/s/ Christopher C. Taub
CHRISTOPHER C. TAUB
Chief Deputy Attorney General
Six State House Station
Augusta, Maine  04333-0006
Tel.  (207) 626-8800
Christopher.C.Taub@maine.gov