## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

UNITED STATES OF AMERICA,    )
                                       )

          **Plaintiff,**          )

                                         )

**v.**                                  )      **No. 1:25-cv-00173-SDN**

                                       )

**MAINE DEPARTMENT OF**     )
**EDUCATION,**                  )

                                       )

          **Defendant.**         )

### ORDER ON MOTIONS TO QUASH

In this case, the federal Government is suing the Maine Department of Education (MDOE) on claims that Maine is violating Title IX by allowing transgender athletes to compete in girls' sports. The Government has served a third-party subpoena on the Maine Principals' Association (MPA), the governing body for interscholastic youth sports in Maine. *See* Subpoena (ECF No. 28-1). The MPA and intervenor Portland Public Schools (PPS) move to quash the subpoena on the grounds that the information sought is irrelevant, disproportionate and burdensome, and protected under the Family Educational Rights and Privacy Act (FERPA). *See* MPA Motion (ECF No. 28); PPS Motion (ECF No. 59).[1] For the reasons that follow, I grant the motions to quash in part and deny them in part.

---

[1] GLBTQ Legal Advocates & Defenders (GLAD) also filed an amicus brief in support of the MPA's motion to quash. *See* ECF No. 41.

## I.  Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering," among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1); *see also FEDEQ DV004, LLC v. City of Portland*, No. 2:21-cv-00327-GZS, 2022 WL 17082083, at *3 (D. Me. Nov. 18, 2022) ("A subpoena served on a third party . . . is subject to the same standards as to relevance and proportionality governing discovery between the parties.").  Along those lines, a court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matters . . . or . . . subjects a person to an undue burden."  Fed. R. Civ. P. 45(d)(3)(A).  An entity "claiming undue burden bears the burden of proving that proposition." *In re W. Me. Acct. Servs., LLC*, No. 2:22-mc-00081-KFW, 2022 WL 2604597, at *1 (D. Me. July 7, 2022).

## II.  Discussion

### A.  Preliminary Matters

I begin my analysis by addressing a few preliminary matters.

First, the MPA asserts that the information the Government seeks in its subpoena is broadly irrelevant because this case turns on a purely legal interpretation of Title IX.  *See* MPA Motion at 4-5.  The Government and the MDOE, however, agreed at oral argument that there may be factual disputes in this case relating to potential damages and the question of whether Maine's policy puts cisgender girls at a competitive disadvantage.  Accordingly, I accept that the

2

information the Government seeks is broadly relevant to its claims.

Second, the MPA asserts that, as a nonparty to this litigation, it is entitled to heightened protections against burdensome discovery requests. *See* MPA Reply (ECF No. 37) at 3; *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."). While I will certainly assess the burdensomeness of the Government's subpoena, I decline to apply heightened protections where the MPA "is not a typical disinterested" third-party given that it is the entity tasked with governing youth interscholastic sports in Maine. *Culliver v. Ctr. for Toxicology & Envt'l Health LLC*, No. 3:22-mc-00006, 2022 WL 475185, at *6 (N.D. Fla. Feb. 16, 2022).

Finally, through the course of briefing and oral argument, the MPA (without any objection by PPS) has agreed to respond to several of the requests for documents in the Government's subpoena, leaving only Requests 4-9, 11, and 18-19 in dispute.[2] I will now address those requests and the parties' arguments in turn.

### B.  Request 4:  Athletic Rosters

In Request 4 of its subpoena, the Government seeks "all interscholastic athletic rosters for schools, including names, school, and grade . . . maintained or received by

---

[2] The MPA also argues that various other requests should be quashed to the extent they seek attorney-client privileged information.  I decline to do so because the Government's subpoena explicitly exempts privileged documents.  *See* ECF No. 28-1 at 11.  And, in any event, the MPA remains free to withhold documents based on a valid privilege even in the absence of a court order.  *See* Fed. R. Civ. P. 45(e)(2).

the MPA from the 2023-2024 and 2024-2025 school years showing student participation disaggregated by sport and sex." Subpoena at 8.

The MPA objects to this request on the basis that it is overbroad because it seeks the production of "rosters containing personally identifiable information of students, many of whom are unrelated to the underlying controversy" and burdensome because "it would require" sorting records "from schools across the entire state." Reply at 4-5. The MPA also notes that it only maintains "post-season tournament rosters." *Id.* at 5. PPS argues that the request must be quashed on the basis that the information sought "plainly constitute[s]" confidential student records. PPS Motion at 2.

While I am unsure exactly what the Government hopes to glean from the rosters, I accept that the rosters are broadly relevant and find that the MPA's and PPS's concerns are overstated. There is nothing sensitive about athletic rosters—indeed, many such rosters are publicly available on the MPA's website right now—and they fall within the directory exception to FERPA. *See* 20 U.S.C. § 1232g(b)(1) ("No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein *other than directory information* . . .) of students without the written consent of their parents . . . . (emphasis added)); *id.* § 1232g(a)(5)(A)(defining "directory information" as "the student's name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height

4

of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended by the student").

The MPA has also failed to show with the requisite level of specificity the "manner and extent of the burden" of complying with the Government's request to produce the rosters, *Strike 3 Holdings, LLC v. Doe*, No. 25-cv-11552-ADB, 2025 WL 2323608, at *1 (D. Mass. Aug. 12, 2025), saying only that doing so would be "resource-intensive, time-consuming," and would "place a significant financial and operational burden" on it, MPA Reply at 4. These vague asseverations do not convince me that it would be unduly burdensome for the MPA to produce whatever rosters it maintains for the relevant time periods, particularly where it is evident from its website that it maintains the rosters in an electronic format.

Because they have not shown an undue burden, the MPA's and PPS's motions to quash are denied with respect to Request 4.

### C. Requests 5-6 and 8-9: Lists of Transgender Student Athletes

In Requests 5-6 and 8-9 of its subpoena, the Government seeks "lists of all known" transgender athletes—or alternatively, information from which such a list could be created—and the results of events in which those athletes participated. Subpoena at 8-9.

The MPA represents that it does not maintain a list of transgender athletes. *See* MPA Reply at 6. It further elaborated at oral argument that the only records it possesses relate to individual requests by transgender athletes to participate in sports aligning with their gender identities prior to the 2022 policy change allowing

such participation as a matter of course.  Those records, according to the MPA, consist of highly personal biographical details and sensitive healthcare records that it used to assess transgender athletes' particular circumstances.

While I accept that these individual records might have some relevance to the Government's claims, I find that the MPA and PPS have shown that the burden of producing such sensitive records outweighs any likely benefit.  *See, e.g.*, *Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 562 (S.D.N.Y. 1996) (noting that a court's power to limit discovery under Rule 26(b)(2) "may be employed where the burden is not measured in the time or expense required to respond to requested discovery[] but lies instead in the adverse consequences of the disclosure of sensitive . . . material").  Indeed, the Government itself disclaimed any interest in healthcare records at oral argument, and, even if some of the records in question are not explicitly healthcare records, there is good reason to be cautious in requiring the disclosure of the names of individual transgender athletes and their personal details where, as other courts have recognized, this "Administration has been explicit about its disapproval of the transgender community."  *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 239 (D. Mass. 2025), *appeal docketed*, No. 26-1093 (1st Cir. Jan. 30, 2026).  Moreover, other less sensitive information (as discussed below) is available to the Government to explore the issue of competitive advantages.

Accordingly, the MPA's and PPS's motions to quash are granted as to Requests 5-6 and 8-9.

### D.  Request 7: Results for Specific Student Athletes

In Request 7 of its subpoena, the Government seeks "documents showing the results of athletic events, including any ranking statistics," for three specific student athletes.  Subpoena at 9.  The MPA responds that the "[i]nformation responsive to this request is maintained by a third party and is publicly available to the" Government.  *See* MPA Reply at 6.  PPS, for its part, maintains the information sought is confidential.  *See* PPS Motion at 2.

Given that the MPA is only obligated to produce information it actually possesses, I find no basis to quash the subpoena in its representation that the information is maintained by a third party.  Similarly, the fact that the information may be available publicly does not moot the Government's request.  *See Whale Capital, L.P. v. Ridgeway*, No. 22-2570, 2023 WL 7220560, at *7 (E.D. La. Nov. 2, 2023)  ("The mere fact that responsive information is publicly available does not prevent its discovery. . . . Absent a proportionality objection, . . . a responding party must produce even publicly available information that it has in its actual or constructive possession, custody or control.").

With regard to PPS's concerns about confidentiality, athletic results fall within the directory information exception to FERPA as discussed above.  *See* 20 U.S.C. § 1232g(b)(1), (a)(5)(A).  Moreover, the results are concededly already public information.  And, were that not enough, the Government has agreed not to publicly identify any students in its filings in this case.

7

For these reasons, the MPA's and PPS's motions to quash are denied as to Request 7.

### E.  Request 11: Meeting Minutes & Transcripts

In Request 11 of its subpoena, the Government seeks "all meeting minutes and any transcripts or recordings for the MPA's Gender Identity Equity Committee." Subpoena at 9.  The MPA represented at oral argument that no such committee ever existed, and that the meetings in question related to the same pre-2022 requests by individual transgender athletes discussed above.  That being the case, for the same reasons outlined above, I find that the MPA and PPS have met their burden to show that the production of these meeting minutes, which presumably discuss the same sensitive information, outweighs any likely benefit.  As such, the MPA's and PPS's motions to quash are granted as to Request 11.

### F.  Requests 18-19: Communications About Transgender Athletes

In Requests 18-19 of its subpoena, the Government seeks "all complaints, concerns, praise, or reports received by the MPA from school districts, parents, students, educators, or community members regarding transgender student participation in sex-segregated sports or use of sex-specific athletic facilities," as well as the MPA's responses to those communications.  Subpoena at 10.

There is no real dispute that such communications are relevant to the Government's claims.  But the MPA raises concerns about the sensitivity of the information, and PPS likewise raises FERPA-related privacy concerns.  *See* MPA Reply at 4, 9; PPS Motion at 2.  The MPA also argues that responding to this request

would be unduly burdensome and require it to produce "thousands" of communications.  MPA Reply at 9.

To assuage the MPA's and PPS's legitimate privacy concerns (as discussed in more detail above), I will modify the Government's subpoena to require the production of these documents redacted of any personally identifying information (names and identifying details of students, parents, staff, volunteers, teams, schools, etc.).  *See, e.g., Wright v. Capella Educ. Co.*, No. 18-cv-1062 (WMW/ECW), 2020 WL 6285220, at *14 (D. Minn. Oct. 27, 2020) (holding that "the redaction of the personal identifying information from" the documents at issue "would eliminate . . . FERPA concerns").[3]  At oral argument, the Government explained that it needs this information to explore the extent of the MDOE's and the MPA's awareness of concerns about safety and competitive advantage in girls' sports, which it can still do without sensitive personally identifying information.

With regard to the MPA's burdensomeness argument, it has, once again, not carried its burden to show with specificity that responding to this request would be unduly burdensome.  It should be relatively easy to retrieve responsive communications with some well-tailored electronic search terms, and the time and effort required to redact an unspecified number of "thousands" of communications is not so extraordinary as to convince me that it would be unfair to require the MPA to

---

[3] I am merely citing this case in response to PPS's FERPA concerns.  To be clear, I find redaction appropriate based on more general privacy concerns.  Accordingly, I need not resolve whether FERPA permits the release of this information to the Government, as it argues.

do so, considering its role in the underlying controversy and the Government's need for the information.

Accordingly, the Government's Requests 18-19 are modified to require production of the communications redacted of any personally identifiable information. With those modifications, the MPA's and PPS's motions to quash are denied as to Requests 18-19.

## III. Conclusion

For the foregoing reasons, the MPA's and PPS's motions to quash the Government's subpoena are **GRANTED IN PART** as to Requests 5-6, 8-9, and 11, and **DENIED IN PART** as to the remaining requests, as modified herein.

**SO ORDERED**.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the District Court and to any further appeal of this order.*

Dated: March 31, 2026

/s/ Karen Frink Wolf
United States Magistrate Judge

10