UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
v.                              )       1:25-cv-00173-SDN
                                )
MAINE DEPARTMENT OF EDUCATION,  )
                                )
            Defendant.          )

## ORDER

This matter comes before the Court on the United States' objection, ECF No. 68, to the Magistrate Judge's Order to Compel Discovery related to investigations conducted by several federal government agencies into the State of Maine's compliance with Title IX and related regulations, ECF No. 64. For the following reasons, the Court **OVERRULES** the United States' objection and **AFFIRMS** the Magistrate Judge's Order in its entirety.

## BACKGROUND

The United States filed the instant action against the Maine Department of Education ("MDOE"), alleging that MDOE violated Title IX by allowing transgender high-school athletes to participate in girls' athletic competitions. ECF No. 1. In response, MDOE asserted several affirmative defenses, including that the Government engaged in selective enforcement of Title IX in bringing this lawsuit. ECF No. 60 at 17.

To support its defense, MDOE sought discovery through interrogatories and document requests concerning investigations conducted by the United States Department of Education's ("USDOE") Office for Civil Rights ("OCR") and the United States Department of Health and Human Services' ("HHS") OCR into the State of Maine's compliance with Title IX. *See* ECF No. 23. After the Government objected to these

1

discovery requests, the Magistrate Judge held a hearing on the discovery dispute. ECF No. 24. The Magistrate Judge then directed the parties to submit briefs addressing the relevance of MDOE's discovery requests. *See* ECF Nos. 27, 38. On January 15, 2026, the Magistrate Judge issued an Order granting in part and denying in part MDOE's discovery requests. ECF No. 64. Specifically, the Magistrate Judge determined that the majority of MDOE's requests are relevant and that the burden on the Government to produce the responsive materials is proportional to the needs of the case. *Id.* at 7.[1]

In its objection, the Government contends the Magistrate Judge erred in granting some of MDOE's discovery requests by failing to consider the presumption of regularity and good faith that applies to the Government's action in bringing this case, which would bar any discovery based on MDOE's selective enforcement defense. ECF No. 68 at 4. The Government further continues to assert that MDOE's discovery requests are either irrelevant or "intentionally seek obviously privileged information." *Id.* at 2. MDOE responds that the requested materials concerning prior federal investigations of the State are relevant to its selective enforcement defense. ECF No. 73 at 1–2. According to MDOE, it has presented sufficient evidence to overcome the presumption that the Government brought this action in good faith by providing examples of alleged misconduct by federal officials acting in bad faith during the preceding federal investigations of the State. *See id.* at 2–4 (detailing multiple statements and actions by federal officials following an exchange between President Trump and Governor Mills regarding Maine's Title IX compliance at a National Governors Association meeting). MDOE further asserts that

---

[1] The Magistrate Judge additionally denied MDOE's document requests 8, 9, and 10, finding them either outside the scope of discovery, or "disproportionate and unduly burdensome" relative to the needs of the case. ECF No. 64 at 5–6.

with respect to the Government's asserted privileges, the Magistrate Judge's Order merely requires adherence to standard discovery procedures. *Id.* at 2. Specifically, MDOE points to the Magistrate Judge's order for the Government to produce a privilege log identifying the withheld documents so that MDOE and the Court may evaluate the validity of any asserted privileges. *Id.*

## DISCUSSION

When reviewing non-dispositive discovery orders issued by a Magistrate Judge, the District Court must "consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). In conducting this deferential review, the Court will "accept both the [Magistrate Judge's] findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record," the District Judge forms "a strong, unyielding belief that a mistake has been made." *Gladu v. Magnusson*, No. 22-cv-00134, 2025 WL 1736716, at *1 (D. Me. June 23, 2025) (quoting *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999) (alteration in original)). Unlike findings of fact, District Judges must consider pure questions of law de novo. *See PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14–15 (1st Cir. 2010).

MDOE argues the requested discovery is relevant and necessary in part because of its selective enforcement defense. To prevail on a claim of selective enforcement, a defendant must establish that "(1) they, compared with others similarly situated, were selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Sec. & Exch. Comm'n v. Navellier & Assocs., Inc.*, 108 F.4th 19, 39 (1st Cir. 2024), *cert. denied*, 145 S. Ct. 2777 (2025) (quotation modified). In determining whether unrelated entities are

3

"similarly situated" for the purposes of enforcement, the Court considers "whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." *Mulero-Carrillo v. Román-Hernández*, 790 F.3d 99, 106 (1st Cir. 2015) (quoting *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 8 (1st Cir. 2001)).

In the analogous selective prosecution context,[2] a defendant must present at least "some evidence" demonstrating selective prosecution to be entitled to discovery on a selective prosecution claim or defense. *See United States v. Armstrong*, 517 U.S. 456, 468–69 (1996); *United States v. Lewis*, 517 F.3d 20, 25 (1st Cir. 2008). While the First Circuit has not yet ruled on this precise question, *see United States v. Yu*, 161 F.4th 25, 33 (1st Cir. 2025) (affirming on other grounds but noting without challenge that the district court had "reasoned that selective enforcement claims do not have as high an evidentiary burden as selective prosecution claims"), several other federal circuit courts have held that a request for discovery based on a selective enforcement claim requires less than the "rigorous standard" used in analogous selective prosecution claims. *See, e.g.*, *Conley v. United States*, 5 F.4th 781, 791 (7th Cir. 2021) ("We therefore see no persuasive reason to extend *Armstrong*'s heightened [discovery] standard to selective-enforcement claims."); *United States v. Washington*, 869 F.3d 193, 220 (3d Cir. 2017) ("Accordingly, motions for discovery seeking information on putative claims of unconstitutional selective enforcement are not governed by strict application of the *Armstrong*[] framework."); *United States v. Sellers*, 906 F.3d 848, 854 (9th Cir. 2018).

---

[2] Although arising in different procedural contexts, the First Circuit has previously recognized the "significant overlap between selective enforcement and selective prosecution." *United States v. Yu*, 161 F.4th 25, 38 (1st Cir. 2025); *see id.* at 43 (applying a similar standard of review for denial of motion to dismiss for selective enforcement and for selective prosecution).

In any event, the Court finds that even under the *Armstrong* framework, MDOE has made a "credible showing" of at least "some evidence" tending to show the existence of the essential elements of selective enforcement. *Armstrong*, 517 U.S. at 468, 470. Regarding the existence of other, "similarly situated" entities, there is sufficient evidence to establish that Maine is similarly situated to many other states regarding transgender student participation in high school athletics yet was specifically targeted for enforcement alongside only two other states—Minnesota and California. *See* ECF No. 73 at 8 ("Twenty-three states and the District of Columbia do not ban transgender youth from participating in sports consistent with their gender identity.").

Regarding the second element of MDOE's selective enforcement claim, the Court similarly finds there is sufficient evidence to support a finding of bad faith on the part of the Government. MDOE has provided ample evidence to indicate the Government's motivation in bringing the instant action was, at least in part, rooted in retaliation for Governor Mills' comments to President Trump during a February 21, 2025, meeting of the National Governors Association ("NGA") at the White House. *See* ECF Nos. 16-1, 16-4 (both USDOE and HHS Offices for Civil Rights initiated investigations into MDOE on the same day as the exchange between Governor Mills and President Trump); ECF No. 16-7 (United States Secretary of Agriculture Rollins' letter to Governor Mills, announcing she would freeze funding to Maine public schools based on alleged noncompliance with Title IX and stating the Governor's "defiance of federal law has cost [her] state"); ECF No. 16-8 (former United States Attorney General Bondi's letter to Governor Mills in response to comments at NGA meeting, stating "Maine should be on notice"). Indeed, the Government references the same exchange in the opening paragraphs of its Complaint, stating that, based on defiant statements from Maine's leadership, the Government

5

"accordingly files this action to stop Maine's unapologetic sex-discrimination against female student athletes." ECF No. 1 at 2. As such, the Court finds at this juncture there is sufficient evidence to overcome any presumption of good faith. Whether or not MDOE ultimately can prove its selective enforcement defense remains to be seen; but it is entitled to its requested discovery on the matter.

Turning to the remainder of the Magistrate Judge's Order, the Court finds the Government has failed to demonstrate that any part of the Order compelling discovery is clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a). Giving due deference to the Magistrate Judge's findings of fact and conclusions, the Court affirms each of her rulings on the relevancy and proportionality of the discovery sought by MDOE. Given the preceding discussion of MDOE's selective enforcement defense, the discovery requests for information pertaining to federal investigations into the State prior to the filing of the instant lawsuit is relevant to any retaliatory or bad faith motive on the part of the Government. For discovery requests 1, 2, 4, 5, and 7, the Magistrate Judge also directed the Government to produce privilege logs in accordance with Federal Rule of Civil Procedure 26(b)(5)(A) "for the MDOE to review and determine whether it may challenge any withheld documents." ECF No. 64 at 5. The Court rejects the Government's contention that this requirement is "unduly burdensome and disproportionate," ECF No. 68 at 9, and notes that parties asserting privilege in response to discovery requests customarily are required to provide a detailed privilege log to support those claims. The Government may assert any privilege recognized and supported by law but must first supply adequate information to allow MDOE—and the Court—to evaluate the basis for any claimed privilege.

## CONCLUSION

For the foregoing reasons, the Government's Objection to the Magistrate Judge's

Order compelling discovery, ECF No. 68, is **OVERRULED** and the Magistrate Judge's

Order, ECF No. 64, is **AFFIRMED** and **ADOPTED** in its entirety.

**SO ORDERED.**

Dated this 8th day of April, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**