**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| |
|---|
| UNITED STATES OF AMERICA, |
| Plaintiff, |
| v. |
| MAINE DEPARTMENT OF EDUCATION, |
| Defendant. |

Case No. 1:25cv00173-SDN

**UNITED STATES' OBJECTION TO ORDER**
**ON MOTIONS TO QUASH MPA SUBPOENA**

Pursuant to Rule 72(a), the United States submits this Objection to the magistrate's Order partially quashing the United States' Subpoena to the Maine Principals' Association ("MPA"), ECF No. 83 ("Quash Order"). The MPA is tasked with administering interscholastic sports in Maine, and accordingly naturally controls and possesses much of the highly relevant evidence for this case. The Quash Order denied the United States much of the relevant evidence it subpoenaed from the MPA because it deemed the information "sensitive," and found that sensitivity outweighed any likely benefit of the evidence.

This Court should find that the Quash Order clearly errored because it: (1) denied the United States proportional and highly relevant evidence to prove a denial of equal athletic opportunities, to show male athletic advantage, and to prove damages; and (2) ignored the Confidentiality Order that already appropriately accounts for sensitive information in this case.

**I.    BACKGROUND**

Generally, the Quash Order denied the production of records of individual athletes, and names of athletes, parents, and others with relevant information, because it deemed that evidence

"sensitive." *See, e.g.*, Quash Order at 6, 9.  The Order found that sensitivity outweighed any likely benefit of the evidence.  *Id.*

The Quash Order did use the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, as its basis or find that FERPA made the subpoenaed records privileged or protected against their disclosure here.  *See* Quash Order at 4 & 7 (finding athletic rosters and results fall within director information exception to FERPA), 9. n.3 (finding redaction appropriate based on more general privacy concerns and not based on FERPA).[1]  Rather the Quash Order relied on its determination that the records were sensitive.

The Quash Order also did not apply or even acknowledge the Confidentiality Order, ECF No. 43.  That Confidentiality Order already considers and appropriately accounts for sensitive information; indeed that seemingly is the Order's major purpose.  The Court's Confidentiality Order specifically orders that information designated confidential, including "sensitive personal information," "must not be used or disclosed by a receiving party for any purpose other than to conduct this litigation."  Confidentiality Order at ¶¶ 3 & 9.  That designated confidential information may not be disclosed to the media, general public, or others uninvolved in this litigation and may be filed under seal.  *Id.* ¶¶ 10 & 13.  Despite this, the Quash Order does not apply or acknowledge the Confidentiality Order.

## II.    STANDARD Of REVIEW

For non-dispositive discovery orders issued by a magistrate, the district judge should "consider timely objections and modify or set aside any part of the order that is clearly erroneous

---

[1] As explained in the United States' briefs, FERPA does not apply to the United States subpoena to the MPA.  *See, e.g.*, U.S. Opp'n to Portland Public Schools Motion to Quash, ECF No. 63.The United States

or is contrary to law."  Fed. R. Civ. P. 72(a); *see also Gladu v. Magnusson*, No. 1:22-CV-00134-SDN, 2025 WL 1736716, at *1 (D. Me. June 23, 2025).

### III.    ARGUMENT

#### A.  REQUESTS 18-19:  COMMUNICATIONS ABOUT TRANSGENDER ATHLETES

Requests 18 and 19 seek evidence regarding proof that Defendant, through the MPA, is violating Title IX by not providing equal athletic opportunities.  These Requests also seek evidence of damages for the Complaint's Count II---the breach of contract claim.  The Quash Order requires the redaction of names of individuals and similar personal identifying information, which blocks the United States from effectively using the requested documents.

Request 18 seeks "all complaints, concerns, praise, or reports received by the MPA from school districts, parents, students, educators, or community members regarding transgender student participation in sex-segregated sports or use of sex-specific athletic facilities."   Request 19 seeks the MPA's responses to those communications.  Subpoena at 10, ECF No. 28-1.

These Requests are highly relevant to proving a violation of the Title IX regulation that requires that educational programs shall "provide equal athletic opportunity for members of both sexes," including "the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes."  34 CFR § 106.41(c).  These communications and the MPA's responses go directly to whether the MPA is "effectively  accommodate[ing] the interests and abilities of members of both sexes."

The Quash Order allows for production but requires redaction "of any personally identifying information (names and identifying details of students, parents, staff, volunteers, teams, schools, etc.)."  Quash Order at 9.  The Order justifies this not based on FERPA, but "on more general privacy concerns."  *Id.* at 9 n.3; *see also id.* at 6 ("[T]the MPA and PPS have shown that the burden of producing such sensitive records outweighs any likely benefit.").  The Quash

Order does not explain why the MPA can be trusted with this "sensitive" information but the United States cannot, especially in light of the Confidentiality Order.

The Quash Order's redactions of the personally identifying information robs the information of much of its effective use. With everything redacted, the United States will not be able match any MPA response with the student's or parent's complaint or praise. The United States will not be able to determine which students or parents submitted multiple complaints or praise, or the MPA's response to that repetition. The redactions even coverup "teams" and "schools," which similarly blocks the United States from determining which teams or schools have multiple complaints/praise and the MPA's response to that cluster.[2]

The redactions also prevent the United States from identifying potential trial witnesses for this jury trial, such as parents who could testify about students' interests, the harm caused, and the MPA's failure to accommodate their complaints about the harm.

Beyond the equal athletic opportunity regulation violation, the redactions more generally prevent the United States from using the documents to identify athletes that have competed in sports designated for the opposite sex. As explained more below for Requests 5-6 and 8-9, the MPA has disavowed knowledge of such athletes, *see* Quash Order at 5, and this evidence is highly relevant to showing male athletic advantage, as well as highly relevant to proving the extent of damages for the breach of contract claim.

**B.  REQUESTS 5-6 AND 8-9:  LISTS OF ATHLETES COMPETING IN OPPOSITE SEX SPORTS**

The Quash Order denied the United States evidence of athletes participating in sports designated for the opposite sex---which is the central focus of this Title IX case. This evidence is

---

[2]  The United States notes that Defendant Maine Department of Education did not redact the names of complaining parents in its response to communications the United States requested, but rather designated them as confidential under the Confidentiality Order.

4

proportional and highly relevant to help show male athletic advantage, as well as highly relevant to proving the extent of damages for the breach of contract claim.

Request 5 seeks a "list of all known male student athletes who competed in any MPA athletic competition designated for females," or if no comprehensive list exists, documents with the information to enable the creation of such list. Subp. at 8. Request 6 requests the results of the competitions for male athletes identified in Request 5. *Id.* Similarly, Request 8 seeks a "list of all known female student athletes who competed in any MPA athletic competition for males," or documents with the information to enable the creation of such list. *Id.* at 9. And Request 9 requests the results of the competitions for female athletes identified in Request 8. *Id.*

The Quash Order acknowledged the possible relevance of these Requests, but found that the record's sensitivity outweighed any likely benefit. Quash Order at 6. As noted above, the Quash Order does not claim these are privileged records or that FERPA protects them. The Quash Order does not explain why the MPA can be trusted with this "sensitive" information but the United States cannot, especially in light of the Confidentiality Order. *Cf.* Quash Order at 7 (justifying, in part, production for a similar Request 7 for athletic results because the United States "has agreed not to publicly identify any students in its filing in this case")

These records are proportional and highly relevant to the United States illustrating male competitive advantage; they may likely show males dominating in sports designated for females, and females not having any effect on sports designated for males. These records are also relevant to the United States' breach of contract claim, as evidence of when and how much these athletes were competing goes to the timing and potentially the extent of the breach.

### C. REQUEST 11: MEETING MINUTES AND TRANSCRIPTS

Request 11 seeks "all meeting minutes and any transcripts or recordings of meetings for the MPA's Gender Identity Equity Committee." Like the Requests discussed above, the Quash

Order quashes production because the sensitivity of these records outweighed any likely benefit. Quash Order at 8.  This Court should overrule this finding and order that the MPA produce the highly relevant evidence that identifies students participating on opposite sex sports as well as admissions regarding unfair male athletic advantage.

From at least 2018-2024, the MPA's Handbooks specifically reference a "Gender Identity Equity Committee," which among other things, was tasked with evaluating a student's request to participate in an opposite sex sport.  The Committee made that evaluation based on, among other things, a "list of the athletic activities that student seeks to participate in" and "[d]ocumentation describing the student-athlete's prior athletic participation, either during or prior to high school, including relevant statistics related to the student's prior athletic performances."  MPA 2018-2019 Handbook § 12 (at pp. 19-20); *accord* MPA 2023-2024 Handbook § 12 (at pp. 23-25).  This same "Transgender Student Athlete Participation" policy notes the preference for transgender student participation "unless such participation would result in an unfair athletic advantage or would present an unacceptable risk of injury to other student athletes."  *Id.*[3]

Given this, information from the Gender Identity Equity Committee will greatly help identify past and possibly present students competing in sports designated for the opposite sex, which the MPA claims to not know.  And for comparison, the records will identify that student's "prior athletic performance" statistics when the student competed in sports that alleged with their sex.  Moreover, given the Gender Identity Equity Committee evaluation task noted above, responsive documents could contain admissions or other statements concerning "unfair athletic advantage" or "unacceptable risk of injury."

---

[3] The MPA 2023-2024 Handbook had retitled this policy to the "Gender Equity and Inclusion Policy."

Additionally, this Gender Identity Equity Committee could have discussed or have other documents concerning the reasons why the MPA changed its Transgender Student Athlete Participation policy multiple times.

As above, this evidence is proportional and highly relevant to the United States illustrating male athletic advantages as well as damages for the breach of contract claim. The Quash Order does not explain why the MPA can be trusted with this "sensitive" information but the United States cannot, especially in light of the Confidentiality Order.

The Quash Order seemed concerned with potential healthcare information. But the United States should not be completely blocked from obtaining any information from the Gender Identity Equity Committee just because it may have some healthcare related information. As the Quash Order acknowledged, the United States is not seeking or interested in medical or similar healthcare related information. Quash Order at 6 ("Indeed, the Government itself disclaimed any interest in healthcare records at oral argument,"). As far as the United States is concerned, the MPA can redact or withhold any such healthcare related information. And with that redaction, this Court should order the MPA to produce the highly relevant parts concerning athletic participation, athletic statistics, and male athletic advantages.

-   -   -

Overall for all the Requests, if the Quash Order's denial of this evidence stands, the Defendant should be prohibited from arguing to this Court or urging to any jury that this evidence is necessary or relevant to, or absent from, the United States' case and claims.

## IV.    CONCLUSION

This Court should overrule the portions of Quash Order that granted in part the quashing of the United States' subpoena to the MPA.

Respectfully submitted,


 /s/ Matthew J. Donnelly
MATTHEW J. DONNELLY
Attorney
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C.  20530
Telephone: (202) 616-2788
Email: matthew.donnelly3@usdoj.gov


Dated:  April 14, 2026