**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CASE NO. 1:25-cv-00173-SDN |
| MAINE DEPARTMENT OF EDUCATION, | |
| Defendant. | |

**MAINE PRINCIPALS' ASSOCIATION'S REPLY TO PLAINTIFF'S**
**OBJECTION TO ORDER ON MOTIONS TO QUASH SUBPOENA FOR**
**INSPECTION WITH INCORPORATED MEMORANDUM OF LAW**

NOW COMES the Maine Principals' Association ("MPA"), by and through undersigned counsel, and hereby replies to Plaintiff's Objection to the Court's Order on motions filed to quash the subpoena served on it by counsel for the United States of America ("United States" or the "Plaintiff"), the subpoenaing party, as follows.

## I.    INTRODUCTION

Without waiving any prior objections, MPA was ordered to produce documents responsive to Requests 1–4, 10, 12–17, and 20–23. Plaintiff now challenges the Court's Order on the remaining requests in dispute—Requests 5–9, 11, and 18–19, arguing that the Court improperly denied Plaintiff access to relevant and proportional evidence, and failed to account for the existing Confidentiality Order governing sensitive information in this case. Plaintiff's objections lack merit, and as the Court correctly held, and MPA reiterates, the disputed requests are unduly burdensome, overbroad, disproportionate to the needs of the case, and seek information of limited or no relevance. The requests also implicate significant privacy concerns, including the disclosure of personally identifying information ("PII") that could harm the affected individuals, and in some

1

instances, seek materials that do not exist. Furthermore, Plaintiff has not met its burden under Rule 72(a) to show that the Court's order is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). To the contrary, with respect to the Requests that are currently being challenged by Plaintiff, the Order reflects an appropriate balancing of relevance, proportionality, burden, and privacy interests, particularly given MPA's status as a nonparty.

## II.     STANDARD OF REVIEW

Under Fed. R. Civ. P. 72(a), a district court reviews a magistrate judge's order on a non-dispositive matter under a highly deferential standard. The order must be affirmed unless it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). A finding is clearly erroneous only where the reviewing court is left with a definite and firm conviction that a mistake has been mad, and legal conclusions may be disturbed only if the magistrate judge misapplied or failed to apply governing law. *See Woods Hole Oceanographic Inst. v. ATS Specialized, Inc*., 557 F. Supp. 3d 261, 272 (D. Mass. 2021) (citing *Green v. Cosby*, 160 F. Supp. 3d 431, 433 (D. Mass. 2016)) *see also Harvard Pilgrim Health Care of New England v. Thompson,* 318 F. Supp. 2d 1, 6 (D.R.I. 2004).

Discovery is governed by Rule 26(b)(1), which limits discovery to nonprivileged matter that is relevant and proportional to the needs of the case, considering whether the burden or expense outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Rule 45 further requires courts to quash or modify subpoenas that impose an undue burden or require disclosure of protected matter. Fed. R. Civ. P. 45(d)(3)(A). Because discovery rulings fall squarely within a magistrate judge's broad discretion, mere disagreement with the outcome, or attempts to relitigate previously rejected arguments, does not justify reversal.

### III.    ARGUMENT

A.    The United States Fails to Demonstrate That the Order is Clearly Erroneous or Contrary to Law Pursuant to Fed. R. Civ. P. 72(a).

Plaintiff bears the burden of demonstrating that the Court's Order meets the high standard of Rule 72(a), but it has failed to do so. Rather than identifying any clear factual error or misapplication of law, Plaintiff largely reasserts arguments the Court already considered and rejected, and further mischaracterizes the role of the Confidentiality Order. Disagreement with the Court's weighing of relevance and proportionality does not constitute legal error under Fed. R. Civ. P. 72(a). The Court's rulings as to Requests 5–9, 11, and 18–19 were well within its discretion and grounded in established discovery principles.

B.    The Court Properly Balanced Relevance, Burden, and Privacy Concerns.

The Court acknowledged in its Order that the information requested by Plaintiff may be "broadly relevant," particularly with respect to damages, but correctly recognized that relevance alone does not justify production. Order, at 2–3. Courts evaluating third-party subpoenas must balance: (1) relevance, (2) need, (3) confidentiality of requested materials, and (4) harm that compliance would cause the subpoenaed nonparty. *See In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Penn. 2014). Here, the Court applied that framework and reasonably concluded that the limited probative value of the disputed requests did not outweigh the substantial burdens and privacy concerns, particularly given the MPA's non-party status.

*1.    Plaintiff's Requests 5–6 and 8–9 Are Overbroad, Disproportional, Burdensome, and Intrusive.*

Requests 5 and 6 seek lists of transgender athletes, along with performance data, while Requests 8 and 9 seek information sufficient to create such lists. Without waiving its prior objections, MPA asserts that the Court correctly considered its representation that no such

3

centralized lists exist, and that any responsive information would have to be extracted from records containing "highly personal biographical details and sensitive healthcare records." Order, at 6. The Court properly found that, although such information may have "some relevance," the burden and risk associated with producing it outweigh any likely benefit.

Importantly, "burden" includes not only time and expense, but also the risk of harm from disclosure of sensitive information. *See Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 562 (S.D.N.Y. 1996). In evaluating such discovery demands, courts must balance the requesting party's need for the information against the privacy interests at stake, particularly where disclosure risks concrete harm. As recognized in *Gardner v. Cape Cod Healthcare, Inc.*, 344 F.R.D. 127, 133 (D. Mass. 2023) and *Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 562 (S.D.N.Y. 1996), the potential for adverse consequences flowing from disclosure constitutes a cognizable and weighted burden in that analysis.

Here, the Court reasonably determined that the minimal evidentiary value of the requested information is substantially outweighed by the burden and privacy concerns associated with producing it, particularly where disclosure could expose individuals to stigma or other adverse consequences. The Court also recognized the broader context in which disclosure would occur, emphasizing the heightened risks associated with identifying transgender individuals, particularly where the current administration has taken public positions reflecting opposition to policies supporting transgender individuals. Order, at 6 (citing *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 239 (D. Mass. 2025), *appeal docketed*, No. 26-1093 (1st Cir. Jan. 30, 2026)); *see also* Nicolas A. Suarez et al., *Disparities in School Connectedness, Unstable Housing, Experiences of Violence, Mental Health and Suicidal Thoughts and Behaviors Among Transgender and Cisgender High School Students—Youth Risk Behavior Survey, United States,*

*2023*, at 50, Centers for Disease Control & Prevention (Oct. 10, 2024). These risks further support limiting discovery as numerous courts have recognized the strong privacy interest a person has in their transgender status. *See Hersom v. Crouch*, No. 2:21-cv-00450, 2022 WL 908503, at –2 (S.D. W.Va. Mar. 28, 2022); *Kadel v. Folwell*, 620 F. Supp. 3d 339, 391 (M.D.N.C. 2022); *Doe v. Genesis HealthCare*, 535 F. Supp. 3d 335, 339 (E.D. Pa. 2021).

Furthermore, Plaintiff is not without alternatives, as it has access to less intrusive evidence, including competition results already ordered to be produced under Request 4 over MPA's objections, and it expressly disclaimed any need for healthcare records at oral argument. Order, at 6. These alternatives further weaken any claim that the disputed discovery is necessary.

Plaintiff also argues that the denial of Requests 5–6 and 8–9 deprives it of information that is central to its case under Title IX. However, this argument mischaracterizes the Court's analysis. The Court expressly considered the limited factual issues presented in the present case. While recognizing that the core dispute is primarily legal, the Court acknowledged that certain factual matters, particularly those bearing on damages, could be relevant and, accepted that some discovery sought by Plaintiff was broadly relevant. Order, at 2–3. The Court did not disregard those considerations, but rather it incorporated them into its analysis and allowed targeted discovery where it deemed appropriate. At the same time, the Court reasonably concluded that the value of the additional information sought by Plaintiff in Requests 5–6 and 8–9 was outweighed by the significant burdens and privacy concerns their production would entail. This determination therefore reflects a proper, balanced application of Rule 26(b)(1), not a failure to consider the factual record. Therefore, the Court properly denied Plaintiff's Requests 5–6 and 8–9.

2. *Plaintiff's Request 11 Seeks Nonexistent Information and the Court Properly Weighed Relevance and Privacy Concerns.*

Without waiving MPA's prior objections, the Court properly denied the United States'

Request 11, which sought meeting minutes, transcripts, and other materials from a purported "Gender Identity Equity Committee." As the MPA has asserted, no such formal committee exists or has existed. A party cannot compel production of documents based on incorrect factual assumptions. Even setting that aside, the Court properly determined that any responsive materials would implicate the same privacy concerns and burdens already addressed by the Court, including but not limited to, confidential health information protected under the Health Insurance Portability and Accountability Act ("HIPAA"); educational records protected by the Family Educational Rights and Privacy Act ("FERPA"); constitutional rights to privacy under the Due Process Clause; and PII such as names, contact information, dates of birth, etc. Speculative relevance does not justify expansive discovery, particularly where the request is untethered to actual records and imposes unnecessary burdens.

### 3. Redaction of PII is Appropriate and Necessary for Requests 18-19.

Over MPA's objections (and without waiver of the same), the Court ordered the production of documents responsive to Requests 18–19, subject to redaction of PII. Without waiving any prior objections, this limitation is both reasonable and necessary. The United States' claim that redactions render the documents unusable is overstated, particularly given its prior representation that it could use the materials without the identifying information. Its reversal only underscores the importance of the Court's safeguards as disclosure of the identities of students, parents, and school communities raises serious privacy concerns independent of FERPA. Allowing disclosure of identities would unnecessarily expose minors and private individuals to potential harm, particularly given the sensitive nature of the subject matter. The First Circuit has also held that the protection of identities and PII is warranted where disclosure may pose a reasonable fear of harm, or where anonymity prevents a chilling effect on similarly situated individuals. *Doe v. Mass. Inst.*

*Of Tech.*, 46 F.4th 61, 71–72 (1st Cir. 2022); *see also Poe v. Drummond*, No. 23, Civ. 177, 2023 WL 4560820, at *5 (N.D. Okla. July 17, 2023) (allowing transgender plaintiffs and their parents to proceed under pseudonyms).  Therefore, the redaction appropriately balances Plaintiff's access to relevant information with the need to protect privacy and does not override independent privacy considerations or constitutional protections.

    C.  <u>The Confidentiality Order Does Not Override Rule 26.</u>

        The United States mischaracterizes the role of the Confidentiality Order, suggesting that its existence mitigates the harms associated with disclosure of sensitive information. However, such orders govern how information is handled after production, but they do not determine whether information is discoverable in the first place. Courts have recognized that confidentiality orders are not a substitute for a proper relevance and proportionality analysis under Rule 26. *In re Philips Recalled CPAP, BI-LEVEL PAP, & Mech. Ventilator Prods., Litig.*, No. 21-MC-1230-JFC, 2023 WL 8771646, at *2, n.4 (W.D. Pa. Nov. 13, 2023) ("The existence of a Protective Order . . . does not obviate the need to adhere to Rule 26(b)(1)'s guideposts of relevance and proportionality."). This principle reflects the fundamental requirement that all discovery must satisfy the threshold requirements of Rule 26(b)(1) before production, regardless of whether confidentiality protections are in place.

        While Rule 26(c) authorizes courts to issue protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including orders "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way" (Fed. R. Civ. P. 26), these orders serve a different function than the relevance and proportionality gatekeeping required by Rule 26(b)(1). Confidentiality orders "serve the beneficial purposes of expediting the flow of

7

discovery material, facilitating the prompt and efficient resolution of disputes, adequately protecting confidential information, and ensuring that protection is afforded to discovery so entitled." *In re Valsartan N-Nitrosodimethylamine (NDMA), Losartan, and Irbesartan Products Liability Litigation*, 512 F.Supp.3d 546 (2021). However, they do not replace the initial determination of discoverability.

Here, the Court appropriately evaluated the burden and the benefit of producing the requested information in its relevance and proportionality analysis. In response to the United States' Objection, MPA asserts that although the Confidentiality Order may reduce the risk of the information being shared with the public, it does not remove the inherent intrusion in compelled disclosure of sensitive PII, nor does it fully guard against misuse or unintended exposure. In summary, while confidentiality protections may mitigate some risks, they do not eliminate the intrusion inherent in compelled disclosure of PII or the potential for misuse. The Court properly conducted the required threshold analysis and was not obligated to order production simply because a confidentiality mechanism exists.

D.  MPA's Nonparty Status Supports Limiting Discovery.

Although the Court declined to apply a heightened standard solely based on MPA's nonparty status, that status remains relevant in assessing burden and proportionality. Courts evaluating undue burden claims must still consider nonparty status as a factor favoring limitations on discovery scope, expense, and burden. *See State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. 2016); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014); *see also Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). Here, the MPA as a nonparty, should not be subjected to expansive discovery demands, particularly those implicating sensitive

student information, absent a strong showing of necessity. The Court's Order reflects that balance by requiring production where appropriate while protecting against unnecessary intrusion. The United States also minimizes important privacy interests implicated by its requests. The materials it seeks would, by their nature, expose highly sensitive personal and identifying information, including but not limited to, healthcare information. Courts have recognized that such information warrants heightened protection, particularly where disclosure carries a risk of adverse consequences, and the Court appropriately accounted for those risks in its proportionality analysis.

### IV.    CONCLUSION

The Court carefully considered each disputed request and issued a balanced Order that permits access to relevant information while protecting against undue burden and serious privacy concerns and potential harms. Plaintiff has further failed to demonstrate that the Order is clearly erroneous or contrary to law pursuant to Fed. R. Civ. P. 72(a). Accordingly, MPA respectfully requests that the Court overrule the Plaintiff's objections and affirm the Order as to Requests 5–9, 11, and 18–19.

DATED: April 28, 2026

/s/ James E. Belleau
James E. Belleau, Esq., Maine Bar No. 8314
*Attorney for Maine Principals' Association*
Trafton, Matzen, Belleau & Frenette, LLP
P.O. Box 470, 10 Minot Avenue
Auburn, Maine 04212-0470
(207) 784-4531
Jbelleau@tmbf-law.com